AMY K. VAN ZANT (STATE BAR NO. 197426)
avanzant@orrick.com
JASON K. YU (STATE BAR NO. 274215)
jasonyu@orrick.com
TAMMY SU (STATE BAR NO. 329652)
tsu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Attorneys for Plaintiff
TRADESHIFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BUYERQUEST, INC., an Ohio corporation,<br><br>Defendant. | Case No. 3:20-cv-1294-RS<br><br>**PLAINTIFF TRADESHIFT, INC.'S OPPOSITION TO DEFENDANT BUYERQUEST, INC.'S MOTION TO DISMISS**<br><br>Dept: 3 – 17TH FLOOR<br>Judge: The Hon. Richard Seeborg<br>Date: May 21, 2020<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. STATEMENT OF ISSUES ..... 2
III. STATEMENT OF RELEVANT FACTS ..... 2
IV. LEGAL STANDARD ..... 4
V. ARGUMENT ..... 4
- A. Tradeshift Alleges a Textbook Claim for Breach of Contract ..... 4
- B. Tradeshift Alleges a Claim for Intentional Interference with the Tradeshift/Smucker Agreement ..... 8
  - 1. Tradeshift Has Adequately Alleged the Intent and Causation Elements of an Interference Claim ..... 8
  - 2. Tradeshift's Interference Claim Survives Regardless of Factual Disputes ..... 13
  - 3. BuyerQuest's "Stranger Test" is Inapplicable ..... 14
- C. Tradeshift Alleges A Breach of The Implied Covenant of Good Faith and Fair Dealing ..... 17
- D. Tradeshift's Allegations Sufficiently Allege Punitive Damages Under the Federal Pleading Standard ..... 19

VI. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alejandro v. ST Micro Elecs., Inc.*,
129 F. Supp. 3d 898 (N.D. Cal. 2015) .......... 20

*Aliya Medcare Finance, LLC v. Nickell*,
156 F. Supp. 3d 1105 (C.D. Cal. 2015) .......... 11, 12

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) .......... 14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 4

*Banko v. Apple Inc.*,
20 F. Supp. 3d 749 (N.D. Cal. 2013) .......... 21

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
331 F. Supp. 3d 977 (N.D. Cal. 2018) .......... 11

*Bus. Integration Tech. v. MuleSoft Inc.*,
No. C 11-04782 EDL, 2012 WL 13041534 (N.D. Cal. Mar. 23, 2012) .......... 10

*California Sportfishing Prot. All. v. Shiloh Grp., LLC*,
268 F. Supp. 3d 1029 (N.D. Cal. 2017) .......... 19

*Coles v. Glaser*,
2 Cal. App. 5th 384 (2016) .......... 4

*Focal Point Films, LLC v. Sandhu*,
No. 19-CV-02898-JCS, 2019 WL 7020209 (N.D. Cal. Dec. 20, 2019) .......... 20

*Fortinent Inc. v. FireEye Inc.*,
No. 5:13-CV-02496-EJD, 2014 WL 4955087 (N.D. Cal. Sept. 30, 2014) .......... 12

*Karasek v. Regents of the University of California*,
948 F.3d 1150 (9th Cir. 2020) .......... 4

*Kentwool Co. v. NetSuite Inc.*,
No. 14-CV-05264-JST, 2015 WL 693552 (N.D. Cal. Feb. 18, 2015) .......... 7

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 10

*Maritz Inc. v. Carlson Mktg. Grp., Inc.*,
No. C 07-05585 JSW, 2009 WL 3561521 (N.D. Cal. Oct. 30, 2009) ........................ 15, 16, 17

*Mazonas v. Nationstar Mortg. LLC*,
No. 16-CV-00660-RS, 2016 WL 2344196 (N.D. Cal. May 4, 2016)...................................... 6

*Mintz v. Blue Cross of California*,
172 Cal. App. 4th 1594 (2009)........................................................................... 15, 17

*Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*,
No. C-13-04262-RMW, 2013 WL 6073362 (N.D. Cal. Nov. 15, 2013)............................. 6, 7

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)........................................................................................ 21

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019)................................................................... 4, 11, 13, 14

*Nat'l Funding, Inc. v. Commercial Credit Counseling Servs., Inc.*,
No. CV 18-6437-MWF (ASX), 2018 WL 6444899 (C.D. Cal. Nov. 6, 2018)...................... 13

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019)........................................................................................ 4

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007)........................................................................................ 19

*PM Grp., Inc. v. Stewart*,
154 Cal. App. 4th 55 (2007)..................................................................................... 15, 16

*Popescu v. Apple Inc.*,
1 Cal. App. 5th 39 (2016)............................................................................................ 15,

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) ................................................................................................ 8

*Rescap Liquidating Tr. v. First California Mortg. Co.*,
No. 18-CV-03283-WHO, 2018 WL 5310795 (N.D. Cal. Oct. 25, 2018)............................... 15

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
732 F. Supp. 2d 952 (N.D. Cal. 2010) ......................................................................... 18

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
218 Cal. App. 4th 1230 (2013)...................................................................................... 18

*United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*,
766 F.3d 1002 (9th Cir. 2014)...................................................................................... 15

*United States v. Agbayani Construction Corp.*,
Case No. 14-cv-02503-MEJ, 2014 WL 3866095 (N.D. Cal. Aug. 5, 2014)........................... 10

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
No. 3:15-CV-01729-LB, 2015 WL 5000102 (N.D. Cal. Aug. 21, 2015), aff'd,
699 F. App'x 667 (9th Cir. 2017) .......................................................................... 20

*Wilson v. Florida Dept. of Revenue*,
No. 14-CV-04726-JCS, 2015 WL 136557 (N.D. Cal. Jan. 8, 2015) ............................... 12, 13

**Statutes**

Cal. Civ. Code § 3294(c)(1)........................................................................................ 20

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................ 6, 20

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 4

Fed. R. Civ. P. 9(b) ................................................................................................. 10, 20

Fed. R. Civ. P. 12 .......................................................................................................... 19

Fed. R. Civ. P. 15 .......................................................................................................... 21

Fed. R. Civ. P. 15(a)(2) .................................................................................................. 21

## I. INTRODUCTION

Plaintiff Tradeshift, Inc. ("Tradeshift") has pled a simple and straightforward case. At the heart of its allegations is the fact that Tradeshift had a contract with Defendant BuyerQuest, Inc. ("BuyerQuest") to act as a reseller for certain BuyerQuest software and services. Relying on that Reseller Agreement, Tradeshift made a deal with the J.M. Smucker Company ("J.M. Smucker" or "Smucker") to provide certain Tradeshift and BuyerQuest software and services to Smucker. Under the two separate agreements, BuyerQuest and Tradeshift would each perform their contractual obligations, with Smucker paying Tradeshift pursuant to the Tradeshift/Smucker Agreement, and with Tradeshift paying BuyerQuest pursuant to the Tradeshift/BuyerQuest Reseller Agreement.

