**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Liana W. Chen (CA Bar No. 296965)
Ruben Peña (CA Bar No. 328106)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com
ruben@KRInternetLaw.com

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**TRADESHIFT, INC.**, a Delaware corporation,

Plaintiff,

v.

**BUYERQUEST, INC.**, an Ohio corporation,

Defendant.

Case No. 3:20-cv-01294-RS

**DEFENDANT BUYERQUEST, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. RULE CIV. PROC. 12(B)(6)**

Time: 1:30 p.m.
Date: May 21, 2020
Before: The Hon. Richard Seeborg
Ctrm.: 3—17th Floor

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## INTRODUCTION

Tradeshift, Inc. ("Tradeshift")'s Opposition does not change the fact that the Complaint has only the vaguest allegations about BuyerQuest, Inc. ("BuyerQuest")'s conduct. When Tradeshift's conclusory statements are stripped from the Complaint, all that is left are: a) a vague allegation that BuyerQuest made unspecified disparaging statements about Tradeshift, b) a vague allegation that BuyerQuest made unspecified misrepresentations about the capabilities of Tradeshift and its products, and c) an admission that third party J.M. Smucker, Inc. ("Smucker") terminated its contract with Tradeshift because Tradeshift had "made certain intentional and material misrepresentations about its product capabilities that rendered the agreement voidable." While Tradeshift hypothesizes that Smucker's reason for terminating was pretextual, this argument does not cure the lack of facts in the Complaint. Thus, Tradeshift's claims fail for the same reasons set forth in BuyerQuest's opening brief, and as summarized below:

- Breach of Contract: Tradeshift's breach of contract claim remains fatally vague where Tradeshift has not pled the legal effect of the relevant contract terms and has not described BuyerQuest's breaching conduct with any specificity.
- Intentional Interference with Contractual Relations: Tradeshift's Complaint does not provide any details about how BuyerQuest interfered with the Smucker contract; instead, the Complaint relies solely on the vaguest allegations that BuyerQuest "disparaged Tradeshift" and "misrepresented the capabilities of Tradeshift and its products." Such vague allegations do not state a plausible claim for relief.
- Breach of the Implied Covenant of Good Faith and Fair Dealing: To state a claim for breach of the implied covenant, Tradeshift was required to allege, with specificity, BuyerQuest's conscious and deliberate breach of a particular contractual provision. The Complaint does not do this.

For all of these reasons, Tradeshift's Complaint fails. And because Tradeshift has not identified how it can amend the Complaint to cure these deficiencies, the Court should dismiss Tradeshift's claims with prejudice.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## ARGUMENT

### A. Tradeshift disregards the requirement to specifically plead the substance of a contract's relevant terms and the allegedly breaching conduct.

In support of its breach of contract claim, Tradeshift argues that it adequately pled the terms of the Reseller Order Form ("RoF") and BuyerQuest's breach. However, Tradeshift has not identified any allegation in the Complaint that gives more than a vague description of the RoF's terms or of BuyerQuest's conduct.

First, Tradeshift argues that its allegations describing the RoF are adequate, "as there is no requirement that Tradeshift attach a copy of the relevant contract or quote the breached provisions *verbatim*." (Opp. at 5:21–22 (emphasis in original).) Contrary to Tradeshift's argument, "[t]o state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.,* 216 Cal. App. 3d 239, 252 (1989)). "A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint." *Id.* This requirement applies to "all the terms of the contract." *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 941 (N.D. Cal. 2015) (quoting *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880)).

Here, Tradeshift concedes that it has not attached the RoF nor set forth all of the relevant terms verbatim. Rather, Tradeshift has selectively quoted from three sentences of a 37-page contract. Thus, Tradeshift has not alleged the RoF in haec verba.

Tradeshift argues that it has pled the legal effect of the RoF. (Opp. at 6:15.) However, to plead the legal effect of a contract, the plaintiff must allege the substance of the contract's relevant terms. *See N. Cty. Commc'ns Corp. v. Verizon Glob. Networks, Inc.*, 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010). "This is more difficult than pleading the precise language, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Parrish v. Nat'l Football League Players*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007) (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)). Tradeshift argues that it has pled the legal effect of the RoF by alleging that the RoF required BuyerQuest "to defer to and obtain Tradeshift's agreement on project scope changes, to communicate with Tradeshift about project management overall," and to "provide certain consulting services and software subscriptions related to the Smucker project." (Opp. at 6:16–18.) This description provides no insight into the substantive provisions of the RoF and falls far short of communicating a comprehensive and careful analysis of the RoF. Thus, Tradeshift has failed to plead the legal effect of the RoF's relevant provisions.

