ORRICK, HERRINGTON & SUTCLIFFE LLP
AMY K. VAN ZANT (SBN 197426)
avanzant@orrick.com
JASON K. YU (SBN 274215)
jasonyu@orrick.com
TAMMY SU (SBN 329652)
tsu@orrick.com
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614 7400
Facsimile: (650) 614 7401

Attorneys for Plaintiff
TRADESHIFT, INC.

KRONENBERGER ROSENFELD, LLP
KARL S. KRONENBERGER (SBN 226112)
karl@KRInternetLaw.com
JEFFREY M. ROSENFELD (SBN 222187)
jeff@KRInternetLaw.com
LIANA W. CHEN (SBN 296965)
liana@KRInternetLaw.com
RUBEN PEÑA (SBN 328106)
ruben@KRInternetLaw.com
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955 1155
Facsimile: (415) 955 1158

Attorneys for Defendant
BUYERQUEST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BUYERQUEST, INC., an Ohio corporation,<br><br>Defendant. | Case No. 3:20-cv-1294-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT**<br><br>Date: June 4, 2020<br>Time: 10 a.m.<br>Place: San Jose Courthouse,<br>        Courtroom 3 – 17th Floor<br>Judge: Honorable Richard Seeborg |

Tradeshift, Inc. ("Tradeshift") and BuyerQuest, Inc. ("BuyerQuest") submit this Joint Case Management Statement and Rule 26(f) Report ("CMS") under the Federal Rules of Civil Procedure, Civil Local Rule 16-9, the Standing Order for all Judges of the Northern District of California dated November 1, 2018, and the Clerk's Notice setting the case management conference in the above-captioned action (the "Action"), in advance of the June 4, 2020 Initial Case Management Conference.

**1. JURISDICTION AND SEVICE**

The Court has federal subject matter jurisdiction in this Action under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. There are no known issues with personal jurisdiction or venue and all parties have been served.

**2. FACTS**

*Tradeshift's Contentions*

In June 2019, Tradeshift and BuyerQuest entered into a set of agreements governing their relationship. One of the agreements memorialized Tradeshift's role generally as a reseller of BuyerQuest's services and software. Another agreement (the "Reseller Order Form") specifically addressed the parties' roles with respect to a particular project for J.M. Smucker ("Smucker"). The Reseller Order Form stated that BuyerQuest would provide Tradeshift with BuyerQuest services and software licenses to be used in the project and, in return, Tradeshift would compensate BuyerQuest in specific amounts.

Around the same time, Tradeshift also entered into an agreement with Smucker for the Smucker project. Pursuant to that agreement, Tradeshift agreed to implement and provide a software solution that comprised both Tradeshift software and BuyerQuest software. In return, Smucker agreed to compensate Tradeshift in specific amounts. The agreement noted that Tradeshift was authorized to retain BuyerQuest as a "subcontractor" on the project, but did not identify any specific contractual obligations between Smucker and BuyerQuest.

Several months into the Smucker project, Smucker wrote to Tradeshift to state that it was voiding its contract with Tradeshift and locking Tradeshift out of the project. In its letter,

Smucker cited alleged deficiencies in Tradeshift's capabilities (which were not true); Tradeshift later learned that BuyerQuest had misled Smucker into believing (incorrectly) that Tradeshift could not complete the contract so that Smucker would terminate its contract with Tradeshift and give the entire project to BuyerQuest. Tradeshift objected to the legitimacy of the termination and attempted to work things out with Smucker. Tradeshift also reached out to its subcontractor, BuyerQuest, to solicit its cooperation but BuyerQuest refused.

On February 20, 2020, Tradeshift filed the Complaint in this action against BuyerQuest. Tradeshift contends that BuyerQuest breached its contract with Tradeshift by, among other things, refusing to provide the services and software that it agreed to provide. Tradeshift further contends that BuyerQuest tortiously interfered with Tradeshift's contract with Smucker by, among other things, convincing Smucker to improperly terminate its contract with Tradeshift and instead hire BuyerQuest to enter into a new agreement for the Smucker project, which resulted in Smucker breaching its obligations to Tradeshift. Tradeshift also alleges that BuyerQuest breached the implied covenant of good faith and fair dealing by, among other things, making misrepresentations to Smucker about BuyerQuest, and causing Smucker to terminate the original Smucker project.

