UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRADESHIFT, INC.,

    Plaintiff,

v.

BUYERQUEST, INC.,

    Defendant.

Case No. 20-cv-01294-RS (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 46

We are here on the parties' joint discovery letter brief at ECF No. 46.

By way of background, Plaintiff Tradeshift has sued its former subcontractor, Defendant BuyerQuest, concerning the termination of a deal with Smucker. ECF No. 1 (Complaint). In June 2019 Tradeshift entered into an agreement with Smucker pursuant to which Tradeshift provided certain software on an annual subscription basis and certain services related to implementing and managing that software. *Id*. ¶ 9. Tradeshift also entered into several agreements with BuyerQuest in connection with the Smucker project. *Id*. ¶ 12.

The parties began work on the Smucker project in July 2019, and the project appeared to Tradeshift to be going well as of January 2020, *id*. ¶ 16, when out of the blue Smucker purported to terminate the project effective January 17, 2020. *Id*. ¶¶ 16-20. Tradeshift now understands that BuyerQuest had been disparaging Tradeshift behind its back in communications with Smucker, with the goal of having Smucker cut Tradeshift out of the picture and contract directly with BuyerQuest. *Id*. ¶¶ 25-27. Tradeshift now sues BuyerQuest for breach of contract, intentional interference with contractual relations, and breach of the implied covenant of good faith and fair dealing. *Id*. ¶¶ 28-44.

As part of discovery into its claims, Tradeshift now seeks discovery about the BuyerQuest-

1   Smucker project that replaced the Tradeshift-Smucker project.  It has requested all project
2   documents for the project described in BuyerQuest's March 6, 2020 contract with Smucker (RFP
3   22); all documents comprising or discussing any complaints, defects, schedule changes, or
4   feedback regarding the project described in BuyerQuest's March 6, 2020 contract with Smucker
5   (RFP 23); and all presentations (including slides) shared by BuyerQuest with Smucker (RFP 26).
6   BuyerQuest has refused to produce these materials, contending they are irrelevant and that this
7   discovery is not proportional.

The requested documents do not seem to have any relevance to Tradeshift's claims for breach of contract and breach of the implied covenant.  Those claims focus on BuyerQuest's alleged breach of obligations it owed to Tradeshift through agreements it entered into in connection with the Smucker project.  The Court is unable to see how documents generated in connection with the later contract between Smucker and BuyerQuest could shed light on those issues.  Also, in the letter brief Tradeshift does not assert that these claims provide a basis to find this discovery to be relevant.

Rather, Tradeshift focuses on its interference claim.  Intentional interference with contractual relations requires proof that (1) there was a contract between Tradeshift and Smucker, (2) BuyerQuest knew of the contract, (3) BuyerQuest's conduct prevented performance or made the performance more expensive or difficult, (4) BuyerQuest intended to disrupt the performance or knew that disruption of performance was certain or substantially certain to occur, (5) Tradeshift was harmed, and (6) BuyerQuest's conduct was a substantial factor in causing Tradeshift's harm. CACI 2201.

In the letter brief Tradeshift focuses on element six.  Tradeshift argues that if it can prove that BuyerQuest's criticisms of it that caused Smucker to terminate were off base, that would tend to show that BuyerQuest's conduct was a substantial factor in causing Smucker to terminate.  For example, if Tradeshift can show that any "must have" requirements that BuyerQuest cited were never implemented after Tradeshift left, or if it can show that its performance was not inadequate as shown by BuyerQuest's subsequent similar performance, or if it can show that hiccups on the project (such as defect lists, scheduling delays or changes in scope) were typical for this type of

project as shown by the fact that they continued after Tradeshift left, then Tradeshift asserts that will tend to show that BuyerQuest's alleged conduct was a substantial factor in the termination.

Let's pause for a moment to think about this from an evidentiary point of view. If all Tradeshift shows is that its project with Smucker had defect lists and BuyerQuest's later project with Smucker also had defect lists, that won't be useful evidence because it will be too general. To pursue this line of inquiry in a meaningful way, Tradeshift will need to show that the defects in its defect lists were similar in relevant ways to the defects in BuyerQuest's defect lists – for example, in terms of how long they took to correct, or how expensive the corrections were, or some other relevant metric for assessing defects. The same will be true for scheduling delays, changes in scope, and other issues. Most projects probably have some scheduling delays or changes in scope; for this comparison to have any weight, Tradeshift will need to show that the delays and scope changes in the two projects were similar to each other. And because the two projects will not be exactly the same, Tradeshift will need detailed information about the specifics of BuyerQuest's project with Smucker for any meaningful comparison of the projects to be possible. The Court's point is that to pursue this line of inquiry, Tradeshift will need *a lot* of discovery into the details of the second project. At oral argument Tradeshift denied this, saying the documents it seeks are not burdensome. However, this seems to be one of those situations where if we walk only a few feet down the discovery path, we're not going to get anything useful. Having seen no evidence at all, the Court assumes there were probably defect lists, scheduling delays, and scope changes in both projects because, well, that's how life usually works. To be able to compare different defects, different delays and different scope changes to meaningfully determine if they were similar to each other across the scope of both projects, we need to walk a good mile down this discovery path. And in drafting its RFPs, Tradeshift seemed to understand this. RFP 22 asks for "all" project documents, and RFP 23 asks for "all" documents discussing complaints, defects, schedule changes or feedback regarding the project. That's a lot of stuff.

But now we should release the pause button and ask ourselves why we would walk down this path at all. The substantial factor test is an inquiry into the role BuyerQuest's conduct played in influencing Smucker's decision to terminate the agreement. The allegedly tortious conduct by

3

BuyerQuest all happened in the time period leading up to the termination, not after, and Smucker's own documents leading up to the termination are probably the best evidence of why it terminated. The alleged tort was completed before the second project even began. Tradeshift argues that looking at the second project could show that Smucker's stated reasons for terminating were pretextual, but this case isn't about whether Smucker had good or sincere reasons to terminate the deal with Tradeshift. It's about what BuyerQuest did to influence that decision. Even if the performance of the second project could inferentially shed some light on that point, the relevance is attenuated, and we would expect the better and more relevant evidence to be elsewhere.

The dispositive problem with this discovery is that it is not proportional to the needs of the case. Tradeshift is essentially asking for every document generated in connection with BuyerQuest's project for Smucker. This is a burdensome request, unjustified by the slim possibility that a few of the requested documents might inferentially make Tradeshift's tort claim a little bit better. These requests essentially double the scope of written discovery in this case by changing it from one project to two. This discovery is not proportional.

Tradeshift's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: February 1, 2021

THOMAS S. HIXSON
United States Magistrate Judge