UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BUYERQUEST, INC.,<br><br>    Defendant. | Case No. 20-cv-01294-RS   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 69, 73, 74, 75 |

In this case Tradeshift alleges that BuyerQuest interfered with Tradeshift's June 2019 contract to provide software and services to Smucker. BuyerQuest was Tradeshift's subcontractor on the project, but Tradeshift alleges that BuyerQuest breached its contractual and good faith obligations to Tradeshift and secretly worked to convince Smucker to terminate the Tradeshift contract and enter into a new contract with BuyerQuest for 100% of the work. Separately, Tradeshift has sued Smucker in New York for breach of contract.

Tradeshift contends that BuyerQuest's CEO Jack Mulloy was behind the interference scheme and that he had communications with Smucker's Jason Barr. The basic issue we are dealing with is Tradeshift's efforts to get the emails between Mulloy and Barr that the two men sent from their personal email accounts, not their work email accounts. After initially objecting, BuyerQuest stated that it had searched Mulloy's gmail account and located only one responsive document, an October 22, 2019 email from Mulloy to Barr at the latter's personal email address. Smucker took the same approach (initially objecting, then agreeing to search) and produced two December 12, 2019 emails, one from Mulloy to Barr and a reply from Barr to Mulloy (with both using their personal email addresses). Tradeshift argues that the fact that BuyerQuest and Smucker produced *different* emails between Mulloy's and Barr's personal email accounts casts

doubt on their preservation and search efforts. While the Court is not familiar with the bulk of the evidence that has been produced in discovery, Mulloy's December 12 email to Barr (which was produced by Smucker in the New York action but not produced by BuyerQuest in this lawsuit) looks like a significant document. In that email, Mulloy trash talks Tradeshift to Barr and flat-out says his goal is to establish a direct relationship between BuyerQuest and Smucker. This is a highly relevant document, and it's concerning that BuyerQuest did not produce that email.

We are here on two motions. In the first, BuyerQuest moves to quash a subpoena that Tradeshift served on Google for non-content information sufficient to show the dates when Mulloy's gmail account sent or received emails to or from Barr's email accounts, including for emails that have been deleted. BuyerQuest argues that the subpoena is duplicative, harassing, and disproportionate to the needs of the case. The Court disagrees. The subpoena is duplicative of information that Tradeshift *requested* in this lawsuit, but it is not duplicative of the information it *received* from BuyerQuest. The purpose of the subpoena is to determine the gap between those two things. Far from harassing or disproportionate, the subpoena is narrowly tailored. It imposes no burden on BuyerQuest or Mulloy, and BuyerQuest has no standing to object to any burden on Google (and in any event, there is no indication that Google thinks the subpoena is burdensome).

Under the circumstances, Tradeshift has reason to be concerned about the adequacy of BuyerQuest's efforts to search Mulloy's gmail account for responsive work-related emails. If you view the situation in the very worst light (and Tradeshift does), the fact that BuyerQuest's CEO was using his personal email to trash talk Tradeshift and lobby Smucker to contract directly with BuyerQuest is itself suspicious and suggests an attempt to have communications that the lawyers won't find during discovery. Indeed, Tradeshift says that the December 12 email is the only direct written communication between Mulloy and Barr in which Mulloy disparages Tradeshift. The situation became more suspicious in Tradeshift's view when BuyerQuest agreed to do a search of Mulloy's gmail account for responsive emails but delegated the search *to him*, and he didn't find the document that it looks like he was trying to hide in the first place.

BuyerQuest dismisses that as an unsupported conspiracy theory, saying Mulloy's work emails and slack communications with others at BuyerQuest documented his oral conversations

