

**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

May 6, 2021

<u>Via ECF</u>

The Honorable Thomas Hixson
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom A - 15th Floor
San Francisco, CA 94102

Re:   *Tradeshift, Inc. v. BuyerQuest, Inc.*, Case No. 3:20-cv-1294-RS

## JOINT STATEMENT ON DISCOVERY DISPUTE

Dear Judge Hixson:

Pursuant to Your Honor's Discovery Standing Order (ECF 48-1), Plaintiff Tradeshift, Inc. and Defendant BuyerQuest, Inc. respectfully submit this Joint Statement regarding a discovery dispute on which they have reached an impasse. Namely, whether BuyerQuest should be compelled to produce additional documents and responses in response to Request for Production No. 15.

### ATTESTATION

In compliance with Local Rule 37-1(a) and the Standing Order of the Honorable Thomas Hixson, the parties have conferred in good faith by telephone but could not resolve this dispute.

| | |
|---|---|
| Dated: May 6, 2021 | GORDON REES SCULLY MANSUKHANI LLP |
| | */s/ Anthony D. Phillips*<br>Anthony D. Phillips<br>Attorneys for Defendant<br>BUYERQUEST, INC. |
| Dated: May 6, 2021 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | */s/ Amy K. Van Zant*<br>Amy K. Van Zant<br>Attorneys for Plaintiff<br>TRADESHIFT, INC. |

The Honorable Thomas Hixson
May 6, 2021
Page No. 2

## TRADESHIFT'S STATEMENT

Tradeshift seeks an order compelling BuyerQuest to complete a proper search for documents in response to Tradeshift's RFP No. 15. That request seeks documents relating to or discussing Tradeshift. BuyerQuest initially refused to search for *any* documents in response to this request, but ultimately agreed to produce responsive documents during the period March 6, 2020 to October 1, 2020 from a limited set of custodians. But BuyerQuest only searched for documents using the full term "Tradeshift," and did not search for documents that used the term "TS" even though BuyerQuest's own documents and testimony establish this is the primary term by which BuyerQuest employees refer to Tradeshift in communications. BuyerQuest subsequently indicated that its deficient search only resulted in privileged documents, but refused to provide a privilege log for the documents it was withholding.

The Court should compel BuyerQuest to perform a new search for documents responsive to RFP No. 15 and provide a privilege log for any withheld documents.[1] Recent BuyerQuest witness testimony establishes the importance of such documents. That testimony shows that BuyerQuest used Tradeshift's technical documents to develop its own "roadmap" of features that BuyerQuest would add to its own products in order to replace Tradeshift on the Smucker Project. *See* Exs. A, F & G. The requested documents will show, among other things, how extensively BuyerQuest used Tradeshift's confidential information in adding that functionality to its own products.

**Factual Background:** Tradeshift alleges BuyerQuest breached its contract with Tradeshift to act as its subcontractor on a software project for Smucker. *See* Dkt. No. 1. For example, BuyerQuest breached the confidentiality provision in that contract by misusing Tradeshift's confidential specification and design documents to enhance BuyerQuest's product to mimic and replace Tradeshift's products on the Smucker Project. *See e.g.,* Ex. A at 6-19. Smucker also wrongfully interfered with Tradeshift's contract with Smucker by convincing Smucker to hire BuyerQuest to replace Tradeshift on the project.

Recent deposition testimony confirms BuyerQuest's misuse of Tradeshift's technical designs and specifications to direct BuyerQuest's product development. Dan Utyuzh, BuyerQuest's Project Manager on the Smucker Project, testified recently that he sent the "Tradeshift Solution Description" and "JMS-Tradeshift Configuration Sheet" to BuyerQuest's Chief Product Officer, Salman Siddiqui. Ex. A at 8-10; *see e.g.,* Ex. F at 5-10 and 12-14.[2] Mr. Siddiqui, testified that, at the time he was asking for these documents, he was creating a plan to develop functionality in *BuyerQuest's* product that could meet all of Smucker's requirements, *i.e.*, that could replicate the *Tradeshift functionality* that Tradeshift was providing on the project. Ex. F at 7 (Siddiqui asking for "the gaps for booting TS."); Ex. G at 74:16-75:13, 81:16-20; 137:17-138:16, and 144:7-149:20. In plain terms, Mr. Siddiqui used Tradeshift's technical specifications to develop new

---

[1] The parties' stipulation requires that BuyerQuest log each document withheld on a claim of privilege except for post-filing communications with between a party and its outside counsel of record. DE 34 (Order re ESI) at §10.d. BuyerQuest, however appears to be withholding documents that do not include any attorneys.

