

**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

May 6, 2021

<u>Via ECF</u>

The Honorable Thomas Hixson
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom A - 15th Floor
San Francisco, CA 94102

Re:   *Tradeshift, Inc. v. BuyerQuest, Inc.*, Case No. 3:20-cv-1294-RS

### <u>LETTER BRIEF RE DISCOVERY DISPUTE RE INTERROGATORY NOS. 11 & 14</u>

Dear Judge Hixson:

Pursuant to Your Honor's Discovery Standing Order (ECF 48-1), Plaintiff Tradeshift, Inc. respectfully submits this Letter Brief regarding a discovery dispute on which the parties have reached an impasse.  Namely, whether Defendant BuyerQuest, Inc. should be compelled to provide supplemental Responses to Interrogatory Nos. 11 and 14, which seek information about a Power Point Presentation that BuyerQuest Produced at BQ100227.

### <u>MEET AND CONFER</u>

Tradeshift is forced to file this letter brief on its own because BuyerQuest has repeatedly refused to provide its timely rebuttal.  The parties conferred about these interrogatories multiple times via email and phone in April and May.  *See e.g.*, Ex. 8 at 1-7.  On April 29, BuyerQuest finally offered to supplement its responses to Interrogatory Nos. 11 and 14 but would not specify what additional information it would provide, prompting Tradeshift to declare a final impasse.  Ex. 8 at 2-5.  That same day, Tradeshift provided BuyerQuest with the present letter brief and asked it to provide its rebuttal section by May 3.  Ex. 8 at 4.  On May 4, BuyerQuest attempted to further stall and said that it would either provide its rebuttal brief portion or supplemental responses by May 5 "assuming Tradeshift [would] not proceed with its motion to compel in the interim."  *Id.* at 1.  BuyerQuest failed to provide supplemental responses or its letter brief section on May 5.  On May 6, BuyerQuest served supplemental responses that did not address the issues raised by Tradeshift throughout meet and confer.  Fact discovery ends on May 15 and thus, Tradeshift was forced to file its letter brief without a BuyerQuest rebuttal.

### <u>TRADESHIFT'S STATEMENT</u>

Tradeshift seeks an order compelling BuyerQuest to produce supplemental responses to Interrogatory Nos. 11 and 14.  These two requests seek information about a key BuyerQuest

The Honorable Thomas Hixson
May 6, 2021
Page No. 2

presentation named the "Smucker Proposal."[1] Ex. 1. The Smucker Proposal literally shows BuyerQuest interfering with the Tradeshift/Smucker contract. In it, BuyerQuest presented a blow-by-blow analysis of (trumped up) reasons why Smucker should "boot" Tradeshift and replace it with BuyerQuest, who positioned itself as a white knight of sorts to Smucker. BuyerQuest even went so far as to give Smucker a hard deadline to get rid of Tradeshift. In short, the Smucker Proposal demonstrates BuyerQuest's interference top to bottom.

Because the Smucker Proposal is such a vital piece of evidence, Tradeshift propounded Interrogatory Nos. 11 and 14 to learn about who authored and edited the proposal, discussions between BuyerQuest and Smucker about it, the intended purpose and audience, and whether/how the presentation was shared with and presented to Smucker. BuyerQuest initially stiffed Tradeshift altogether only to eventually supplement with less than half the requested information, identifying several BuyerQuest employees as authors and claiming that the Smucker Proposal "was created for Smucker's use." Ex. 7 at 11:17-19 and 15:24-16:4.

It is unclear why BuyerQuest will not provide the full information sought by these two interrogatories since it is readily available. Much of the requested information can be identified from document metadata that BuyerQuest failed to provide with the production copies. The rest of the information can be discerned from a review of BuyerQuest's internal records and interviews of its own employees that should have happened months ago. Indeed, BuyerQuest confirmed in conferral that it could create an "audit trail" of the presentation and agreed to provide that information with its second supplement, but then failed to do so. With depositions nearly complete and expert reports due in May, further delay will jeopardize the entire schedule, thus the Court should demand BuyerQuest's compliance within a week of its order.

**Factual Background:** Tradeshift entered into a contract with third-party Smucker for a software implementation project ("the Smucker Project"). *See* Dkt. No. 1. Around the same time, Tradeshift entered into a different set of contracts with BuyerQuest to act as subcontractor. *Id.* BuyerQuest took advantage of its access to Smucker to interfere with the Tradeshift/Smucker contract and stole the business for itself. *See e.g.*, Ex. 2 at 17-25. Not long after the ink was dry on BuyerQuest's contract with Tradeshift, BuyerQuest's CEO, Jack Mulloy, announced his "Operation Fyrefest" plan to replace Tradeshift on the Smucker Project. *See id.* He set out on a whisper campaign to convince Smucker that any and every hiccup and delay on the project (many caused by BuyerQuest itself) was solely Tradeshift's fault while simultaneously planting unfounded gossip about Tradeshift's financial stability and ability to deliver results.