The parties were performing consistent with their various contractual obligations until several months into the project when BuyerQuest launched a scheme to cut Tradeshift out of the project entirely in order to secure more work (and profit) for itself. BuyerQuest worked to secure its own deal with Smucker, disparaging and smearing Tradeshift to Smucker and, ultimately, causing Smucker to wrongfully terminate its contract with Tradeshift in favor of a new agreement with BuyerQuest. In doing so, BuyerQuest intentionally interfered with the Tradeshift/Smucker Agreement to which BuyerQuest was not a party. These facts, pled as allegations in the Complaint, support all of the elements of an intentional interference claim.

But BuyerQuest's wrongdoing did not stop at interference. BuyerQuest also breached its own Reseller Agreement with Tradeshift and flouted its obligation of good faith and fair dealing when it carried out its plan to excise Tradeshift from the Smucker software project. As pled in the Complaint, BuyerQuest breached multiple provisions of the Reseller Agreement as it worked overtime to mislead Smucker into believing that Tradeshift was solely responsible for every project misunderstanding and hiccup, ultimately convincing Smucker (wrongly) that Tradeshift could not deliver what it had promised but that BuyerQuest could do so instead. By January 2020, BuyerQuest's scheme had left the Tradeshift/Smucker relationship in tatters and BuyerQuest delivered the final blow when it outright refused to perform under its Reseller Agreement with Tradeshift at all, the ultimate breach of contract. These facts, as pled as

allegations in the Complaint, meet the textbook requirements both for a breach of contract claim and for breach of the obligation of good faith and fair dealing.

It's a simple, if brutal, story and Tradeshift's allegations easily meet the pleading standards for the asserted claims. BuyerQuest's motion to dismiss ignores these well-pled allegations to make a series of straw-man arguments predicated on factual and legal theories which simply do not apply here. Tradeshift's claims plead more than enough detail to satisfy the applicable liberal pleading standards and set forth clear and straightforward claims for breach of contract, interference with contract, and breach of the implied covenant of good faith and fair dealing. The Court should deny BuyerQuest's motion and allow the case to proceed without further delay so Tradeshift's claims can be adjudicated on the merits.

## II. STATEMENT OF ISSUES

The Court must determine whether the allegations in Tradeshift's complaint ("the Complaint"), taken as true and construed in the light most favorable to Tradeshift, sufficiently plead plausible claims that BuyerQuest (1) breached the Tradeshift/BuyerQuest Reseller Agreement, (2) interfered with the Tradeshift/Smucker Agreement, and (3) breached the implied covenant of good faith and fair dealing.

## III. STATEMENT OF RELEVANT FACTS

Tradeshift filed the Complaint on February 20, 2020, asserting claims for breach of contract, intentional interference with contractual relations, and breach of the implied covenant of good faith and fair dealing. As pled in the Complaint, Tradeshift and BuyerQuest entered into an agreement (the "Tradeshift-BuyerQuest Reseller Agreement" or the "Reseller Agreement") in June 2019 pursuant to which Tradeshift was contractually authorized to act as a reseller of certain BuyerQuest's software and services to third parties in return for payments to be made from Tradeshift to BuyerQuest. Complaint ¶¶ 14-15.

That same month, Tradeshift and J.M. Smucker entered into a separate contract (the "Tradeshift/Smucker Agreement") pursuant to which Tradeshift would provide Smucker with certain Tradeshift and BuyerQuest software and services to replace Smucker's existing enterprise resources planning ("ERP") software. Tradeshift was authorized to provide Smucker with the

BuyerQuest software and services pursuant to the Tradeshift/BuyerQuest Reseller Agreement. Complaint ¶¶ 8-9. In sum, Tradeshift had one contract with Smucker, and another, separate contract with BuyerQuest. Smucker was to pay Tradeshift for the Tradeshift/BuyerQuest software and services through the Tradeshift/Smucker Agreement and Tradeshift, in turn, would pay BuyerQuest pursuant to the Reseller Agreement. Smucker and BuyerQuest had no contract with one another.

Several months into the project, BuyerQuest realized that it could make more money if it could secure its own contract with Smucker and made a play to cut Tradeshift out of the Smucker project entirely. As part of its plan to secure its own contract with Smucker for the same work Tradeshift was contracted to provide pursuant to the Tradeshift/Smucker Agreement, BuyerQuest set out to disparage Tradeshift, misleading Smucker into believing that Tradeshift could not perform as it had contracted to do but that BuyerQuest could do what Tradeshift (supposedly) could not. BuyerQuest's plan caused Smucker to wrongfully terminate the Tradeshift/Smucker Agreement. Complaint ¶¶ 16-25, 27. In doing so, BuyerQuest not only ignored its obligation of good faith and fair dealing to Tradeshift in connection with the Reseller Agreement, but it also intentionally interfered with Tradeshift's contract with Smucker by causing Smucker to wrongfully terminate the Tradeshift/Smucker Agreement in favor of doing a deal with BuyerQuest. *Id.* ¶¶ 37-39, 43-44.

BuyerQuest also breached its own contract with Tradeshift, including by failing to abide by certain contractual project management and communications provisions in the Reseller Agreement and, subsequently, by completely refusing to perform pursuant to the Reseller Agreement at all. *Id.* ¶¶ 26, 31, 32 ("BuyerQuest has further materially breached the Agreements by refusing to perform <u>any</u> of its work or obligations.") (emphasis added). [1]

[1] The Complaint refers to several agreements related to Tradeshift and BuyerQuest's relationship, including a June 28, 2010 Reseller Order Form that specifically discusses the consulting services and software that BuyerQuest was to provide to Tradeshift for the Smucker Project. Complaint ¶¶ 14-15.