Tradeshift has also failed to plead any facts regarding BuyerQuest's alleged breach. Boilerplate allegations of breach, which merely state that the defendant did not comply with a contract's provision, do not adequately describe a breach. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990–91 (S.D. Cal. 2012) (finding that counterclaimant had not pled sufficient facts regarding breach of NDA where it had not explained what trade secrets were disclosed or how those trade secrets fell within scope of NDA); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011) (similar).

Here, Tradeshift has not pled any facts regarding BuyerQuest's allegedly breaching conduct. Rather, Tradeshift has alleged only that BuyerQuest breached the RoF by not complying with its provisions. Tradeshift argues that such allegations are adequate because they explain how BuyerQuest "refused to perform under the Reseller Agreement at all," and that BuyerQuest "failed to abide by certain project management and communications obligations." (Opp. at 5:5–15.) Again, this argument is completely circular. Tradeshift cannot state a claim for breach of contract by alleging only that BuyerQuest did not comply with the RoF. Tradeshift must provide at least some details about how BuyerQuest did not comply with the RoF.

Because Tradeshift has not adequately described the relevant terms of the RoF or BuyerQuest's alleged breach, the Court should dismiss the breach of contract claim.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**B. Tradeshift has not explained its lack of facts supporting its interference claim.**

Tradeshift's Opposition does nothing to change the fact that the Complaint has only the vaguest allegations supporting Tradeshift's interference claim. As an initial matter, Tradeshift's Opposition only highlights that its interference claim is subject to Rule 9(b). While Tradeshift disputes that Rule 9(b) applies to its interference claim (Opp. at n.3), it simultaneously acknowledges that the claim is based on allegations that "BuyerQuest disparaged Tradeshift and its products to Smucker and misrepresented the capabilities of Tradeshift and its products." (Compl. ¶37.) The case cited by Tradeshift to argue against the application of Rule 9(b) actually held that the plaintiff failed to satisfy Rule 9(b) for claims involving misrepresentations. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Thus, Tradeshift must comply with Rule 9(b) as to all aspects of its interference claim that are grounded in misrepresentation. *See id.*

**1. Tradeshift's vague allegations do not satisfy any pleading standard.**

Tradeshift fails to meet any pleading standard with respect to the intent and causation elements of its interference claim. Tradeshift repeatedly highlights its allegation that "[o]n information and belief, BuyerQuest disparaged Tradeshift to Smucker in such communications, including claiming that Tradeshift could not provide functionality that Tradeshift could, in fact, provide and, on information and belief, claiming that Tradeshift was solely at fault for all problems on the Smucker project." (Compl. ¶26.) However, this is allegation is so factually vague as to lack plausibility. *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1072 (S.D. Cal. 2019) ("The plausibility standard demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement.").

Tradeshift points to *Bus. Integration Tech. v. MuleSoft Inc.*, No. C 11-04782 EDL, 2012 WL 13041534, at *3 (N.D. Cal. Mar. 23, 2012) for the proposition that it has alleged sufficient facts. However, in *MuleSoft,* the plaintiff alleged that the defendant abruptly severed its business relationship with the plaintiff, which in turn, prevented the plaintiff from providing services under the contract at issue. 2012 WL 13041534, at *3. In

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

contrast, Tradeshift does not allege that BuyerQuest terminated its contract with Tradeshift or otherwise made Tradeshift's performance under its contract with Smucker impossible. Tradeshift likewise cherry picks from *United States v. Agbayani Constr. Corp.*, No. 14-CV-02503-MEJ, 2014 WL 3866095 (N.D. Cal. Aug. 5, 2014). In *Agbayani*, the plaintiff claimed that one of the defendants not only made false representations regarding work on the project, but also "advised USB and ECOM to terminate their contracts." 2014 WL 3866095, at *4. Tradeshift has not, and cannot, allege that BuyerQuest "advis[ed], counsel[ed], and persuad[ed]" Smucker to terminate its contract with Tradeshift. *Id.* Importantly, in *Agbayani,* the court granted the other defendant's motion to dismiss for failure to satisfy Rule 9(b) where there was a request for punitive damages. *See id.*, 2014 WL 3866095, at *3.