Smucker and Tradeshift have also now filed complaints against one another in the S.D.NY related to their dispute over the Tradeshift/Smucker agreement.

*BuyerQuest's Contentions*

In June 2019, Tradeshift entered into the Smucker Services Agreement, under which Tradeshift agreed to provide e-procurement software to Smucker. Concurrently, Tradeshift entered into several agreements with BuyerQuest to resell BuyerQuest's e-procurement software to Smucker. After Tradeshift breached its contracts with BuyerQuest and Smucker, including by failing to provide crucial functionality to Smucker, Smucker terminated its contract with Tradeshift in January 2020. Although BuyerQuest fully performed under its contract and acted non-tortiously and in good faith, Tradeshift filed this lawsuit in apparent attempts to blame BuyerQuest while salvaging a relationship with Smucker. However, on May 11, 2020, Smucker filed a lawsuit against Tradeshift for fraud, misrepresentation, and breach of the Smucker contract (cited below in Section

10). Later the same day, Tradeshift sued Smucker for breach of the Smucker contract. If Tradeshift has incurred damages, it is solely due to its own conduct, not to BuyerQuest's actions.

**3.    LEGAL ISSUES**

Without limiting the scope of discovery, the parties have identified the following disputed issues, some of which are mixed issues of law and fact. By including these issues in the joint statement, the parties do not concede their relevance to the case.

- a) Whether BuyerQuest has breached its agreements with Tradeshift.
- b) Whether BuyerQuest intentionally interfered with the Tradeshift-Smucker contract.
- c) Whether BuyerQuest breached its implied covenant of good faith and fair dealing with Tradeshift.
- d) Whether punitive damages should be awarded.
- e) Whether TradeShift's claims are barred by any affirmative defense that BuyerQuest may raise if/when it files a responsive pleading, including unclean hands, consent, estoppel, waiver, failure to mitigate, frustration of purpose, prevention of performance, impossibility, abandonment, and modification.

**4.    MOTIONS**

BuyerQuest filed a motion to dismiss on March 18, 2020 (DE 15). Tradeshift filed its response on April 1, 2020 and BuyerQuest filed its reply on April 8, 2020. The Court denied the motion on May 20, 2020.

The Parties also anticipate the following motions to be filed: discovery motions, summary judgment motions, pre-trial motions, and other dispositive and non-dispositive motions.

**5.    AMENDMENT OF PLEADINGS**

Defendant has not yet filed a responsive pleading. The parties agree that the deadline for joining parties and amending pleadings should be 90 days after Defendant files its initial pleading, and that otherwise the parties may only amend its pleadings upon a showing of good cause, or upon being granted leave to amend by the Court.

**6.    EVIDENCE PRESERVATION**

The parties have reviewed the Northern District's Guidelines Relating to the Discovery of

Electronically Stored Information and the Checklist for Rule 26(f) Meet and Confer Regarding ESI. The parties certify that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Each party represents that it has instituted reasonable document retention procedures so as to maintain any relevant documents, electronic or otherwise, or any other relevant electronically recorded material, until this dispute is resolved.

**7.   DISCLOSURES**

Pursuant to their obligations under Federal Rule of Civil Procedure 26(a)(1)(C), the parties have stipulated to serve their initial disclosures by June 3, 2020. Each party reserves its right to amend such disclosures as discovery progresses.

**8.   DISCOVERY**

   a)   **Discovery Taken to Date**

   No discovery has been taken to date.

   b)   **Scope of Anticipated Discovery**

   The parties anticipate that the scope of discovery will include:

   *Tradeshift's Anticipated Discovery*

   a) documents and communications related to the drafting, compliance, and enforcement of the BuyerQuest/Tradeshift Reseller Agreement and related contracts;

   b) documents and communications evidencing BuyerQuest's knowledge of Tradeshift's agreement with Smucker;

   c) documents and communications between BuyerQuest and Smucker referring or relating to Tradeshift and/or the Smucker Project; and

   d) documents and communications related to any contemplated, proposed, or actual subsequent agreement between Smucker and BuyerQuest for any additional projects or work, including any documents and communications related to or leading such agreement.