with Barr in which he criticized Tradeshift, so this was not something Mulloy was trying to hide. BuyerQuest says the use of Mulloy's gmail address probably has a simple explanation, suggesting that the emails forwarded webpages so likely defaulted to the gmail account by the share function of the webpage.  Unfortunately, an explanation of that nature – that technical functionality can cause Mulloy to default to his gmail account rather than his work account *and* he doesn't notice or fix that before sending the email – suggests the possibility that there exists an entire category of work-related emails from Mulloy's gmail account.  And there remains the problem that BuyerQuest still hasn't offered any explanation for how Mulloy didn't find the December email exchange when he searched his gmail account – you'd think that an email exchange between two specific people would be the easiest thing to find.  It's also not heartening for BuyerQuest to say that a simple explanation for why Mulloy used his gmail account for these work-related emails is "probably" correct (ECF No. 74 at 5, n.6), or that "[p]ossible innocent explanations" for the missing December emails "are obvious."  ECF No. 69 at 4.  Mulloy is BuyerQuest's CEO, he initiated the December email exchange and was the person who searched for responsive gmails, and the company's lawyers can talk to him, so why are the lawyers guessing about why and what he did?  Shouldn't the company *know* and be able to tell us, rather than just suggesting possibilities?  Tradeshift needs this subpoena to figure out what is really going on.  Accordingly, BuyerQuest's motion to quash the subpoena to Google is denied.

In the second motion, Tradeshift seeks an order compelling BuyerQuest to produce emails Mulloy sent or received from his personal email to Barr's personal email.  The motion specifically seeks an order requiring BuyerQuest's counsel to review Mulloy's personal emails for responsive documents.  BuyerQuest's opposition is difficult to understand.  BuyerQuest states that "[t]his dispute arises from Tradeshift's refusal to take 'yes' for an answer."  BuyerQuest continues: "After conferring, BuyerQuest agreed to voluntarily search Mr. Mulloy's personal email for correspondence between him and Smucker's Mr. Barr and produced the single email it located." Then BuyerQuest opposes the motion, arguing that it does not have possession, custody or control of Mulloy's personal email and that the discovery sought is not proportional to the needs of the case.  That doesn't sound like BuyerQuest is offering "yes" as an answer.

3

Let's take the issues in order. BuyerQuest acknowledges that it did agree to voluntarily search Mulloy's personal email for correspondence with Barr. All agreements are voluntary; once made, they are binding. *See* Fed. R. Civ. Proc. 29 ("Unless the court orders otherwise, the parties may stipulate that . . . other procedures governing or limiting discovery be modified . . ."); Adv. Comm. Notes, 1993 Amend. ("This rule is revied to give greater opportunity for litigants to agree upon modifications to the procedures governing discovery or to limitations upon discovery."). Even if BuyerQuest did not originally have an obligation to search Mulloy's personal email, it agreed to do that and must live up to that agreement.

But the Court also disagrees that when BuyerQuest's CEO used his personal email to conduct company business, those emails are somehow outside the company's reach or discovery obligations. Such an approach would gut Rule 34 and make it way too easy for high-level executives to hide evidence. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, *2 (N.D. Cal. July 12, 2017) ("Otto Trucking must produce responsive documents in the custody, control or possession of its officers, namely, Mr. Ron, Ms. Morgan or Mr. Bentley. It cannot hide responsive documents simply because these officers' work for Otto Trucking was done using their personal email accounts, especially since they are all current Otto Trucking officers."); *Miniace Pacific Maritime Ass'n*, 2006 WL 335389, *2 (N.D. Cal. Feb. 13, 2006) ("Numerous courts have found that corporations have control over their officers and employees and that corporations may be required to produce documents in their possession.").

Further, Tradeshift is right that BuyerQuest must have counsel review Mulloy's emails for responsiveness. This review cannot be done by Mulloy himself. Rule 26(g) places not only on the parties but also specifically on counsel an obligation to certify that a document production is complete. Fed. R. Civ. Proc. 26(g)(1). Because Tradeshift is seeking evidence of alleged wrongdoing committed by Mulloy, asking Mulloy to search his own emails to see if he can find any wrongdoing he committed is ridiculous. No reasonable person could have any confidence in that process. Review by counsel is especially important here, where Mulloy's self-review failed to uncover the December 12 email exchange, and BuyerQuest has no explanation for how that happened. Further, because this motion to compel is directed at communications between two

4

specific people, counsel can easily find responsive emails while ignoring everything nonresponsive. Therefore, counsel's review of Mulloy's personal emails is not unduly invasive of his privacy.

Accordingly, the Court grants Tradeshift's motion to compel.

**IT IS SO ORDERED.**

Dated: April 23, 2021

THOMAS S. HIXSON
United States Magistrate Judge