[2] BuyerQuest contends that these are "joint" documents because BuyerQuest contributed some limited information to them. But the documents clearly contain Tradeshift confidential information and it was Tradeshift's information—not BuyerQuest's—that Mr. Siddiqui needed in order to build out the functionality to replace Tradeshift. *See* Ex. A. Moreover, whether or not the Tradeshift information BuyerQuest misused was "confidential" is a factual dispute for trial; it does not preclude the discovery necessary to resolve that dispute.

BuyerQuest functionality in order to replace Tradeshift on the project.[3] Mr. Siddiqui also identified five employees who he directed to implement the co-opted Tradeshift functionality into BuyerQuest's product.[4] *Id.* at 190:9-192:25 and Ex. A at 10.

**Procedural Background:**  On October 2, 2020, Tradeshift served RFP No. 15 seeking, "All documents Relating to or Discussing Tradeshift."  Ex. B at 7. BuyerQuest initially objected and refused to perform any search for responsive documents at all.  *Id.*  After months of negotiations, in February 2021, BuyerQuest begrudgingly offered to search for responsive documents from March 6 to October 1, 2020 and for those custodians from whom BuyerQuest had already produced documents.  Ex. D at 2 (2/18/21 J. Yu email) and 1 (2/19/21 A. Phillips email). Tradeshift reserved its right to compel compliance with the full scope of RFP No. 15 depending on what BuyerQuest's search produced.  *Id.* at 2 (2/18/21 J. Yu email).

Two months later (and six months after RFP No. 15 was served), BuyerQuest served an updated response to RFP No.15 <u>but failed to produce a single responsive document</u>. Instead, BuyerQuest represented that its search had only identified privileged documents. Ex. E at 8 and 6 (4/15/21 A. Phillips email). Skeptical, Tradeshift pressed BuyerQuest, who subsequently confessed that it had limited its search <u>to documents that included the exact term "Tradeshift," and did not search for other terms likely to identify documents "referencing Tradeshift"</u> (*e.g.*, "TS").[5] Ex. E at 2. BuyerQuest also refused to provide a privilege log for the documents it was withholding.

**Argument:** The Court should compel BuyerQuest to search for documents (emails, slack conversations, specifications, etc.) dated after March 6, 2020 using the terms "Tradeshift" *and* "TS," and including the custodians BuyerQuest already searched *and* the members of the product development team identified by Siddiqui. Documents referring to and discussing Tradeshift, its products, and its documents are directly relevant to, among other things, Tradeshift's breach of contract claim.  They are likely to show, for example, BuyerQuest's misuse of Tradeshift's confidential information to modify its own software product and compete with Tradeshift. Documents showing CPO Siddiqui requesting and receiving the Tradeshift specifications so that he could identify ways to "fill the gaps" after BuyerQuest "booted" Tradeshift from the Smucker Project (Ex. A at 8-10 and Ex. F at 7) together with the recent Utyuzh and Siddiqui deposition testimony prove that BuyerQuest improperly used Tradeshift confidential information to develop its own products (Ex. G *passim*).  Documents responsive to RFP No. 15 will show precisely how BuyerQuest put that information to use and what other information it may have used.

Nothing BuyerQuest argued during conferral or in its response here justifies its refusal to perform a reasonable search.  *See generally* Ex. E at 1-2.  BuyerQuest does not oppose this motion on burden grounds.[6]  It cannot do so because Tradeshift is only asking that BuyerQuest run a search of appropriate custodians using key word searches for the terms "Tradeshift" and

---

[3] Mr. Utyuzh and Mr. Siddiqui both also testified that Mr. Siddiqui was not on the implementation team and did not have access to these documents, i.e., the only reason he could have been asking for them was to use them to build out functionality in BuyerQuest's products.  *See e.g.*, Ex. G at 17:17-18:11; Ex. F at 2, 22-23.

[4] Mr. Siddiqui identified Andrii Korolov, and documents show Mr. Siddiqui identifying four other developers by only their first names: Pavel, Igor, Alex, and Vlad.  BuyerQuest should produce documents from these employees.