By December 2019, Mulloy sensed his goal was within reach. Mulloy instructed his team to "layout [sic] our contingency plan (in the form of a deck) to discuss internally and eventually share with Jason Barr at Smucker's." Ex. 3 (parenthetical in original). BuyerQuest's Chief Revenue Officer, Kyle Muskoff, promptly obliged and sent over a Google Document link to a presentation with the file name "Smucker Proposal." *Id.*; *see also* Ex. 4. Later in the month, Mulloy told his team that Barr and several of his colleagues agreed to a secret meeting at BuyerQuest's headquarters on January 7, 2020, and that Barr would be using the deck to "build[]

---

[1] Interrogatory No. 11 also asks BuyerQuest to provide information about a second presentations in which it disparaged BuyerQuest to Smucker's and urged it to terminate the Tradeshift/Smucker contract, similar to in the Smucker Proposal. Ex. 7. BuyerQuest should have to supplement its responses to provide the responsive information on that second presentation as well.

the story as to why Tradeshift failed & how BuyerQuest can save the day at [Smucker]." Ex. 10. BuyerQuest emails from the first week of January refer to the Smucker Proposal as the "Current [d]eck for Tuesday" (Ex. 5) and "the one that Kyle created for Tuesday meeting" (Ex. 6). The "following Tuesday" was January 7, i.e., the date of the secret BuyerQuest/Smucker meeting. Ex. 2 at 22:1-11. A week after that meeting, Smucker pulled the plug on Tradeshift.

**Procedural Background:** BuyerQuest produced a presentation deck with the file name "Smucker Proposal" at BQ100227-242.[2] Ex. 1. The deck included slides disparaging Tradeshift with statements including, "We aren't convinced that Tradeshift can deliver a working product" and "We aren't convinced that Tradeshift will be solvent in 2020." *Id.* at BQ100229. Given the obvious probative value of the Smucker Proposal and the lack of metadata produced by BuyerQuest with it, Tradeshift propounded written discovery, including Interrogatory Nos. 11 and 14 in order to learn more information about its provenance and use. Ex. 7. These two interrogatories ask that BuyerQuest, among other things, explain the nature and purpose of the presentation, including whether, when, how, and by whom the document was provided[3] and/or presented to Smucker. Ex. 7 at 10, 15.

After initially responding with objections only, BuyerQuest supplemented its responses to list several BuyerQuest authors (Jack Mulloy, Kyle Muskoff, Salman Siddiqui, Karen Bare, and Dan Utyuzh), stating that the proposal "is a slide deck prepared by BuyerQuest *for Smucker's use*," and concluding with the claim that "BuyerQuest has no personal knowledge if *Smucker* presented the slides" (something neither interrogatory asks). Ex. 7 at 15 (emphasis added). The supplemental responses failed to describe the purpose of the Smucker Proposal, how *BuyerQuest* provided the slides *to Smucker* "for Smucker's use," who the proposal was presented to, and why/when. *Id.* The missing requested information bears directly on BuyerQuest's interference scheme.

During conferral, BuyerQuest refused to further supplement its responses and instead suggested that Tradeshift ask Mulloy its remaining questions at his deposition. Ex. 8 at 1 and 8 (4/12/2021 A. Phillips Email). Tradeshift disagreed this was a substitution for a proper response, but delayed its motion another week and took Mr. Mulloy's deposition on April 20. Mr. Mulloy was unable (or unwilling) to provide most of the requested information and what he did provide was suspect.[4] In fact, Mulloy confirmed that Jason Barr collaborated with BuyerQuest in drafting the

---

[2] BuyerQuest ultimately produced a total of four copies of the Smucker Proposal, one from the records of Salman Siddiqui, Luke Batman, Beth Tumino, and Kyle Muskoff. No metadata was included except for the name of each custodian. Although the Smucker Proposal was drafted using Google Docs, BuyerQuest has not produced the metadata nor has it produced the file copy (or any versions thereof) from its shared Google Drive repository, which would contain vital metadata about the presentation, including, author name(s), last date of editing/access, creation date, and similar common metadata fields.

[3] BuyerQuest has not produced a single document showing how it transmitted the Smucker Proposal to Smucker in spite of the fact that Mulloy testified that Jason Barr is one of the authors of it. Ex. 9 at 225:3-12. Mulloy (who was BuyerQuest's corporate designee on the topic of communications between Smucker and BuyerQuest about presentations) could not say who sent the proposal to Barr or how. *Id.* at 222:14-223:17. He had done nothing besides meet with his lawyers to prepare. *Id.* at 222:9-12.