Tradeshift has pled textbook claims of breach of contract, intentional interference, and breach of the obligation of good faith and fair dealing. The story is simple and the allegations supporting those claims are robust.

## IV. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this liberal standard, a complaint survives a motion to dismiss for failure to state a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Karasek v. Regents of the University of California*, 948 F.3d 1150, 1161 (9th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). To evaluate motions to dismiss, courts "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019). A claim is thus facially plausible so long as "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 496 (9th Cir. 2019). The allegations in the Complaint, construed in the light most favorable to Tradeshift, undoubtedly meet this test.

## V. ARGUMENT

### A. Tradeshift Alleges a Textbook Claim for Breach of Contract

A claim for breach of contract requires: (1) the existence of a contract; (2) plaintiff's performance of contractual obligations, or an excuse for nonperformance; (3) defendant's breach; and (4) resulting damages. *See Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016). Tradeshift has pled allegations to support each of the required elements. Complaint ¶¶ 12-15, 26, 29, 31-32,33.

BuyerQuest disputes the sufficiency of Tradeshift's allegations as to only two of the breach of contract claim elements: (1) the existence of a contract and (2) the defendant's corresponding breach. Dkt. No. 15 ("Motion") at 4. Neither argument has merit. First, Tradeshift identifies the June 2019 Reseller Agreement as the contract in question. *See* Complaint ¶¶ 12-14 (noting that the agreement "specifies that BuyerQuest, as the Provider, <u>agrees</u>

to provide certain BuyerQuest SaaS subscriptions and consulting services to Tradeshift, as Reseller, for use in the Smucker project while Tradeshift, in turn, agrees to pay BuyerQuest . . . .") (emphasis added). Thus, Tradeshift has unambiguously pled the existence of the agreement that was subject to the breach.

Second, Tradeshift has alleged multiple breaches by BuyerQuest of the Reseller Agreement. For example, Tradeshift alleges that as of January 2020, BuyerQuest expressly refused to perform under the Reseller Agreement at all, including to provide the specified services or software, or even to meet or speak with Tradeshift. *Id.* ¶ 32 (alleging that BuyerQuest has breached "by refusing to perform any of its work or obligations . . . ."). This is a clear and unmistakable allegation of a contractual obligation and corresponding breach. As another example of a breach allegation, Tradeshift alleges that, even before BuyerQuest completely repudiated its obligations, it breached multiple specific provisions of the Reseller Agreement, including by failing to abide by certain project management and communications obligations. *Id.* ¶¶ 15, 26, 29, 31. Thus, Tradeshift has pled multiple breaches of the Reseller Agreement by BuyerQuest.

BuyerQuest ignores or mischaracterizes Tradeshift's allegations discussing the Reseller Agreement and BuyerQuest's breach of that agreement. Instead of addressing those allegations directly, BuyerQuest argues that Tradeshift's breach of contract fails because Tradeshift "omitted both the contract as an exhibit and the substantive contract terms and their legal effect" such that they could be compared to the alleged breaching activity. Motion at 4. This argument raises a red herring as there is no requirement that Tradeshift attach a copy of the relevant contract or quote the breached provisions *verbatim* (it also ignores that Tradeshift did, in fact, quote multiple breached terms of the Reseller Agreement, *see* Complaint ¶ 15). The argument also outright ignores Tradeshift's multiple allegations that plead the "legal effect" of the breached contract terms. BuyerQuest cannot prevail on a motion that ignores the relevant allegations that were actually pled.

In more detail, and as this court has recognized, the Federal Rules of Civil Procedure do not require a party pleading a breach of contract claim to attach a copy of the contract at issue to

the complaint or to quote the terms verbatim. *Mazonas v. Nationstar Mortg. LLC*, No. 16-CV-00660-RS, 2016 WL 2344196, at *7 (N.D. Cal. May 4, 2016) (Seeborg, J.) (denying motion to dismiss and rejecting argument that the plaintiff "fail[e]d to quote the relevant contractual language verbatim or to attach a copy of the contract to the complaint."). As the court in *Mazonas* noted, this is simply not a required under the Federal Rules. *Id.* Thus, Tradeshift had no obligation to attach the contract or to quote the breached provisions *verbatim*.

Instead, Tradeshift was only required to identify the relevant contract and the contractual terms that were breached, which Tradeshift unquestionably did. In fact, Tradeshift pled that BuyerQuest breached the June 2019 Reseller Agreement in multiple ways, including by failing to adhere to several contractual provisions specifically described in the Complaint (*see, e.g.*, Complaint ¶¶ 15, 29 (quoting and discussing several project management obligations under the contract); *id.* ¶¶ 26, 31 (discussing breach of said provisions, including by, for example, "failing to obtain Tradeshift's review and consent to scope changes to the Smucker project.")), and by refusing to perform under the Reseller Agreement at all from mid-January 2020 forward. *Id.* ¶¶ 14, 32. Tradeshift also has pled the "legal effect" of the Reseller Agreement, *e.g.*, that BuyerQuest was required to, among other things, defer to and obtain Tradeshift's agreement on project scope changes, to communicate with Tradeshift about project management overall provide certain consulting services and software subscriptions related to the Smucker project. (Complaint ¶¶ 14, 15, 29). Tradeshift also alleges that BuyerQuest breached those specific contractual obligations before ultimately repudiating its obligations to perform under the Reseller Agreement altogether. *Id.* ¶¶ 26, 31, 32.

These allegations are sufficient to allege a contract and the resulting breach by BuyerQuest under the applicable liberal pleading standards. *See, e.g.*, Fed. R. Civ. P. 8 (requiring just "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *2 (N.D. Cal. Nov. 15, 2013) (denying motion to dismiss where plaintiff alleged that a series of emails resulted in a contract under which the defendant was engaged "to provide software management and maintenance services . . . during the months of March 2013 and April

2013" and defendant "did not make [] payments when due."); *Kentwool Co. v. NetSuite Inc.*, No. 14-CV-05264-JST, 2015 WL 693552, at *7 (N.D. Cal. Feb. 18, 2015) (finding allegations of breach of contract sufficient where plaintiff alleged a contract for "the purchase, customization, configuration, and implementation of [plaintiff's] software for [defendant's] specific needs and uses," and that defendant breached by "supplying defective and non-functional Software, and/or failing to properly configure and implement functional software."). Indeed, Tradeshift's allegations go well beyond those pled in other cases in this district where courts have routinely found the allegations sufficiently pled.