Because Tradeshift has alleged no details about BuyerQuest's alleged interference, Tradeshift has not satisfied any pleading standard for its interference claim.

**2. Tradeshift concedes that Smucker terminated the contract for cause.**

Tradeshift argues that BuyerQuest inappropriately raised factual issues in its opening brief. Not so. Rather, in its opening brief, BuyerQuest highlighted Tradeshift's failure to plead facts. And to the extent Tradeshift has pled non-generalized facts, those facts actually undercut Tradeshift's position. In particular, in its Complaint, Tradeshift concedes that "the purported basis for Smucker's termination was that Tradeshift had allegedly made certain intentional and material misrepresentations about its product capabilities that rendered the agreement voidable." (Compl. ¶17.) While Tradeshift hypothesizes that Smucker's reason for terminating was pretextual, Tradeshift alleges no facts supporting this hypothesis.

**3. Tradeshift misinterprets the standard for dismissing duplicative torts.**

The Court should also dismiss Tradeshift's interference claim as duplicative of Tradeshift's breach of contract claim. These two claims are duplicative because Tradeshift alleges that BuyerQuest damaged Tradeshift's relationship with Smucker through a single set of conduct, which allegedly amounted to both a breach of the RoF and an interference with the Smucker contract.

In response, Tradeshift argues that its interference claim is proper because California has abolished the "stranger" doctrine. (Opp. at 15:1–5.) Tradeshift's argument fails for two reasons. First, California has not abolished the "stranger" doctrine. "The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." *O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*, 362 F. Supp. 3d 778, 785 (N.D. Cal. 2018) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994)) (internal quotations omitted); *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 997 (2018) (quoting *Applied Equip. Corp.*, 7 Cal. 4th 504) ("It has long been held that *a stranger to a contract* may be liable in tort for intentionally interfering with the performance of the contract.") (internal quotations omitted; emphasis in original).

Second, and more importantly, Tradeshift misconstrues BuyerQuest's argument. Regardless of whether BuyerQuest is a stranger to the Smucker contract, BuyerQuest's alleged conduct that interfered with the Smucker contract is the same conduct that allegedly breached the RoF. Thus, the claims are duplicative regardless of Tradeshift's "stranger" status. The situation is similar to that in *Hamilton San Diego Apartments v. RBC Capital Markets Corp.*, No. 312CV2259JMBLM, 2013 WL 12090313, at *5 (S.D. Cal. Mar. 5, 2013), where the court dismissed an interference claim as duplicative of a breach of contract claim because the alleged damages appeared to have been a foreseeable consequence of the defendant's breach of the main contract, and as such, the breach of contract claim was the more appropriate claim.

For all of these reasons, Tradeshift's intentional interference claim should be dismissed.

**C. Tradeshift's claim for a breach of the implied covenant of good faith and fair dealing remains deficient.**

In its Opposition, Tradeshift misconstrues the pleading requirements for a claim for breach of the implied covenant of good faith and fair dealing.

First, Tradeshift argues there is no "legal requirement" to identify the specific

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

contractual provision frustrated, and that it only needs to allege that BuyerQuest failed to "take measures that the contract presupposed." (Opp. at 18:10–1). Tradeshift is incorrect. Federal courts in California have repeatedly held that to state a claim for breach of the implied covenant, a plaintiff "must identify the specific contractual provision that was frustrated." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156 (N.D. Cal. 2013) (citing *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010)); *see also Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1048 (C.D. Cal. 2015) ("In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged.") (quoting *Inter–Mark USA, Inc. v. Intuit, Inc.*, No. C–07–04178 JCS, 2008 WL 552482, *6 (N.D. Cal. Feb. 27, 2008). As discussed above, *supra* Part A, Tradeshift's Complaint does not adequately plead any term of the RoF.