*BuyerQuest's Anticipated Discovery*

    a) Documents and communications regarding Tradeshift's formation of contracts with BuyerQuest and Smucker.

    b) Documents and communications regarding Tradeshift's and BuyerQuest's performance under its contracts with each other and with Smucker.

    c) Documents reflecting the alleged damages suffered by Tradeshift and Tradeshift's efforts to mitigate those damages.

    d) Documents containing representations by Tradeshift regarding the functionality of its software and its financial position.

### c) **Proposed Limitations on or Modifications of Discovery Rules**

The parties agree to abide by the discovery limitations of the Federal Rules of Civil Procedure, with the following proposed modifications:

#### 1. **Depositions**

The parties propose that each side may take 30 hours of deposition time on the record, including 30(b)(6) depositions but excluding third-party depositions and expert depositions. The parties agree to meet and confer in good faith on the proper time limits for expert depositions closer to the time for those depositions. If the parties are unable to resolve any disputes as to such limits, the parties will raise that issue at a later case management conference.

#### 2. **Requests for Admission**

Each side may serve 25 requests for admission. These limitations exclude requests for admission directed to the authentication of documents, of which the parties may serve an unlimited number.

#### 3. **Interrogatories**

Each side may serve 25 interrogatories. In addition, the parties can mutually agree in writing to an additional 10 interrogatories per side, if good cause exists.

#### 4. **Expert Communications and Drafts**

Within three days after the disclosure of any expert report, the disclosing party shall send the opposing party—by FTP link or overnight mail—a copy of all documents cited in the expert

report.

Communications between counsel and retained testifying expert witness shall not be subject to discovery, unless the communications: (i) identify facts or data that counsel provided and that the expert considered or relied upon forming the opinions to be expressed; and/or (ii) identify assumptions that counsel provided and that the expert relied upon in forming the opinions to be expressed.

Notwithstanding the forgoing, communications between counsel and a retained expert during deposition shall not be discoverable. Communications and documents exchanged between counsel and non-testifying retained consulting expert witnesses are not discoverable. In addition, any draft reports, notes, working papers, or other preparatory materials, in whatever form, prepared by any retained expert or any person working with a retained expert, shall not be subject to discovery.

### 5. **Exclusion from Privilege Log**

The parties agree that they shall not be required to identify in a privilege log any communications between a party and its outside counsel concerning this action, which occurred after the filing of this lawsuit.

### d) **Discovery of ESI and Protective Order**

Concurrently with the filing of this statement, the parties have jointly filed a Proposed Order Regarding Discovery of Electronically Stored Information and Proposed Protective Order. The parties respectfully request that the Court enter both orders.

### e) **Discovery Plan**

The parties agree to a discovery plan to be executed in accordance with the limits provided above and the dates provided in **Appendix A**.

## 9. **CLASS ACTIONS**

Not applicable.

## 10. **RELATED CASES**

*The J.M. Smucker Company v. Tradeshift, Inc.,* Case No. 1:20-cv-03653-ER (Filed May

11, 2020, S.D.N.Y.).[1]

*Tradeshift, Inc. v. Smucker Services Company*, Case No. 1:20-cv-03661-UA (Filed May 11, 2020, S.D.N.Y.), alleging breach of the June 2019 services agreement.

**11.   RELIEF**

Tradeshift seeks relief as stated in its Complaint, including compensatory damages; punitive and/or statutory damages; pre-judgment and post-judgment interest at the maximum rate allowed by law; reasonable attorneys' fees, court costs, and expert witness fees incurred by virtue of this action; and such other and further relief as the Court may deem proper.

BuyerQuest will seek its attorney's fees, costs, and expert witness fees.

**12.   SETTLEMENT AND ADR**

In accordance with ADR Local Rule 3-5, counsel for the parties met and conferred regarding ADR options offered by the Northern District of California. The parties have stipulated to private mediation in the ADR stipulation filed on May 4, 2020.