[5] The vast majority of BuyerQuest documents reference Tradeshift as "TS" instead of as "Tradeshift."  *See e.g.*, Ex. F at 3-4 (80:23-81:2); Ex. G at 147:1-2, 159:15-25, 161:24-162:6, at 164:12-18; Ex. A at 8-9.

[6] During conferral, BuyerQuest incorrectly worried that a search for "TS" might identify every document containing a word with the letters "TS" together, but no longer asserts that argument.  *See* Ex. E at 1-2.

The Honorable Thomas Hixson
May 6, 2021
Page No. 4

"TS" and produce any responsive documents with a date after March 6, 2020.

Instead, BuyerQuest's primary argument is that responsive documents are irrelevant to Tradeshift's claim for breach of the confidentiality clause because Tradeshift did not identify that exact clause in its Complaint.  This argument fails for two reasons.  First, Tradeshift does allege breach of contract, the confidentiality clause is a part of the contract at issue, and a party is not limited to discovery of only those specific details and theories alleged in the complaint.[7] *See e.g.*, *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, 2011 WL 2181692, at *3 (N.D. Cal. June 2, 2011) ("[D]iscovery is not limited to only those specific issues raised in the pleadings since it is designed to define and clarify the issues in the case.") (*internal citations omitted*); *Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc.*, 320 Fed. Appx. 675, 677 (9th Cir. 2009) (reversing district court's denial of motion to compel and granting discovery because "[d]iscovery is not limited to issues raised in [Plaintiff's] complaint" and "the complaint generally alleged various contract and tort claims that cover its current theory of the case"). Moreover, Tradeshift articulated the details of BuyerQuest's breach of the confidentiality clause in its written interrogatory responses once it discovered the relevant facts.  Ex. A at 6-19.  Plus the facts related to BuyerQuest's misuse of Tradeshift's confidential information are, and always have been, in BuyerQuest's exclusive possession.[8]

Second, BuyerQuest waived its relevance objection when it agreed to search for and produce documents "referencing Tradeshift."  BuyerQuest's argument now that it need only produce documents that use the exact term "Tradeshift" is disingenuous and flouts BuyerQuest's agreement.  Ex. E at 1-2.  Only after the parties agreed BuyerQuest would produce responsive documents did BuyerQuest slip in that it was searching for documents "referencing Tradeshift," but it did not explain that it intended this language to limit the agreement as previously discussed.  *Id.* at 1; Ex. D at 2-3 & 1.  More importantly, a search for documents "referencing Tradeshift" certainly requires searching for the term "TS," which is overwhelmingly how BuyerQuest's employees "referenced Tradeshift" in internal documents.  *See* fn. 2.

BuyerQuest also incorrectly argues that the Court has already ruled the requested documents irrelevant and not discoverable in its February 2, 2021 Order. Dkt. No. 58.  But that Order addressed an entirely *different* RFP (Tradeshift's RFP No. 22, which sought "All Documents regarding the BuyerQuest Smucker Project").  RFP No. 15 is far more limited than RFP No. 22, includes specific search terms, and is highly probative of at least BuyerQuest's breach of the confidentiality clause in light of the recent deposition testimony.  Indeed, BuyerQuest volunteered to search for documents responsive to RFP No. 15 weeks *after* the Court had entered its order on RFP No. 22, thus conceding discoverability notwithstanding that order.  Ex. D at 1-2.

Accordingly, the Court should compel BuyerQuest complete the search Tradeshift proposes above and produce all such responsive documents within one week of the Court's order together with a log of any responsive but withheld documents.

---

[7] Contrary to BuyerQuest's statements, Tradeshift did not terminate its contract with BuyerQuest on January 23, 2020 and, even if it had that would not have excused BuyerQuest's obligations not to misuse Tradeshift's confidential information.

[8] BuyerQuest appears to argue that it would be unfair to allow Tradeshift to proceed with this theory at trial, but that is an issue for pretrial motions, not a reason to preclude discovery into a relevant topic.

## BuyerQuest's Statement

Tradeshift once again seeks documents from the post-termination and post-lawsuit time period that have no relevance to its claims. As this Court has held, the Intentional Interference tort alleged was necessarily complete no later than January 17, 2020. The Breach of Contract claims were necessarily complete by January 23, 2020 when Tradeshift terminated its contract with BuyerQuest.