[4] Mr. Mulloy testified that the Smucker Proposal was prepared in February 2020. Ex. 9 at 239:10-18. This is nonsensical because Smucker had already terminated its contract with Tradeshift on January 16, 2020, making the need for a presentation urging Smucker to replace Tradeshift non-existent in February 2020. Moreover, this is completely inconsistent with other BuyerQuest documents showing that the Smucker Proposal was first drafted in

The Honorable Thomas Hixson
May 6, 2021
Page No. 4

presentation (Ex. 9 at 225:3-12) but could not (or would not) explain when or how the Smucker Proposal was provided to Barr for purposes of that collaboration. Ex. 9 at 246:9-21 and 255:13-6. The parties revisited BuyerQuest's deficient responses after the Mulloy deposition. Ex. 8 at 5. BuyerQuest initially offered to provide supplemental responses but wouldn't confirm exactly what information it would provide or when. *Id.* at 3-5. Ultimately, on May 4, BuyerQuest offered to provide either its portion of the present letter brief or supplemental interrogatory responses by May 5 provided that Tradeshift would not file this letter brief in the interim. *Id.* at 1. BuyerQuest still would not confirm exactly what information it would provide except to claim that it would at least include an "audit trail" for the Smucker Proposal from Google Docs. *Id.*

Notwithstanding its promise to supplement, BuyerQuest did not provide supplemental responses on May 5 or its rebuttal to Tradeshift's letter brief. Instead, on May 6, BuyerQuest finally served second supplemental responses to Interrogatory Nos. 11 and 14, but those responses neither included any of the responsive information Tradeshift had been requesting for months nor the "audit trial" it had promised to provide just two days prior. Ex. 11.

**Argument:** The Court should compel BuyerQuest to supplement its responses to Interrogatory Nos. 11 and 14 to provide all of the requested information. The information requested is necessary to describe, *inter alia*, the provenance, intended/actual use, distribution of, and other foundational information about the Smucker Proposal, which is arguably the most significant piece of evidence supporting Tradeshift's interference claim. BuyerQuest is outright withholding plainly relevant information that there is no dispute it possesses.

BuyerQuest does not argue that the information sought here is irrelevant, unduly burdensome, disproportional, or not in its possession. Indeed, BuyerQuest has barely explained its intransigence here at all. The most it has mustered is to argue that it has already supplemented the responses once and shouldn't need to do so further. Ex. 8 (4/12/2021 A. Phillips Email). But the whole reason BuyerQuest had to supplement its original responses is that it initially failed to substantively respond to Tradeshift's original requests at all. Ex. 7 at 10:24-11:6 (responding with objections only) and 15:9-20 (same). Stiffing Tradeshift entirely only to then "supplement" with half-baked responses does not discharge BuyerQuest's discovery obligations.

Nor does BuyerQuest's suggestion that Tradeshift obtain the requested information from Mr. Mulloy hold, both because Mulloy did not have the requested information and also because parties can seek similar information through multiple forms of discovery. *Richlin v. Sigma Design W., Ltd.*, 88 F.R.D. 634, 637 (E.D. Cal. 1980) ("the various methods of discovery as provided for in the Rules are clearly intended to be cumulative, as opposed to alternative or mutually exclusive."). In any event, BuyerQuest's suggestion that Tradeshift wait and ask Mulloy at deposition was nothing more than a delay tactic as none of the admitted authors— including Mulloy (who was designated as a 30(b)(6) witness on the Smucker Proposal and thus should have been prepared with such information)—could testify about the intended audience for the Smucker Proposal or how BuyerQuest provided the proposal to Smucker.

BuyerQuest's second supplemental responses do not address any of the issues Tradeshift identified. Instead, they just explain that one particular version of the presentation (BQ100227)

---

early December 2019 at Mr. Mulloy's request. *See, e.g.,* Ex. 4 (Muskoff email transmitting an early draft of the Smucker Proposal).

The Honorable Thomas Hixson
May 6, 2021
Page No. 5

wasn't sent to Smucker by email or shared online, but totally neglect to explain how the presentation eventually *was* provided to Smucker (*e.g.*, by physical copy, in person presentation, *etc.*). Ex. 11. In other words, the responses don't explain how Jason Barr was able to "collaborate" in the drafting of the agreement or how the presentation was provided to Smucker "for Smucker's use." Nor do the supplemental responses explain the purpose of the presentation. And they do not provide any description of the metadata or version history for the Smucker Proposal in BuyerQuest's Google Documents system or include the "audit trail" that BuyerQuest promised it would provide on May 4. *Id.*; Ex. 8 at 1. Recognizing that the responses remain grossly deficient, BuyerQuest even added a description of its investigation stating that its responses were "ascertained through document review; discussions with knowledgeable individuals; and, analysis of document metadata." *Id.* at 4, 6. This provides no substantive information at all.

BuyerQuest does not contend that it doesn't have the requested information, it just plain does not want to go to the trouble of providing it. The Court should compel BuyerQuest to stop obstructing discovery and provide complete, substantive responses to each category of information identified in Interrogatory Nos. 11 and 14 and, should BuyerQuest contend that it cannot do so for any requested category, the Court should require it to provide a verified response explaining what it did to try to obtain the information and why it cannot provide it. *See e.g.*, *Sevey v. Soliz*, 2011 WL 2633826, at *4 (N.D. Cal. July 5, 2011) ("If a responding party is unable to supply requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information.") (internal quotations omitted). The deadline for BuyerQuest's compliance with the Court's order should be 7 days from the date of the order.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Amy K. Van Zant*
AMY K. VAN ZANT
Attorneys for Plaintiff
TRADESHIFT, INC.

4157-3116-9069