In fact, even though it is not required, Tradeshift actually quotes several of the breached provisions from the contract *verbatim*—allegations BuyerQuest ignores in its motion altogether. Complaint ¶ 15. For example, Tradeshift alleges that BuyerQuest refused to abide by its contractual communications obligations on the project and by failing to keep Tradeshift apprised of (and to secure its agreement to) proposed changes to project scope. *See e.g.*, *id.* ("BuyerQuest was contractually obligated under the Reseller Order Form and related attachments to . . . 'review and agree on all scope changes prior to adding new requirements to the project.'"); *id.* ¶ 31 ("BuyerQuest has materially breached . . . by, for example, failing to obtain Tradeshift's review and consent to scope changes to the Smucker project."). These allegations, too, plead the specific provisions of the contract that were breached, the legal effect of those provisions, and BuyerQuest's breach thereof. *Id.* As such, these allegations meet the very pleading requirements that BuyerQuest claims are not present.

BuyerQuest argues that it has no notice of the "conduct that allegedly amounted to a breach." Motion at 4. Again, this argument simply turns a blind eye to Tradeshift's allegations of total repudiation of the Reseller Agreement and of specific provisions of that Reseller Agreement. *See, e.g.*, Complaint ¶¶ 15, 26, 29, 31, 32. Notably, BuyerQuest does not dispute that the parties had an executed contract or that BuyerQuest completely refused to perform. This is not a case in which the contract at issue is premised on some vague set of exchanged emails or oral conversations. *See Misha Consulting Grp.*, 2013 WL 6073362 at *2 (contract alleged formed based on an exchange of emails). The contract at issue here is a signed agreement identified by

name and date in the Complaint that both parties executed and that BuyerQuest undoubtedly has in its possession (having quoted it in correspondence with Tradeshift).[2]

Accordingly, Tradeshift has pled a simple breach of contract claim with allegations about the existence of a formal, executed contract (the Reseller Agreement) and multiple allegations of breach identifying specific provisions breached and a total repudiation of contractual responsibilities. As such, there is no question that Tradeshift has pled the required elements of a breach of contract claim and the Court should deny BuyerQuest's motion to dismiss.

### B. Tradeshift Alleges a Claim for Intentional Interference with the Tradeshift/Smucker Agreement

Just as with the breach of contract claim, BuyerQuest challenges Tradeshift's claim for intentional interference with contract by making arguments that ignore the allegations as pled and by relying on inapposite law. A claim for interference with contract under California law requires only that a plaintiff plead: (1) a valid contract; (2) defendant's knowledge of that contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption; and (5) resulting damages. *See Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004). Tradeshift has pled allegations in support of each and every one of these claim elements. Complaint ¶¶ 8-9, 15, 27, 37-39.

BuyerQuest concedes that Tradeshift has pled most of the claim elements but baselessly argues that Tradeshift failed to allege intent and causation. Motion at 5-7. BuyerQuest also makes the legally and factually unsupported argument that Tradeshift's interference claim must fall because BuyerQuest is not a "stranger" to the Tradeshift/Smucker Agreement with which it interfered. Motion at 7-8. Neither of these arguments holds.

#### 1. <u>Tradeshift Has Adequately Alleged the Intent and Causation Elements of an Interference Claim</u>

BuyerQuest argues that Tradeshift's intent and causation allegations are insufficient because they amount to nothing more than pleading about BuyerQuest "simply communicating" with Smucker and, therefore, do not identify "any intentional acts by BuyerQuest designed to

[2] Tradeshift did not attach the Reseller Agreement to the Complaint because it is subject to confidentiality provisions.

induce a breach or disruption of Tradeshift's contract with Smucker." Motion at 7. Just as with the breach of contract claim, BuyerQuest willfully mischaracterizes and outright ignores Tradeshift's allegations. Far from alleging that BuyerQuest "simply communicated" with Smucker, Tradeshift alleges that BuyerQuest hatched an elaborate plan to smear Tradeshift to Smucker so that Smucker would terminate the Tradeshift/Smucker Agreement and enter into a new contract with BuyerQuest instead.

In more detail, Tradeshift alleges that, despite being fully aware of Tradeshift's contract with Smucker (an allegation not in dispute), BuyerQuest intentionally moved to secure its own agreement with Smucker for the Smucker ERP software project by convincing Smucker to terminate its agreement with Tradeshift in favor of a deal with BuyerQuest. Complaint ¶ 27 (alleging that BuyerQuest took "affirmative steps to derail and interfere with Tradeshift's contract with Smucker in order <u>to secure a direct contract with Smucker.</u>") (emphasis added). These allegations are more than sufficient to support the intent element of an interference claim.

Tradeshift also alleges that, as part of its plan to interfere with the Tradeshift/Smucker Agreement, BuyerQuest disparaged Tradeshift and its software capabilities to Smucker, causing Smucker to (wrongly) believe that Tradeshift itself had misled Smucker about its capabilities and resulting in Smucker purporting to terminate the Tradeshift/Smucker Agreement. *Id.* at ¶ 26. These allegations go far beyond claiming that BuyerQuest was "simply communicating" with Smucker and instead allege a plot to interfere with the Tradeshift/Smucker Agreement (intent) that actually caused Smucker to terminate the Tradeshift/Smucker Agreement (causation). As a result, Tradeshift has sufficiently pled the two elements of an interference claim that BuyerQuest claims are not present in the Complaint.