Second, Tradeshift does not sufficiently describe how BuyerQuest consciously and deliberately breached the RoF. "[F]acts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *In re Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*, No. MD 11-2269 TEH, 2012 WL 1123863, at *4 (N.D. Cal. Apr. 3, 2012) (quoting *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1 (2007)). Where a plaintiff only offers vague and general allegations regarding the defendant's conduct, a court must dismiss a claim for breach of the implied covenant. *See, e.g.*, *F.M. Tarbell Co. v. A & L Partners, Inc.*, No. CV 10-1589 PSG EX, 2011 WL 1153539, at *3 (C.D. Cal. Mar. 23, 2011) ("Given the vagueness and generality of the allegations upon which Windermere's implied covenant claim is based, the Court cannot ascertain whether either the allegedly misleading communications or the filing of this lawsuit constitute a breach of the settlement agreement."); *Abels v. Bank of Am.*, No. C 11-0208 PJH, 2011 WL 1362074, at *3 (N.D. Cal. Apr. 11, 2011) ("apart from conclusorily alleging these purported breaches, plaintiff alleges no supporting facts or details that sufficiently establish that defendant breached any contractual obligation, nor does plaintiff allege the manner in which defendant breached such contractual obligation, i.e., by

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

pleading specific conduct that frustrated plaintiff's rights to benefit from the contract.”).

Here, Tradeshift offers only the most general allegations of BuyerQuest’s allegedly conscious and deliberate breaching conduct—*i.e.* that “BuyerQuest took steps to encourage Smucker to wrongfully terminate” the Smucker contract, and that “BuyerQuest also refused to communicate with, cooperate with, or support Tradeshift.” (Compl. ¶43.) These vague allegations do not allow the Court to determine whether BuyerQuest’s alleged conduct constitutes a breach of the RoF.

Finally, Tradeshift argues that even though its implied covenant and breach of contract claims overlap, they should not be dismissed. (Opp. at 19:4–5.) However, it is well-settled that if allegations in an implied covenant claim “do not go beyond the statement of a mere contract breach . . . they may be disregarded as superfluous as no additional claim is actually stated.” *Nasseri*, 147 F. Supp. 3d at 943 (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1391, 1395 (1990)). Thus, Tradeshift argues that its implied covenant claim actually differs from its breach of contract claim, pointing to the differently-worded allegations in its two claims. (Opp. at 19:12–20.). However, a court “should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought.” *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004). Rather, a court must determine if it can distinguish the two claims based on the same set of facts. *See id.* Here, Tradeshift’s claims for breach of contract and implied covenant arise out of the same alleged conduct and seek the same relief—*i.e.*, that BuyerQuest “refused to communicate with, cooperate with, or support Tradeshift” in Tradeshift’s work under the Smucker contract. (Compare Compl. ¶¶31 and 43.) Because Tradeshift has not identified any separate breach that would support its implied covenant claim, the claim is duplicative.

For all of these reasons, Tradeshift has failed to state claim for breach of the implied covenant of good faith and fair dealing.

**D. Tradeshift fails to adequately allege statutory or punitive damages.**

As an initial matter, Tradeshift does not dispute removal of its prayer for statutory

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

damages.

Regarding punitive damages, Tradeshift argues that its allegations of intentional interference and breach of the implied covenants include allegations of malice. However, as discussed above, Tradeshift only includes the most threadbare factual allegations, raising questions about exactly what conduct was malicious. Moreover, two of the cases cited by Tradeshift for the proposition that its allegations are sufficient are inapposite. *See Focal Point Films, LLC v. Sandhu*, No. 19-CV-02898-JCS, 2019 WL 7020209, at *12 (N.D. Cal. Dec. 20, 2019) (granting motion to dismiss and noting the party "has not included even conclusory allegations that Gibel acted with malice or fraudulent intent"); *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015) (plaintiff alleged "Defendant's actions . . . were taken with malice, fraud, or oppression").

As discussed above, Tradeshift's interference and good faith and fair dealing claims should be dismissed. However, if those claims survive, and if a prayer for punitive damages is allowed based on Tradeshift's allegations of malice, then Tradeshift must meet the heightened pleading standard for those claims as outlined above. *See Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice.

Respectfully Submitted,

DATED: April 8, 2020

**KRONENBERGER ROSENFELD, LLP**

By: s/Karl S. Kronenberger
Karl S. Kronenberger

Attorneys for Defendant BuyerQuest, Inc.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108