**13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Tradeshift does not consent to have a magistrate judge conduct all further proceedings, including trial and entry of judgment (DE 11).

**14.   OTHER REFERENCES**

The parties agree that the case is not suitable for reference to the Judicial Panel on Multidistrict Litigation.

**15.   NARROWING ISSUES**

The parties agree that this case does not require a plan to narrow the issues.

**16.   EXPEDITED TRIAL PROCEDURE**

The parties agree that this case should not be handled on an expedited basis.

---

[1] While the claims asserted in the J.M. Smucker complaint are related to those pled in this case, Smucker filed its case on behalf of the wrong Smucker entity and thus it is unclear whether this complaint will stand or be withdrawn. The issue is being briefed in the S.D.N.Y right now.

**17.   SCHEDULING**

The parties propose the pre-trial schedule attached as **Appendix A**.

**18.   TRIAL**

Tradeshift has made a demand for jury trial.  Tradeshift expects that the trial will last 5-6 court days.

**19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Tradeshift filed its Certification of Interested Entities or Persons Under Civil L.R. 3-15 on February 20, 2020 (DE 3). BuyerQuest filed its Certification of Interested Entities or Persons Under Civil L.R. 3-15 on March 18, 2020 (DE 16).

**20.   PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.   OTHER**

The parties consent to e-mail service pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) if the documents are sent via email to all of the email addresses listed below:

For Tradeshift:

> Amy Van Zant (avanzant@orrick.com)
> Jason Yu (jasonyu@orrick.com)
> Tammy Su (tsu@orrick.com)
> Katri Lahtinen (klahtinen@orrick.com)

For BuyerQuest:

> Karl Kronenberger (karl@krinternetlaw.com)
> Jeffrey Rosenfeld (jeff@krinternetlaw.com)
> Liana Chen (liana@krinternetlaw.com)
> Ruben Pena (ruben@krinternetlaw.com)

The parties may continue to serve by any permissible method of their choice.  This agreement does not require separate service of documents filed on ECF, service of which shall continue to be effective on the parties as provided by General Order No. 45, § 9.  The parties agree that a courtesy copy of any document to be served by a method other than e-mail or ECF will be sent to the attorneys of record for the receiving party by e-mail on the date service is

made.

The parties are not presently aware of any other matters at this time that may facilitate the just, speedy, and inexpensive resolution of this matter.

Dated: May 27, 2020   By: */s/ Amy K. Van Zant*
AMY K. VAN ZANT

Attorneys for Plaintiff
TRADESHIFT, INC.

Dated: May 27, 2020   By: */s/ Karl Kronenberger*
KARL S. KRONENBERGER

Attorneys for Defendant
BUYERQUEST, INC.

## **ATTESTATION**

I attest that, under Civil Local Rule (5-1)(i)(3), I have obtained concurrence in the filing of this document from all Signatories.

Dated: May 27, 2020   Orrick, Herrington & Sutcliffe LLP

By: */s/ Amy K. Van Zant*
AMY K. VAN ZANT

Attorneys for Plaintiff
TRADESHIFT, INC.

# APPENDIX A

| Event | Proposed Agreed Date |
|---|---|
| **Initial Disclosures** | June 3, 2020 |
| **Case Management Conference** | June 4, 2020 |
| **Deadline to meet and confer regarding case resolution and file joint status report** | June 16, 2020 |
| **Deadline to Amend Pleadings without Leave of Court** | 90 days after BuyerQuest's filing of initial answer |
| **Further Case Management Conference** | October 14, 2020 |
| **Close of fact discovery** | February 19, 2021 |
| **Opening Expert Report (for party with burden of proof)** | March 26, 2021 |
| **Rebuttal Expert Reports** | April 23, 2021 |
| **Close of expert discovery** | May 28, 2021 |
| **Deadline to File Dispositive Motions** | June 25, 2021 |
| **Last day to hear dispositive motions** | August 6, 2021 |
| **Pretrial conference** | August 27, 2021 |
| **Trial begins** | September 3, 2021 |