Yet Tradeshift moves to compel documents dated after March 6, 2020 based on an unpled and unsupported new theory that BuyerQuest misused its confidential information. It asks the Court to order new searches of new custodians' documents that Tradeshift never requested during the parties' meet and confer discussions - discussions that led to an agreement BuyerQuest fulfilled, finding no responsive non-privileged documents. The Court should deny the motion and put a stop to Tradeshift's increasingly tenuous discovery demands.

***Procedural Posture.*** Tradeshift filed its lawsuit on February 20, 2020. ECF. No. 1. It propounded its Requests For Production, Set Two, including RFP 15, on October 1, 2020 and BuyerQuest responded on November 2, offering to confer on the scope of RFP 15. Tradeshift elides that BuyerQuest previously responded to its Requests For Production, Set One by producing over 10,000 responsive documents, almost all of which "relate to or discuss" Tradeshift in the period before March 6, 2020 (i.e. the date on which BuyerQuest and Smucker entered into their own contract).

During the meet and confer process, BuyerQuest acknowledged that post-March 6 documents that refer back to the Tradeshift-BuyerQuest project might be relevant and agreed (quite plainly) to a limited custodian search for "documents referencing Tradeshift between March 6, 2020 and October 1, 2020 (the time period not covered by prior searches)." Ex. D. Tradeshift completed the search and, unsurprisingly, found that the only responsive documents pertained to this litigation and were either attorney-client privileged communications or work product.[9] It supplemented its Responses, accordingly.

Tradeshift moved to compel, demanding new search terms (i.e., "TS") and new custodians described for the first time in its letter brief which seeks documents showing the newly-alleged use of confidential information to "enhance BuyerQuest's product" after March 6, 2020 from members of the "product development team".

***Factual Rebuttal***. Tradeshift's motion to compel advances a brand new theory of liability, i.e. "BuyerQuest's misuse of Tradeshift confidential technical and design specifications to modify its own software to be able to complete the Smucker Project without Tradeshift."[10] The recent deposition testimony Tradeshift cites falls far short of the claim it makes. Both witnesses made clear that the documents about which they were questioned were joint project documents developed by BuyerQuest and Tradeshift (and Smucker) and that contained BuyerQuest's own

---

[9] Tradeshift is wrong in its unsupported contention that BuyerQuest "appears to be withholding documents that do not include attorneys."

[10] Tradeshift first asserted this theory in Supplemental Response to BuyerQuest's Interrogatory No. 19, served on April 20, 2020. i.e., seven months after the RFP at issue and two months after BuyerQuest agreed to additional searches, and weeks after the close of written discovery on April 2. *See*, Ex. A.

The Honorable Thomas Hixson
May 6, 2021
Page No. 6

information. *See*, *e.g.*, Ex. F at 33:15-17; 83:16-21; 103:15-16; 114:24-25; Ex. H at 173:20-22; 176:15-177:17. Tradeshift points to no evidence that any of its confidential information was actually used by BuyerQuest.[11] *See*, Ex. A.

*Argument*. Written discovery closed on April 2. But Tradeshift now attempts to shoehorn an entirely new theory of liability into one of the few unresolved discovery disputes in the case. It thereby attempts an end run around amending its Complaint and the Court's prior recognition that the relevant events concluded by January 17, 2020: the date Smucker terminated its contract with Tradeshift. ECF No. 58, at 4:3 ("The alleged tort was completed before the second project even began [on March 6, 2020].").

The documents sought are irrelevant to any claim in this action. BuyerQuest nevertheless performed additional searches as agreed and located no non-privileged responsive documents. There is no basis to compel more and no reason to believe more exists.

<u>The Documents Sought Are Not Relevant to Tradeshift's Claims.</u> Tradeshift alleges Breach of Contract arising out of project-related conduct necessarily before January 17, 2020. ECF 1, ¶¶ 31-32; *see also*, ¶ 43 (Implied Covenant claim).[12] The Complaint makes no allegation that BuyerQuest breached the confidentiality provision of the Tradeshift-BuyerQuest Agreement or that any breach took place after March 6, 2020. Indeed, it filed its lawsuit on February 20, 2020 – more than two weeks earlier. *Id*. Similarly, Tradeshift claims Tortious Interference in connection with Smucker's decision to terminate its contract with Tradeshift on January 17, 2020. *Id.*, ¶ 37. The Complaint contains no allegation involving confidential information with respect to its tort allegation, which center on disparagement. *Id*.[13]

It is axiomatic that the "Complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); Fed. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

Documents dated after March 6, 2020 that may "show BuyerQuest's misuse of Tradeshift confidential" information therefore have no relevance to either Tradeshift's contract or tort theories. The Court recognized this in its prior order denying a motion to compel documents more broadly related to the post-March 6 BuyerQuest-Smucker project. ECF 58. Tradeshift's argument that RFP 15 is somehow "more limited" is a distinction without a difference – the documents sought are equally irrelevant to the claims at issue. They can prove nothing about Tradeshift's claims, i.e. project performance and contract termination on or before January 17, 2020.