BuyerQuest also argues that Tradeshift's interference allegations are "devoid of any facts" and that BuyerQuest does not describe the statements that Tradeshift made to Smucker. Motion at 7. These arguments, too, are flatly contradicted by the allegations in the Complaint. For example, Tradeshift alleges that BuyerQuest "claim[ed] that Tradeshift could not provide functionality that Tradeshift could, in fact, provide" and "claim[ed] that Tradeshift was solely at fault for all problems on the Smucker project." Complaint ¶ 26. These allegations, far from being

"devoid of any facts," specify the types of disparaging comments and smears that BuyerQuest made to Smucker in its quest to secure a better deal for itself. And, Tradeshift has pled causation in pleading that BuyerQuest's disparaging comments led to Smucker's improper termination of the Tradeshift/Smucker Agreement. Complaint ¶¶ 27 ("BuyerQuest has taken affirmative steps to derail and interfere with Tradeshift's contract with Smucker in order to secure a direct contract for itself"), 39 ("BuyerQuest's tortious conduct was a substantial factor in causing Smucker to purport to terminate the [Tradeshift/Smucker Agreement] . . . ."), 38 ("Tradeshift has lost fees to which it was entitled under the terms of the [Tradeshift/Smucker Agreement]."). [3]

These allegations, which BuyerQuest does not even acknowledge (much less address) in its motion, are more than sufficient to support the intent and causation elements for Tradeshift's claim for interference. *See United States v. Agbayani Construction Corp.*, Case No. 14-cv-02503-MEJ, 2014 WL 3866095, at *4 (N.D. Cal. Aug. 5, 2014) ("[P]leading ultimate facts of interference, such as advising, counseling, and persuading termination of a contract, is sufficient to state a cause of action for interference with the contract."); *Bus. Integration Tech. v. MuleSoft Inc.*, No. C 11-04782 EDL, 2012 WL 13041534, at *3 (N.D. Cal. Mar. 23, 2012) (denying motion to dismiss claim for intentional interference premised on allegations that "[d]efendants engaged in a secret meeting with [contracting party], made disparaging comments about Plaintiff, abruptly severed its business relationship with Plaintiff such that Plaintiff could not continue to provide services to [contracting party], and lured [contracting party]'s business away from Plaintiff to cause a breach of the contract between Plaintiff and [contracting party]."). Similar to the *MuleSoft*

---

[3] BuyerQuest misleadingly cites Rule 9(b)'s heightened pleading standard governing allegations of fraud to argue that it applies to Tradeshift's interference claim. Motion at 6. But Tradeshift's claim is not premised on misappropriation or fraud; it is premised on BuyerQuest's disparagement of Tradeshift to Smucker and on BuyerQuest convincing Smucker to enter into a new agreement with BuyerQuest for the project. Complaint ¶¶ 26-27; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (clarifying that, "[t]o the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)"). Moreover, even were the heightened fraud standard to apply, Tradeshift's allegations suffice. Tradeshift has alleged specific examples of improper communications between Smucker and BuyerQuest that were part of BuyerQuest's plot to interfere with the Tradeshift/Smucker Agreement. *See, e.g.*, Complaint ¶ 26 (alleging that BuyerQuest "claim[ed] that Tradeshift could not provide functionality that Tradeshift could, in fact, provide" and "claim[ed] that Tradeshift was solely at fault for all problems on the Smucker project.")

case, Tradeshift has pled a secret plan by BuyerQuest to make disparaging remarks about Tradeshift to Smucker and lure Smucker's business away, causing Smucker to breach the Tradeshift/Smucker Agreement. The Court found that the allegations in *MuleSoft* were sufficient there and the same results holds here.

Though it tries, BuyerQuest cannot reasonably dispute that its disparaging communications and its work to secure its own contract with Smucker was certain (or at least substantially certain) to result in interference with the Tradeshift/Smucker Agreement. The only way BuyerQuest could achieve its goal of a direct contract with Smucker was by replacing Tradeshift and the Tradeshift/Smucker Agreement. When combined with the allegation that BuyerQuest actually *did* secure a direct contract with Smucker for itself (as pled in the Complaint ¶ 27), there is no question that Tradeshift's allegations suffice.

Similarly, with respect to the causation element, BuyerQuest cannot credibly dispute that disparaging Tradeshift to Smucker and working to secure its own agreement with Smucker to replace its agreement with Tradeshift were not substantial factors (if not the only factors) in Smucker terminating its contract with Tradeshift.[4] Indeed, Smucker's termination letter cites the disparaging remarks made by BuyerQuest in its reasons for terminating the Tradeshift/Smucker Agreement. And, again, even if BuyerQuest wanted to dispute the ultimate facts (which it does not actually do), the allegations must be taken as true and construed in the light most favorable to Tradeshift (*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 at 1149), which means the court can plausibly infer that the availability of the new BuyerQuest contract and the disparaging remarks were a substantial factor in terminating the prior Tradeshift/Smucker Agreement.

In addition to ignoring and misstating the allegations in the Complaint regarding interference, BuyerQuest relies on inapposite caselaw. For example, *Aliya Medcare Finance,*

[4] The "substantial factor" causation test relied on by BuyerQuest is also not as high of a bar as BuyerQuest implies. *See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 987–88 (N.D. Cal. 2018) (noting that, despite a lack of judicial guidance in interpreting the term "substantial factor," the California Supreme Court has suggested against placing "undue emphasis" on the term "substantial."). Moreover, even BuyerQuest does not argue that this factual issue is an issue that can be resolved on a motion to dismiss.

*LLC v. Nickell* (cited by BuyerQuest, Motion at 6) was decided under inapplicable Nevada state law and is factually inapposite to the present case. 156 F. Supp. 3d 1105, 1135 (C.D. Cal. 2015). In *Aliya*, the defendant was an employee of a party to the contract and therefore was considered himself to be a party to the contract. *Id.* Here, California law applies to the present case and BuyerQuest is not a party to the Tradeshift/Smucker Agreement. Complaint ¶ 10. Moreover, the *Aliya* case did not involve the defendant convincing a party to a contract to terminate that agreement in favor of entering into a new contract with the defendant, as is alleged here against BuyerQuest. *Aliya*, 156 F. Supp. 3d at 1135 (finding no allegations that business was diverted, let alone intentionally diverted, from plaintiff). In contrast, Tradeshift alleges that BuyerQuest's interfering acts (including making disparaging statements and working to secure its own contract with Smucker for the same work Tradeshift had contracted to do in the Tradeshift/Smucker Agreement) caused Smucker to wrongfully terminate its agreement with Tradeshift, thus excluding Tradeshift from the Smucker project entirely.