---

[11] The obvious question why BuyerQuest would purloin confidential information to replicate a product that had already failed at Smucker is also unaddressed.
[12] e.g., BuyerQuest's non-compliance with certain project management and change management procedures and its purported exclusion of Tradeshift from certain communications with Smucker. *Id*.
[13] Every document Tradeshift relies on for its new breach of contract theory was produced by BuyerQuest by September 3, 2020. Tradeshift fails to explain why it took until April 20, 2021 to descry its new theory of liability from them.

The Honorable Thomas Hixson
May 6, 2021
Page No. 7

BuyerQuest has had no opportunity to defend such a claim either through discovery or legal challenge.  It received notice of the new theory weeks *after* the close of written discovery and only shortly before the close of fact deposition and expert discovery.  *See*, Ex. A (April 20, 2020).  The unfairness in allowing Tradeshift to now compel documents in support of an unpled theory is obvious.

BuyerQuest Has Complied with Its Agreement to Search for Responsive Documents.  The parties reached agreement through the meet and confer process and BuyerQuest fulfilled it: searching for "documents referencing Tradeshift between March 6, 2020 and October 1, 2020[.]"  Ex. D.  This agreement was stated plainly in the parties' meet and confer correspondence and discussions.  *Id*.  No additional search terms were discussed.[14]  No non-privileged documents were located – unsurprising given this lawsuit began on February 20, 2020.

No privilege log of those documents is required.  ECF 34 (§ 10(d)).  *See, Mon Cheri Bridals, LLC v. Cloudfare, Inc.*, 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021)(post-lawsuit communications with client and work product presumptively privileged "and need not be included on any privilege log."); *see also*, *U.S. v. Bouchard Transp.*, 2010 WL 1529248 at *2 (E.D.N.Y. 2010)("privilege logs are commonly limited to documents created before the date litigation was initiated.")[15].

Tradeshift now asks the Court to order new searches on terms the parties never agreed to, i.e. "TS", from custodians never agreed to (or even identified before now), i.e. "the product development team identified at Salman Siddiqui's recent [April 8] deposition."  *But see*, Ex. D at 2 (agreeing to limit custodians).  Tradeshift cannot, by motion to compel, retroactively expand its RFP to include documents outside the scope of its original Request and the parties' subsequent agreement to encompass claims it had not yet conceived of at those times.

The motion to compel should be denied.


Respectfully submitted,

 ORRICK, HERRINGTON & SUTCLIFFE LLP


 */s/ Amy K. Van Zant*
 AMY K. VAN ZANT
 Attorneys for Plaintiff
 TRADESHIFT, INC.

---

[14] Tradeshift's hope that relevant non-privileged documents can be found searching for "TS" when "Tradeshift" produced nothing is conjectural and far outweighed by the number of false hits likely to be returned.

[15] *See also, Hiramanek v. Clark*, 2016 WL 217255, at *6 (N.D. Cal. Jan. 19, 2016) ("Compelling [Defendants] to produce privilege logs is … unnecessary. [ ] Plaintiffs ask both Defendants for privilege logs for communications after November 2013, but they filed this case in January [2013], and '[ ]are presumptively privileged and need not be included on any privilege log.'") (citing to *Bouchard, supra*, at fn. 59).

The Honorable Thomas Hixson
May 6, 2021
Page No. 8

GORDON REES SCULLY MANSUKHANI LLP

*/s/ Anthony Phillips*
ANTHONY D. PHILLIPS
Attorneys for Defendant
BUYERQUEST, INC.

## ATTESTATION REGARDING SIGNATURES

In compliance with Local Rule 5-1(i)(3), the undersigned ECF user whose identification and password are being used to file this document, hereby attests that all signatories have concurred in the filing of this document and all supporting declarations and exhibits.

*/s/ Amy K. Van Zant*
AMY K. VAN ZANT