Similarly, BuyerQuest improperly relies on *Fortinent Inc. v. FireEye Inc.* Motion at 6. However, in *Fortinent*, the plaintiff alleged only that defendant "solicited, induced, and encouraged" employees to breach their confidentiality agreements, but provided no other allegations explaining how it did so. No. 5:13-CV-02496-EJD, 2014 WL 4955087, at *9 (N.D. Cal. Sept. 30, 2014). This is not the case here because Tradeshift alleges that BuyerQuest induced Smucker to terminate the Tradeshift/Smucker Agreement by obtaining its own direct deal for the same work and making disparaging statements about Tradeshift to Smucker in order to induce Smucker to terminate its agreement with Tradeshift so BuyerQuest could swoop in and secure its own contract with Smucker. *See e.g.*, Complaint ¶¶ 26-27. Indeed, Tradeshift goes so far as to allege specific disparaging statements made by BuyerQuest to Smucker, including, for example, "claiming that Tradeshift could not provide functionality that Tradeshift could, in fact, provide" and otherwise knocking Tradeshift and its products. *Id.* This is nothing like the cursory allegations in *Fortinent.*

Likewise, BuyerQuest's reliance on *Wilson v. Florida Dept. of Revenue* is misplaced. Motion at 6. In *Wilson*, a *pro se* plaintiff did not "allege any specific facts to show the existence

of a contract," let alone other elements of the claim. No. 14-CV-04726-JCS, 2015 WL 136557, at *11 (N.D. Cal. Jan. 8, 2015). Here, as discussed in detail *supra*, Tradeshift has alleged the existence of the Tradeshift/Smucker Agreement, facts to support intent to interfere, facts to support causation, and facts to support actual interference and damages. *Wilson* could not be more different. Similarly, the Plaintiff in *Nat'l Funding, Inc. v. Commercial Credit Counseling Servs., Inc.*, cited by BuyerQuest in its Motion at 6, failed to even "allege any specific relationship with which Defendants allegedly interfered." No. CV 18-6437-MWF (ASX), 2018 WL 6444899, at *5 (C.D. Cal. Nov. 6, 2018). These cases simply do not address the type of factual allegations that Tradeshift has set forth here.

BuyerQuest cannot prevail on a motion to dismiss by simply ignoring allegations pled by Tradeshift and relying on cases that bear no resemblance or have no legal authority in this jurisdiction. Tradeshift's interference allegations are well-pled and, in fact, exceed the requirements for pleading an interference claim. As such, BuyerQuest's motion must be denied.

### 2. <u>Tradeshift's Interference Claim Survives Regardless of Factual Disputes</u>

Beyond ignoring most of Tradeshift's allegations on interference and relying on inapposite law, BuyerQuest also advances the argument that Tradeshift's interference claim must fail because (according to BuyerQuest) Smucker terminated the Tradeshift/Smucker Agreement "on its own" and not because of anything BuyerQuest did. Motion at 6-7. This is a factual dispute and not something that can be decided on a motion to dismiss. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 at 1149. Instead, the Court must take the allegations pled as true and those allegations plead that Smucker terminated the Tradeshift/Smucker Agreement because BuyerQuest disparaged Tradeshift and convinced Smucker that it would be better off working with BuyerQuest instead.

The Complaint alleges that Smucker purported to terminate the Tradeshift/Smucker Agreement based on certain alleged misrepresentations that Smucker claimed *Tradeshift* had made. The Complaint goes on to allege, however, that the supposed "misrepresentations" cited by Smucker were not misrepresentations by Tradeshift at all but instead were trumped up,

disparaging comments made by BuyerQuest about Tradeshift to Smucker that Tradeshift made with the goal of getting Smucker to terminate the Tradeshift/Smucker Agreement. Complaint ¶ 20 ("Contrary to the accusations in the Smucker Notice, Tradeshift determined that there had been no such misrepresentations . . . ."); *id.* ¶ 25 (noting Tradeshift's belief that Smucker and BuyerQuest "were working together to falsely disparage Tradeshift in an effort to justify cancelling the [Tradeshift/Smucker Agreement] in favor a direct Smucker-BuyerQuest deal" and that "[n]either Smucker nor BuyerQuest has denied that that they intend to work directly together"); *id.* ¶ 39 ("BuyerQuest's tortious conduct was a substantial factor in causing Smucker to purport to terminate the [Tradeshift/Smucker Agreement]. . . ."). The allegations plead misconduct by *BuyerQuest* (disparaging comments about Tradeshift and a plan to replace Tradeshift with a BuyerQuest-only contract) (Complaint ¶¶ 25-27, 37) made with the intent to disrupt the Tradeshift/Smucker Agreement (*id.*) and which actually did cause the disruption of that contract (Complaint ¶ 38), resulting in damages to Tradeshift (Complaint ¶¶ 38-39). BuyerQuest may dispute those allegations, but that is not grounds for dismissal at this stage. Instead, the court must take Tradeshift's allegations "as true and construe them in the light most favorable to [Tradeshift]." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1149.

### 3. <u>BuyerQuest's "Stranger Test" is Inapplicable</u>

Separate from its arguments based on the sufficiency of the allegations, BuyerQuest advances the so-called "stranger test" to argue that it cannot be held to have interfered with the Tradeshift/Smucker Agreement at all because BuyerQuest (though not a party to the Tradeshift/Smucker Agreement) is not a "stranger" to that agreement. Motion at 7-8. To advance this argument, BuyerQuest cites *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994), a case in which where the Court held that a contracting party cannot be held liable for conspiracy to interfere with its own contract. BuyerQuest attempts to rely on *dicta* in this case to reason that it cannot be held liable for interference because it was a subcontractor under the Tradeshift/Smucker Agreement and thus is not a "stranger" to the Tradeshift/Smucker Agreement at all. Motion at 7-8. This argument fails for multiple reasons.

***First***, the 1994 "stranger test" BuyerQuest relies on has been rejected as bad law in this district as recently as 2018. *See Rescap Liquidating Tr. v. First California Mortg. Co.*, No. 18-CV-03283-WHO, 2018 WL 5310795, at *6 (N.D. Cal. Oct. 25, 2018) ("It would appear that the stranger test relied on by defendants is no longer good law and to apply it to this case would raise the precise concerns identified in *Popescu* and *United Nat. Maintenance*.") (emphasis added). As the *Rescap* court discussed, "[i]n recent cases, the Ninth Circuit and California Courts of Appeal have found that an 'extension of *Applied Equipment's* holding to immunize a third party from tortious interference claims simply because the third party asserts some economic or other interest in a contract would significantly undercut the tort itself and the public policy underlying it.'" *Id.* at *6 (quoting *Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 53–54, (2016)). Indeed, the *Rescap* court correctly noted that it is third parties with interests in a contract who are perhaps most likely to interfere with those contracts and thus "[t]o shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract." *Id.* (quoting *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1007 (9th Cir. 2014).

BuyerQuest attempts to do exactly what *Popescu* and other courts have cautioned against, *i.e.*, rely on *Applied Equipment* to immunize itself from liability for interference with contract because it has a purported economic interest in the contract with which it interfered. Because that argument has already been rejected by this court and the Ninth Circuit, it must fail here as well.

***Second***, even were the "stranger test" still good law, it would not apply here because the cases citing that rule (many of which BuyerQuest relies on in its brief) are inapposite. As discussed in more detail below, the cases citing *Applied* hold that a party who has an obligation under a contract (even if they were not a named party to the contract) cannot be held liable for interference by simply failing to fulfill that contractual obligation. *See e.g.*, *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007); *Maritz Inc. v. Carlson Mktg. Grp., Inc.*, No. C 07-05585 JSW, 2009 WL 3561521, at *4 (N.D. Cal. Oct. 30, 2009); *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1603-1607 (2009). But that is not what is alleged here. While Tradeshift alleges that BuyerQuest breached the Reseller Agreement with Tradeshift, that

allegation stands separate and apart from the allegations supporting the interference claim. The interference claim is based not on BuyerQuest's failure to act as required by the Reseller Agreement (or even its failure to take any action contemplated by the Tradeshift/Smucker Agreement), but instead is based on BuyerQuest's disparaging communications to Smucker about Tradeshift and its efforts to secure its own contract with Smucker, which ultimately caused Smucker to improperly terminate the Tradeshift/Smucker Agreement. Surely even BuyerQuest must concede that neither the Tradeshift/Smucker Agreement did not "obligate" BuyerQuest to disparage Tradeshift to Smucker or to engage in a campaign to cause Smucker to terminate the Tradeshift/Smucker Agreement. But that is the conduct that is alleged to have caused the interference and it has nothing to do with any contractual obligation owed by Tradeshift anywhere.

In contrast, in *PM Grp., Inc. v. Stewart* (relied on by BuyerQuest, Motion at 7), a promoter entered into a contract with Rod Stewart for several performances. *PM Grp., Inc.*, 154 Cal. App. 4th at 65. The promoter subsequently entered into separate contracts with several venues in which the promoter agreed that Mr. Stewart would appear and perform at those venues (as Mr. Stewart had agreed to do in his own contract). *Id.* When Mr. Stewart did not perform—as he was allegedly supposed to do under the terms of the venue contract—the promoter (who was in breach of those contracts) sued Mr. Stewart for interference with those contracts. *Id.* The court held that Mr. Stewart could not be held liable for failing to perform because his performance was a term in those venue contracts. *Id.* ("Because the subcontracts at issue here provided for Stewart's performance, neither Stewart nor his agents can be liable for the tort of interfering with the subcontracts."). Thus, the *PM Grp.* claim failed because Mr. Stewart was alleged only to have failed to have done what he was supposed to do under the contract that was the subject of the interference claim. Here, in contrast, BuyerQuest is alleged to have interfered by having disparaged Tradeshift and by securing its own contract for the same work. These are independent tortious acts that are not contemplated by either the Reseller Agreement or the Tradeshift/Smucker Agreement.

Similarly, in *Maritz Inc. v. Carlson Mktg. Grp., Inc.* (cited by BuyerQuest, Motion at 7),

the plaintiff (Maritz) entered into a services agreement with Visa that required third party Carlson to provide certain cooperation. *Maritz*, 2009 WL 3561521, at *4. When Carlson did not adequately cooperate <u>as the contract with Visa stated it would do</u>, Maritz sued for interference. *Id.* The court held that Carlson could not be held liable for interference for failing to perform the actions required of it under the contract. *Id.* Again, this is not parallel to the interference allegations in the Complaint against BuyerQuest. BuyerQuest's liability for interference is not based on a failure to perform, it is based on independent tortious conduct.

*Mintz v. Blue Cross of California* cited by BuyerQuest (Motion at 7) is also inapposite. In that case, the one contracting party sued <u>the agent of the other contracting party</u> for conduct that amounted to a breach of the contract. *Mintz*, 172 Cal. App. 4th at 1603-1607. Because the allegedly interfering party was an agent for the party in breach retained to perform certain services under the contract, it could not be held liable for interference based on the breaching conduct. *Id.* Again, that is not the case here. Tradeshift is not suing one of Smucker's agents for interference for failing to pay on behalf of Smucker, and Smucker is not suing an agent of Tradeshift (*e.g.*, BuyerQuest) for failing to perform on behalf of Tradeshift. Tradeshift is suing BuyerQuest for separate overt acts of inducement, not failing to perform certain services that discussed in the contract at issue (the Tradeshift/Smucker Agreement).

Accordingly, Tradeshift has adequately alleged that BuyerQuest interfered with the Tradeshift/Smucker Agreement by engaging in separate intentional conduct (persuading Smucker to enter into a BuyerQuest-only agreement).

### C. <u>Tradeshift Alleges a Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

BuyerQuest tries to argue that Tradeshift also failed to adequately plead its breach of the implied covenant of good faith and fair dealing claim. Motion at 9. A claim for breach of the implied covenant of good faith and fair dealing requires: (1) a contract between the parties, (2) plaintiff fulfilled obligations under the contract, (3) any conditions precedent to defendant's performance occurred, (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract, and (5) the plaintiff was harmed by defendant's conduct. *See*

*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). Tradeshift has alleged each of these elements. Complaint ¶¶ 12-15, 43-44.

BuyerQuest disputes whether Tradeshift has adequately pled only the fourth element of a breach of good faith and fair dealing claim, *i.e.*, whether BuyerQuest unfairly interfered with Tradeshift's rights to receive the benefits of the contract. First, BuyerQuest argues that Tradeshift's allegations of unfair interference are insufficient as conclusory and vague because Tradeshift failed to identify a specific provision under the contract that has been "frustrated." Motion at 9. As with each of BuyerQuest's prior arguments about the sufficiency of Tradeshift's allegations, this argument is without merit.

There is no legal requirement that Tradeshift identify a specific provision that is "frustrated" (and BuyerQuest cites none). Rather, Tradeshift need only allege that BuyerQuest failed to take measures that the contract presupposed BuyerQuest would take to accomplish the contract's common purpose. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (explaining that the implied covenant of good faith and fair dealing is implied in every contract and "requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes").[5] Tradeshift's allegations more than meet this requirement. Specifically, Tradeshift alleges that BuyerQuest concocted and acted on a plan to secure its own deal with Smucker. Complaint ¶ 43 ("BuyerQuest took steps to encourage Smucker to wrongfully terminate the [Tradeshift/Smucker Agreement] so that BuyerQuest could do a direct deal with Smucker without Tradeshift"). This is textbook bad faith and unfair dealing, and the exact opposite of acting to accomplish the Reseller Agreement's purposes. Moreover, BuyerQuest completely refused to communicate or cooperate with Tradeshift to salvage the Smucker's relationship. *Id.* Even if it was not expressly required to do so, the subcontract presupposes that, as a subcontractor, BuyerQuest would do so. Failing to do so is bad faith,

[5] Notwithstanding its argument, BuyerQuest appears to concede that a claim for breach of the implied covenant is premised on a frustration of "the common purpose of the agreement" and not necessarily a specific provision. Motion at 9 ("[P]laintiff must allege specific facts establishing a 'conscious and deliberate act' by the defendant, which show that the defendant 'lacked subjective good faith in the validity of its act or the act was intended to and did frustrate the common purpose of the agreement.'")

particularly when BuyerQuest refused because it has already secured its own deal for the work.

BuyerQuest next argues that Tradeshift's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim. Motion at 10. The fact that a claim for breach of the implied covenant may overlap in some respects with a claim for breach, however, is not a basis to grant a motion to dismiss. Indeed, courts "have repeatedly held that two alternative and contradictory claims do not make either claim implausible under Fed. R. Civ. P. 12." *California Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1052 (N.D. Cal. 2017); *see also PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007) (explaining that pleadings in the alternative are allowed, "even if the alternatives are mutually exclusive").

Moreover, contrary to BuyerQuest's argument, Tradeshift's allegations are not duplicative of the allegations of breach of contract. Tradeshift's claim for breach of contract relies on allegations that BuyerQuest refused to perform under the Reseller Agreement at all as of January 2020 and failed to comply with several specific provisions prior to that time. Complaint ¶¶ 31-32. Tradeshift's claim for breach of the implied covenant, in contrast, is based on BuyerQuest's bad faith conduct of, *inter alia*, disparaging Tradeshift to Smucker, securing its own deal with Smucker, and failing to cooperate with Tradeshift's efforts to salvage the project with Smucker. *Id.* ¶ 43 ("BuyerQuest took steps to encourage Smucker to wrongfully terminate the [Tradeshift/Smucker Agreement]" and "refused to communicate with, cooperate with, or support Tradeshift . . . ."). This is different conduct implicating different rights from those implicated by Tradeshift's breach of contract claim.

Thus, Tradeshift has adequately pled each of the elements of a breach of the implied covenant of good faith and fair dealing claim and that claim is not duplicative of Tradeshift's breach of contract claim.

### D. <u>Tradeshift's Allegations Sufficiently Allege Punitive Damages Under the Federal Pleading Standard</u>

In a last gasp, BuyerQuest argues that Tradeshift's prayer for punitive damages should be dismissed because it does not meet California's heightened standard for seeking such relief.

Motion at 10. However, in contrast to California's heightened standard for seeking punitive damages, the federal pleading standard does not require factual specificity. Rather, for purposes of pleading punitive damages, "under Rules 8 and 9(b), malice, fraud and oppression may be averred generally." *Focal Point Films, LLC v. Sandhu*, No. 19-CV-02898-JCS, 2019 WL 7020209, at *12 (N.D. Cal. Dec. 20, 2019) (explaining that although "California state law controls the substantive elements" that must be pled for punitive damages, "the heightened pleading standard that applies in state court under this provision does not apply in Federal court").

Thus, to satisfy the federal pleading standard for punitive damages, a plaintiff "may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015). These relaxed pleading requirements have been interpreted to find punitive damages allegations sufficient, even without use of statutory language, where facts alleged that defendants acted intentionally to cause injury to the plaintiff. *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, No. 3:15-CV-01729-LB, 2015 WL 5000102, at *14 (N.D. Cal. Aug. 21, 2015), aff'd, 699 F. App'x 667 (9th Cir. 2017) (finding punitive damages sufficiently alleged through intentional and unauthorized acts causing harm to plaintiff, though allegations did not include the words "oppression," "fraud," or "malice").

Tradeshift's complaint alleges facts to support malice, defined as "conduct which is intended by the defendant to cause injury to the plaintiff." Cal. Civ. Code § 3294(c)(1). Specifically, Tradeshift alleges that BuyerQuest intentionally convinced Smucker to terminate its agreement with Tradeshift in favor of an agreement with BuyerQuest so that it could reap all of the profits from the project for itself. Complaint ¶¶ 26-27, 37. Tradeshift also alleges that BuyerQuest acted in bad faith in making disparaging statements about Tradeshift to Smucker and in flouting its obligation of good faith and fair dealing. Under the liberal pleading standards for punitive damages, such allegations are more than sufficient to demonstrate malice.

## VI. <u>CONCLUSION</u>

BuyerQuest's motion is not predicated on what Tradeshift has actually pled nor on what the law actually requires. For these reasons and more, the Court should deny BuyerQuest's

motion to dismiss in its entirety. However, should the Court find any allegations lacking or unclear, the law requires that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, the Ninth Circuit has emphasized that Rule 15 should be applied with "extreme liberality." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). As such, a court should grant leave to amend "unless it is clear that the complaint's deficiencies cannot be cured by amendment." *Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 753 (N.D. Cal. 2013). But an amended pleading is not necessary since Tradeshift has already pled valid claims, of which BuyerQuest is on adequate notice, and those claims should be allowed to proceed on the merits without further delay.

Dated: April 1, 2020

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Amy K. Van Zant*

AMY K. VAN ZANT

Attorneys for Plaintiff
TRADESHIFT, INC.