# EXHIBIT 2

AMY K. VAN ZANT (STATE BAR NO. 197426)
avanzant@orrick.com
JASON K. YU (STATE BAR NO. 274215)
jasonyu@orrick.com
TAMMY SU (STATE BAR NO. 329652)
tsu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

Attorneys for Plaintiff
TRADESHIFT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BUYERQUEST, INC., an Ohio corporation,<br><br>Defendant. | Case No. 3:20-cv-1294-RS<br><br>**PLAINTIFF TRADESHIFT, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT BUYERQUEST, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-19)** |

**PROPOUNDING PARTY:**          **Defendant BuyerQuest, Inc.**

**RESPONDING PARTY:**          **Plaintiff Tradeshift, Inc.**

**SET NUMBER:**          **One**

**CONTAINS INFORMATION DESIGNATED "CONFIDENTIAL" AND "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY " UNDER THE PROTECTIVE ORDER**

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

In accordance with Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Tradeshift, Inc. ("Tradeshift" or "Plaintiff") hereby provides the following objections and responses ("Responses") to the First Set of Interrogatories propounded by BuyerQuest, Inc. ("BuyerQuest" or "Defendant").

## **GENERAL OBJECTIONS**

In addition to the specific objections noted below, Tradeshift asserts the following general objections to each and every Interrogatory.

1.      By responding to any Interrogatory, Tradeshift does not waive any objection that may be applicable to: (a) the use, for any purpose, by BuyerQuest of any information provided in the response; or (b) the admissibility, relevance, or materiality of any of the information to any issue in this case.

2.      Tradeshift objects to BuyerQuest's definitions and instructions to the extent they require Tradeshift to provide information beyond that required by the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any other applicable rules.

3.      Tradeshift objects to BuyerQuest's definitions and instructions to the extent they add discrete subparts to individual interrogatories such that those interrogatories are compound and should constitute multiple interrogatories that may exceed the maximum number of interrogatories allowed in this case.  Tradeshift will respond to the prompts of the individual interrogatories and is willing to confer regarding additional information that would be responsive to additional interrogatories.

4.      Tradeshift objects to BuyerQuest's definition of "COMMUNICATION(S)" as overly broad, seeking discovery of information where the burden of the proposed discovery outweighs its likely benefit, seeking information not relevant to any claim or defense, and not proportional to the needs of the case because the definition includes "any and all communications of any kind" "whether written, oral, or by any other means."  Tradeshift further objects to this definition as overly broad, unduly burdensome, and duplicative to the extent it is used to request information contained in documents that Tradeshift will be producing in response to BuyerQuest's requests for the production of documents.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 1 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

5.      Tradeshift objects to BuyerQuest's definition of "IDENTIFY" as overly broad, unduly burdensome, seeking irrelevant information, and seeking information not proportional to the needs of the case.  Tradeshift also objects to this definition as seeking information subject to a right of privacy and information that is duplicative of information that will be provided through other means, for example, in response to BuyerQuest's requests for production of documents.  When identifying persons, Tradeshift will identify them by name and provide additional information to the extent it is reasonably available, relevant, not subject to a right of privacy, and not duplicative.  When identifying documents, Tradeshift will identify documents by Bates number if available, or by a reasonable description of the document.

6.      Tradeshift objects to BuyerQuest's definition of "YOU," "YOUR," and "TRADESHIFT" as vague and ambiguous, overly broad, seeking discovery of information where the burden of the proposed discovery outweighs its likely benefit, seeking information not relevant to any claim or defense, and not proportional to the needs of the case because the definition purports to include persons or entities who are not parties to the lawsuit, have no involvement in the subject matter of the lawsuit, have no information that would be relevant to the claims or defenses in this lawsuit, and/or are not within Tradeshift's control.  Tradeshift will respond only on behalf of, and with respect to, Tradeshift, Inc.  Tradeshift construes "you," "your," and "Tradeshift" to mean Plaintiff Tradeshift, Inc.

7.      Tradeshift objects to BuyerQuest's definition of "BUYERQUEST" as vague and ambiguous, overly broad, seeking discovery of information where the burden of the proposed discovery outweighs its likely benefit, seeking information not relevant to any claim or defense, and not proportional to the needs of the case because the definition includes "ALL PERSONS acting on its behalf, including without limitation, ALL past or present officers, directors, employees, representatives, consultants, partners, independent contractors, agents, or attorneys." Tradeshift construes "BUYERQUEST" to mean Defendant BuyerQuest, Inc.

8.      Tradeshift objects to BuyerQuest's definition of "SMUCKER" as vague and ambiguous, overly broad, seeking discovery of information where the burden of the proposed discovery outweighs its likely benefit, seeking information not relevant to any claim or defense,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                              - 2 -                    TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

and not proportional to the needs of the case because the definition includes "J.M. Smucker Company, J.M. Smucker Inc., and ALL PERSONS acting on their behalf, including without limitation, ALL past or present officers, directors, employees, representatives, consultants, partners, independent contractors, agents, or attorneys." Tradeshift construes "SMUCKER" to mean Smucker Services Company, the J.M. Smucker Company, and J.M. Smucker, Inc.

9.      Tradeshift objects to Definition 16 as overly broad, seeking discovery of information where the burden of the proposed discovery outweighs its likely benefit, seeking discovery of information that is not relevant to any claim or defense, not proportional to the needs of this case, and inconsistent with Rules 26 and 34 of the Federal Rules of Civil Procedure because it purports to require Tradeshift to provide documents regarding hypothetical future events that have not yet occurred.

10.     Tradeshift objects to each Interrogatory to the extent that it calls for Tradeshift to reveal information that is the subject of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine. Tradeshift will not provide privileged information and, instead, to the extent it is consistent with the parties' agreements regarding privileged communications, will withhold and log responsive privileged communications.

11.     To the extent that Tradeshift identifies and/or produces any information or documents in response to the Interrogatories, it does so with the understanding that such information or document shall not be deemed or construed to constitute a waiver of any privilege or right of Tradeshift, including the right to designate materials as confidential. Tradeshift reserves all rights to recall from discovery any inadvertently produced document protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, doctrine, or immunity. Tradeshift also reserves the right to designate (or redesignate) any confidential documents that may be inadvertently produced without the appropriate confidentiality designation.

12.     Tradeshift objects to these Interrogatories as premature to the extent they purport to request "all" facts or information in support of Tradeshift's claims. Much of the documents and information supporting Tradeshift's claims is in the possession of BuyerQuest and/or

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 3 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

Smucker.  Fact discovery remains open, and BuyerQuest and Smucker have yet to make complete productions of all such documents and information in response to Tradeshift's discovery requests. Accordingly, Tradeshift's responses are made without prejudice to its right to supplement or amend its responses and to present evidence discovered hereafter at trial.

13.     Tradeshift objects to these Interrogatories to the extent that they seek confidential, sensitive, or proprietary business or trade secret information of any third party.  Should any interrogatory call for such information, Tradeshift will make reasonable efforts to obtain the consent of any such third party and if it cannot obtain such third-party consent, Tradeshift will clearly state so in its response.

14.     Tradeshift objects to these Interrogatories to the extent that they seek information beyond what is available from: (a) a reasonable search of Tradeshift's files likely to contain relevant or responsive documents or information and (b) a reasonable inquiry of Tradeshift employees likely to have information relevant to a claim or defense of any party, or to the subject matter of the litigation.

### SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving the above General Objections, Tradeshift objects and responds to BuyerQuest's First Set of Requests for Production to Tradeshift as follows:

**INTERROGATORY NO. 1:**

IDENTIFY EACH TRADESHIFT employee, agent, or contractor who worked on or was involved with the negotiation, drafting, or formation of the BUYERQUEST AGREEMENTS.

**RESPONSE TO INTERROGATORY NO. 1:**

Tradeshift specifically incorporates by reference each of its General Objections asserted above.

Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal information that is the subject of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.  Tradeshift will log any such communications it excludes on this basis to the extent consistent with the parties' privilege log agreement.

Tradeshift objects to this interrogatory to the extent it seeks information that is equally or

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 4 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1    more readily available to BuyerQuest.

2        Tradeshift objects to the phrase "worked on or was involved with the negotiation, drafting,

3    or formation" as vague and ambiguous, overbroad, duplicative, and not proportional to the needs

4    of this case to the extent it seeks information about every individual remotely involved in the

5    subject matter of the request (including, for example, administrative assistants who may have

6    typed the agreements); Tradeshift will identify the principal parties responsible for negotiating the

7    terms of the BuyerQuest Agreements for Tradeshift.

8        In light of the foregoing objections and limitations, Tradeshift responds as follows:

9        Dan Roehrs (Apps Partnerships & Alliances) with support internally from Tradeshift's in-

10   house legal department, the content of which is privileged.

11       Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

12   to supplement this response as additional information is identified.

13   **INTERROGATORY NO. 2:**

14       IDENTIFY EACH TRADESHIFT employee, agent, or contractor who worked on or was

15   involved with the negotiation, drafting, or formation of the SMUCKER SERVICES

16   AGREEMENT.

17   **RESPONSE TO INTERROGATORY NO. 2:**

18       Tradeshift specifically incorporates by reference each of its General Objections asserted

19   above.

20       Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal

21   information that is the subject of the attorney-client privilege, the attorney work product doctrine,

22   or any other applicable privilege or doctrine.  Tradeshift will log any such communications it

23   excludes on this basis to the extent consistent with the parties' privilege log agreement.

24       Tradeshift objects to the phrase "worked on or was involved with the negotiation, drafting,

25   or formation" as vague and ambiguous, overbroad, duplicative, and not proportional to the needs

26   of this case to the extent it seeks information about every individual remotely involved in the

27   subject matter of the request.  Tradeshift will identify the principal parties responsible for

28   negotiating the terms of the Smucker Services Agreement for Tradeshift.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                                          - 5 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1    In light of the foregoing objections and limitations, Tradeshift responds as follows:

2    Christopher Todd (Account Manager) and Jim Rahill (Regional VP of Sales) with support

3    internally from Tradeshift's in-house legal department, the content of which is privileged.

4    Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

5    to supplement this response as additional information is identified.

6    **INTERROGATORY NO. 3:**

7    IDENTIFY EACH TRADESHIFT employee, agent, or contractor who worked on or was

8    involved with the SMUCKER PROJECT.

9    **RESPONSE TO INTERROGATORY NO. 3:**

10    Tradeshift specifically incorporates by reference each of its General Objections asserted

11    above.

12    Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal

13    information that is the subject of the attorney-client privilege, the attorney work product doctrine,

14    or any other applicable privilege or doctrine.  Tradeshift will log any such communications it

15    excludes on this basis to the extent consistent with the parties' privilege log agreement.

16    Tradeshift objects to this interrogatory to the extent it seeks information that is equally or

17    more readily available to BuyerQuest.

18    Tradeshift objects to the phrase "worked on or was involved with the SMUCKER

19    PROJECT" as vague and ambiguous, overbroad, duplicative, and not proportional to the needs of

20    this case to the extent it seeks information about every individual remotely involved in the subject

21    matter of the request, including those with peripheral or non-substantive roles; Tradeshift will

22    identify the principal persons who performed work on and/or supervised implementation of the

23    SMUCKER PROJECT on behalf of Tradeshift.

24    In light of the foregoing objections and limitations, Tradeshift responds as follows:

25    Sean Norton (Global VP, Professional Services); Deborah Gillman (Engagement

26    Manager); Catherine Fahidin (Professional Services Architect); Gareth Bowen (Professional

27    Services Solutions Architect); Wendy Sciara (Senior Client Executive); Doug Cottington

28    (Engagement Manager);  Amy Dhanoa (Program Manager); Alexandra Balan (Professional

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                              - 6 -                      TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

Services Architect); Simona Saulean, (Professional Services Architect);  Kavita Rajagopal

(Solutions Consultant); Jeff Larsen (Senior Program Manager – Bristlecone).

Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

to supplement this response as additional information is identified.

**INTERROGATORY NO. 4:**

IDENTIFY EACH SMUCKER employee, agent, or contractor with whom YOU worked

on SMUCKER PROJECT.

**RESPONSE TO INTERROGATORY NO. 4:**

Tradeshift specifically incorporates by reference each of its General Objections asserted

above.  Tradeshift further objects to this interrogatory to the extent it seeks information that is not

in Tradeshift's possession, custody, or control or that is equally or more readily available to

BuyerQuest.

Tradeshift objects to the phrase "worked on SMUCKER PROJECT" [sic] as vague and

ambiguous, overbroad, duplicative, seeking information equally available to BuyerQuest, and not

proportional to the needs of this case to the extent it seeks information about every individual

remotely involved in the subject matter of the request, including those with peripheral or non-

substantive roles and including contractors and subcontractors like Tradeshift and BuyerQuest;

Tradeshift will identify the SMUCKER employees it interacted with while working on the

SMUCKER PROJECT.

In light of the foregoing objections and limitations, Tradeshift responds as follows:

Clint Adams
Jason Barr
Angela Burick,
Molly Davis
Joanna Dobina
Jeff Eshelman
Daniel Fill
Robert Ferguson
Danielle Frantz
Kevin Hare
Bryan Hiles
Kelly Hensch
Ryan Hoffman

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 7 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

Bryan Hutson
Debra Janda
Michelle Lawson
Steve Lutikoff
Pai Milind
Megan Morr
Dan Nowicki
Viraaj Patel
Jacqueline Perchinske
Susan Reed
Mike Resan
John Slowey
Jennifer Smith
Mike Sterle
Dustin Stout
Jay Watson
Rowdy White
Russ Wilson
Brandon Wilhelm
Sunil Yerramesetti

Discovery has just started.  Tradeshift is continuing its investigation and reserves its right to supplement this response as additional information is identified.

**INTERROGATORY NO. 5:**

IDENTIFY EACH incident in which BUYERQUEST failed "to obtain Tradeshift's review and consent to scope changes to the Smucker project," as alleged in Paragraph 31 of YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 5:**

Tradeshift specifically incorporates by reference each of its General Objections asserted above.

Tradeshift objects to this Interrogatory because it seeks information that is equally or more readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and communications between BuyerQuest and Smucker.  Accordingly some responsive information was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during discovery.  Tradeshift reserves the right to update its response to this Interrogatory after BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable opportunity to review that information and incorporate it into its response.

CONFIDENTIAL

1    Tradeshift objects to this request as duplicative, at least in part, of Interrogatory numbers

2    6-10, 12-13, 15, and 19.

3    In light of the foregoing objections and limitations, Tradeshift responds as follows:

4    The Smucker Project required integrating software products from Tradeshift and

5    BuyerQuest into a solution that could communicate with those two systems and with Smucker's

6    systems.  Tradeshift took on primary responsibility for integrating the three components and

7    implemented a "middleware" system that would allow the three components to speak with each

8    other.  The middleware system took in data, documents, and other information from the Smucker

9    system and (1) mapped that information into the format used by Tradeshift so that Tradeshift's

10   systems could use the data and (2) mapped that information into the format used by BuyerQuest

11   so that BuyerQuest's systems could use the data.  It did the same in reverse for Tradeshift data

12   and information and BuyerQuest data and information.

13   The middleware had to be specifically configured to accommodate the different formats

14   and types of information used by each of the three systems (for example, a "quantity" field in one

15   system might be configured with a dropdown menu in one system but with free-entry in another).

16   Accordingly, any unauthorized or uncoordinated changes to the format of the information in any

17   of the three systems could drastically affect the interoperability of the system as whole and would

18   likely result in integration failures.  As the lead contractor and the party contractually responsible

19   for integrations, Tradeshift was to have the lead in directing, reviewing, and approving any

20   changes that would be made that could impact system integration.  BuyerQuest, in contrast, was

21   Tradeshift's subcontractor on the Smucker Project and agreed in its contract with Tradeshift that

22   it would follow Tradeshift's lead with respect to project management and would seek Tradeshift's

23   approval before making any material changes to the scope of the project, including format

24   changes.  The BuyerQuest Agreements noted, for example, that "[Tradeshift] will lead all

25   integration discussions with Smucker's with support from BuyerQuest for all integrations relevant

26   to BuyerQuest," and "[Tradeshift] will handle all program management duties except BuyerQuest

27   will be responsible for all BuyerQuest resources," and  "[Tradeshift] and BuyerQuest will review

28   and agree on all scope changes prior to adding new requirements to the project," and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 9 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL

1  "BuyerQuest will support [Tradeshift] with planning, configurations, deliverables, integrations,

2  change requests, and product updates as necessary for Smucker's implementation."

3         On several occasions, however, BuyerQuest initiated, directed, requested, and/or approved

4  changes to the Smucker Project without consulting Tradeshift (much less obtaining its approval or

5  consent to those changes), and/or otherwise usurped Tradeshift's contractual right to lead the

6  integration process.  In many cases, BuyerQuest's actions resulted in integration failures and/or

7  required a significant amount of work to account for the changes.  In certain cases, Smucker

8  blamed these failures on Tradeshift even though they were caused by BuyerQuest's failures to

9  follow protocol.  Internal BuyerQuest communications with BuyerQuest's CEO, Jack Mulloy,

10 indicate that BuyerQuest's conduct was part of a plan—which it referred to as "Operation

11 Fyrefest"—to undermine Tradeshift's credibility with Smucker so that it could eventually replace

12 Tradeshift on the Smucker Project.

13        For example, in early December 2019, BuyerQuest asked Smucker to make changes to the

14 format of the User Integration File without consulting, notifying, discussing or obtaining

15 Tradeshift's consent for this format change.  Smucker implemented the changes at BuyerQuest's

16 request.  The unapproved change in the format of the data caused a number of integration

17 problems, including that a number of Smucker users were unable to log into the system.  Smucker

18 appears to have improperly attributed the integration failure to Tradeshift even though the true

19 cause of the failure was due to BuyerQuest's unauthorized instruction to Smucker to alter its data

20 format.  This integration error appears to have unfairly undermined Tradeshift's credibility with

21 Smucker.  BuyerQuest should have contacted Tradeshift about any requests to modify the

22 Smucker data format including, at a minimum, by discussing BuyerQuest's suggested format

23 changes with Tradeshift and obtaining Tradeshift's agreement and consent before approaching

24 Smucker with format change instructions.  And BuyerQuest should have included Tradeshift on

25 all communications with Smucker about format changes.

26        As another example, in late December 2019, Smucker raised concerns about a requested

27 feature with BuyerQuest.  Smucker referred to this issue as "Defect 77."  To resolve the issue,

28 Smucker asked BuyerQuest to implement a feature that would allow the system to validate

CONFIDENTIAL

1  "Project" and "Task" values.  BuyerQuest agreed it would accommodate Smucker's request,

2  including by changing the format of a coding file which, in turn, would cause Tradeshift's

3  integrations to fail unless Tradeshift was given notice and time to adjust other format fields

4  accordingly.  In what was becoming a pattern, BuyerQuest agreed to the change in scope without

5  first discussing with Tradeshift, much less getting Tradeshift's consent and approval (as the

6  contract requires).  Once again, BuyerQuest only informed Tradeshift of what it had done after

7  the fact.  The unapproved change required Tradeshift to spend a significant amount of time

8  revising the integrations to accommodate BuyerQuest's change.  Instead of independently

9  agreeing to the change—which constituted a change in project scope—and neglecting to obtain

10  Tradeshift's consent and buy-in, BuyerQuest should have, at a minimum, first discussed

11  Smucker's request with Tradeshift and submitted a project change order to document the process,

12  as specified in the contract.

13      As another example, in late December 2019 and early January 2020, BuyerQuest caused a

14  number of failures by refusing to follow Tradeshift's lead with certain project management

15  instructions.  In the integrated Tradeshift/BuyerQuest product, the BuyerQuest system sends

16  Purchase Orders to the Tradeshift system for processing.  Upon receiving the Purchase Order, the

17  Tradeshift system sends the BuyerQuest system a confirmation indicating that the Purchase Order

18  has been received.  The BuyerQuest system, however, was not processing the confirmations and,

19  as a result, continued to repeatedly send the same Purchase Orders to the Tradeshift system

20  multiple times.  This caused the Tradeshift system to fail when attempting to process each

21  Purchase Order because the Purchase Order was voided repeatedly, creating a new version of the

22  same Purchase Order.  Tradeshift asked BuyerQuest to adjust its system to properly identify and

23  process the confirmations, but subcontractor BuyerQuest refused Tradeshift's request (even

24  though Tradeshift was the project manager under the contract).  Tradeshift then implemented a

25  work around and BuyerQuest agreed that it would stop sending multiple copies of each Purchase

26  Order.  Notwithstanding the work around and its agreement to the contrary, BuyerQuest

27  continued to send multiple Purchase Orders, which continued to cause Tradeshift's systems to

28  fail.  These failures, which were identified as "Defect 104," appeared to unfairly undermine

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 11 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL

1    Tradeshift's credibility with Smucker.

2           Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

3    to supplement this response as additional information is identified.

4    **INTERROGATORY NO. 6:**

5           IDENTIFY EACH incident in which BUYERQUEST interfered "with Tradeshift's

6    program management duties," as alleged in Paragraph 31 of YOUR Complaint.

7    **RESPONSE TO INTERROGATORY NO. 6:**

8           Tradeshift specifically incorporates by reference each of its General Objections asserted

9    above.

10          Tradeshift objects to this Interrogatory because it seeks information that is equally or more

11   readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

12   communications between BuyerQuest and Smucker.  Accordingly some responsive information

13   was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

14   discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

15   BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

16   opportunity to review that information and incorporate it into its response.

17          Tradeshift objects to this request as duplicative, at least in part, of Interrogatory numbers

18   7-8, 10, 12, 14, 15, and 19.

19          In light of the foregoing objections and limitations, Tradeshift responds as follows:

20          Tradeshift incorporates its response to Interrogatory No. 5.

21          In addition, BuyerQuest refused to support Tradeshift's efforts to salvage the Smucker

22   Services Agreement at least in part because it planned to execute a new agreement between

23   BuyerQuest and Smucker for the Smucker Project that would exclude Tradeshift entirely.

24   Specifically, on January 16, 2020, Smucker sent Tradeshift a letter titled "Notice of Termination."

25   TS_BQ_00000001.  The Smucker Services Agreement (TS_BQ_00000053) states that Smucker

26   may only terminate the agreement if it provides Tradeshift with notice of a material breach and

27   Tradeshift does not correct the breach within 30 days of receiving such written notice.  The

28   "Notice of Termination," however, did not identify any such material breaches or indicate a

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                              - 12 -                    TRADESHIFT'S OBJECTIONS AND
                                                                     RESPONSES TO BUYERQUEST'S FIRST
                                                                     SET OF FIRST SET OF ROGS (NOS. 1-19)

contractual basis upon which Smucker was terminating the Smucker Services Agreement at all. Instead, without providing any specific examples, the letter stated that Tradeshift had misrepresented the capabilities of Tradeshift's software and that Smucker was "offering a mutual and immediate termination."  The letter further indicated that Smucker did not intend to comply with its ongoing obligations under the Smucker Services Agreement and that Smucker would block Tradeshift from further performing its contractual duties.  Smucker stated, for example, that it had (1) instructed its internal team to cease cooperation with Tradeshift personnel and (2) suspended Tradeshift's access to any of Smucker's facilities and systems.

After it received the January 16 letter from Smucker (and unaware of BuyerQuest's efforts to convince Smucker to terminate the Smucker Services Agreement with Tradeshift in favor of a BuyerQuest-Smucker-only agreement), Tradeshift promptly attempted to contact BuyerQuest by phone and email to alert it to Smucker's claim that it would not allow further access or cooperation on the Smucker Project.  Because Smucker's January 16 letter appeared to be predicated on fundamental misunderstandings, Tradeshift requested that BuyerQuest, as its subcontractor, cooperate with Tradeshift in helping to resolve any issues that Smucker may have. BuyerQuest, however, ignored Tradeshift's attempts to contact BuyerQuest and did not respond to Tradeshift's requests (and, in doing so, breached its contractual obligations to Tradeshift with respect to project management and communication).  On January 23, 2020 (and by this time suspecting that perhaps BuyerQuest was working with Smucker behind Tradeshift's back and in violation of both the Smucker Services Agreement and the BuyerQuest Agreements), Tradeshift sent a formal letter to BuyerQuest to request its cooperation and, again, asking for a response. (TS_BQ_00000006). Tradeshift specifically reminded BuyerQuest of its obligations of good faith and fair dealing under the BuyerQuest Agreements as Tradeshift's subcontractor.  Suggesting it had been planning to thwart Tradeshift's contractual requests all along, that same day, BuyerQuest responded to Tradeshift through a letter from its outside litigation law firm, Kronenberger Rosenfeld.  (TS_BQ_00000004).  In that letter, BuyerQuest's counsel indicated that BuyerQuest had no obligation to cooperate with Tradeshift under the BuyerQuest Agreements due to Smucker's purported termination of the Smucker Services Agreement and,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 13 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1   perhaps even more concerning, argued that BuyerQuest was permitted to contract directly with

2   Smucker, including to replace Tradeshift on the Smucker Project.  Apparently, at this time,

3   BuyerQuest had already taken significant efforts to convince Smucker to terminate the Smucker

4   Services Agreement with Tradeshift and was working with Smucker to enter into a new contract

5   with just BuyerQuest for the Smucker Project.

6       Tradeshift responded to BuyerQuest in a letter dated January 27, 2020 and again reminded

7   BuyerQuest of its obligation of good faith and fair dealing as Tradeshift's subcontractor and again

8   asked BuyerQuest for its cooperation in working together to resolve any issues that Smucker had

9   raised.  (TS_BQ_00000010).  In a letter dated January 29, 2020, BuyerQuest's attorney

10  responded and expressly refused to assist or even to communicate with Tradeshift about the

11  existing Smucker Project.  (TS_BQ_00000012).

12      Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

13  to supplement this response as additional information is identified.

14  **INTERROGATORY NO. 7:**

15      IDENTIFY EACH incident in which BUYERQUEST failed "to support Tradeshift with

16  planning, configurations, deliverables, integrations, change requests, and product updates

17  necessary for the Smucker project implementation," as alleged in Paragraph 31 of YOUR

18  Complaint.

19  **RESPONSE TO INTERROGATORY NO. 7:**

20      Tradeshift specifically incorporates by reference each of its General Objections asserted

21  above.

22      Tradeshift objects to this Interrogatory because it seeks information that is equally or more

23  readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

24  communications between BuyerQuest and Smucker.  Accordingly some responsive information

25  was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

26  discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

27  BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

28  opportunity to review that information and incorporate it into its response.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                - 14 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL

1   Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

2   including, for example, Interrogatory numbers 5 and 6.

3   In light of the foregoing objections and limitations, Tradeshift responds as follows:

4   Tradeshift incorporates its responses to Interrogatory Numbers 5 and 6.

5   Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

6   to supplement this response as additional information is identified.

7   **INTERROGATORY NO. 8:**

8   IDENTIFY EACH incident in which BUYERQUEST failed "to follow Tradeshift's lead

9   with respect to supplier onboarding strategy and planning," as alleged in Paragraph 31 of YOUR

10  Complaint.

11  **RESPONSE TO INTERROGATORY NO. 8:**

12  Tradeshift specifically incorporates by reference each of its General Objections asserted

13  above.

14  Tradeshift objects to this Interrogatory because it seeks information that is equally or more

15  readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

16  communications between BuyerQuest and Smucker.  Accordingly some responsive information

17  was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

18  discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

19  BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

20  opportunity to review that information and incorporate it into its response.

21  Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

22  including, for example, Interrogatory numbers 5 and 6.

23  In light of the foregoing objections and limitations, Tradeshift responds as follows:

24  Tradeshift's strategy for onboarding suppliers was to first lockdown the functionality of

25  the combined product and then to start onboarding suppliers to ensure that the product fit the

26  information provided by the suppliers.  BuyerQuest did not follow this strategy or Tradeshift's

27  lead and started attempting to onboard suppliers much sooner than Tradeshift expected.

28  Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                                    - 15 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1   to supplement this response as additional information is identified.

2   **INTERROGATORY NO. 9:**

3       IDENTIFY EACH incident in which BUYERQUEST failed "to follow the Change

4   Control Process," as alleged in Paragraph 31 of YOUR Complaint.

5   **RESPONSE TO INTERROGATORY NO. 9:**

6       Tradeshift specifically incorporates by reference each of its General Objections asserted

7   above.

8       Tradeshift objects to this Interrogatory because it seeks information that is equally or more

9   readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

10  communications between BuyerQuest and Smucker.  Accordingly some responsive information

11  was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

12  discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

13  BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

14  opportunity to review that information and incorporate it into its response.

15      Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

16  including, for example, Interrogatory number 5.

17      In light of the foregoing objections and limitations, Tradeshift responds as follows:

18      Tradeshift incorporates its responses to Interrogatory Number 5.

19      Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

20  to supplement this response as additional information is identified.

21  **INTERROGATORY NO. 10:**

22      IDENTIFY EACH incident in which BUYERQUEST failed "to include Tradeshift in

23  COMMUNICATIONS with Smucker related to the Smucker project," as alleged in Paragraph 31

24  of YOUR Complaint.

25  **RESPONSE TO INTERROGATORY NO. 10:**

26      Tradeshift specifically incorporates by reference each of its General Objections asserted

27  above.

28      Tradeshift objects to this Interrogatory because it seeks information that is equally or more

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                          - 16 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1   readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

2   communications between BuyerQuest and Smucker.  Accordingly some responsive information

3   was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

4   discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

5   BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

6   opportunity to review that information and incorporate it into its response.

7       Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

8   including, for example, Interrogatory numbers 5, 6 and 11.

9       In light of the foregoing objections and limitations, Tradeshift provides the following

10   response based on the information that has been made reasonably available to it at this time and

11   reasonable inferences from that information:

12       Tradeshift incorporates its responses to Interrogatory Numbers 5, 6, and 11.

13       Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

14   to supplement this response as additional information is identified.

15   **<u>INTERROGATORY NO. 11:</u>**

16       IDENTIFY EACH incident in which BUYERQUEST made misrepresentations about

17   TRADESHIFT, as alleged in Paragraph 37 of the Complaint, INCLUDING the speaker and

18   recipient and the substance, means, and date of EACH COMMUNICATION.

19   **<u>RESPONSE TO INTERROGATORY NO. 11:</u>**

20       Tradeshift specifically incorporates by reference each of its General Objections asserted

21   above.

22       Tradeshift objects to this Interrogatory because it seeks information that is equally or more

23   readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

24   communications between BuyerQuest and Smucker.  Accordingly some responsive information

25   was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

26   discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

27   BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

28   opportunity to review that information and incorporate it into its response.

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

4153-0116-1765

- 17 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL / HIGHLY CONFIDENTIAL

1    Tradeshift objects to this request as duplicative, at least in part, of Interrogatory numbers

2  5, 6, 10, 12, 13, 15, and 19.

3    In light of the foregoing objections and limitations, Tradeshift provides the following

4  response based on the information that has been made reasonably available to it at this time and

5  reasonable inferences from that information:

6    Tradeshift incorporates its responses to Interrogatory Numbers 5 and 6.

7    In addition, at least as early as September 26, 2019, BuyerQuest planned to encourage

8  Smucker to terminate its contract with Tradeshift and enter into a new contract with BuyerQuest

9  instead.  On September 26, 2019, BuyerQuest's CEO, Jack Mulloy, sent an email to his

10  employees referring to this plan as "Operation Fyrefest."  (BQ043884).  Specifically, Mr. Mulloy

11  sent this email to Salman Siddiqui (BuyerQuest's Chief Operating Officer), Luke Batman

12  (BuyerQuest's Chief Financial Officer), Kyle Muskoff (BuyerQuest's Chief Revenue Officer),

13  and Dan Utyuzh (BuyerQuest's Implementation Team Leader), and told them that they "need to

14  be ready to pivot away from [Tradeshift]" and that he wanted "this group to be prepared to

15  execute 'Operation Fyrefest' . . . ."  Mr. Mulloy also outright told his team that BuyerQuest could

16  and would freely disregard its contract with Tradeshift in favor of its relationship with Smucker

17  by stating the following:

18    "Regardless of what contract BQ has with TS, **BuyerQuest's commitment is to**
19    **Smucker's and the success of the Smucker's project []** I can't emphasize this
    enough"
20

21  (BQ043884) (emphasis in original).

22    Mr. Mulloy's email laid out the purported reasons BuyerQuest would identify to Smucker

23  for terminating the contract with Tradeshift.  Specifically, he indicated that the group should

24  "discuss and agree to . . . [Tradeshift's] inability to execute, [Tradeshift's] unwillingness to

25  enable suppliers, [Tradeshift's] unwillingness to pay their bills or communicate properly with

26  BQ, etc."  Mr. Mulloy also indicated that the group needed to discuss how to communicate this

27  information to Smucker, *i.e.*, that the group should "discuss and agree to . . . [p]otential

28  communication plans between BQ/Smucker's."

CONFIDENTIAL / HIGHLY CONFIDENTIAL

The facts show that Mr. Mulloy executed on "Operation Fyrefest" over the next four months by repeatedly attempting to convince Smucker to terminate its contract with Tradeshift in favor of a direct agreement with BuyerQuest. Mr. Mulloy started by convincing Smucker's Senior Director of Indirect Procurement (Jason Barr) to help BuyerQuest convince Smucker's decisionmakers to terminate Smucker's contract with Tradeshift and transfer the work to BuyerQuest. Mr. Mulloy appears to have disparaged Tradeshift to Mr. Barr on numerous occasions, including by text and telephone. This included conversations on at least on October 21, 2019; October 22, 2019; October 31, 2019; November 1, 2019; November 4, 2019, and November 5, 2019. (*See* BQ103116; BQ103117). For example, Mr. Mulloy reported to his executive team that, on October 21, 2019, about a conversation he had with Mr. Barr "off the record." (BQ109056; BQ103116). During this conversation Mr. Mulloy made Mr. Barr aware of Mr. Mulloy's "skepticism around [Tradeshift]." He also told his team that Mr. Barr was "on board" and that Smucker would now be conducting its own risk assessment on Tradeshift "based on our convo." (BQ109056) The full content of these discussion is still being discovered.

Mr. Mulloy also met with his executive times multiple times to discuss and refine "Operation Fyrefest," *i.e.*, BuyerQuest's plan to convince Smucker to replace Tradeshift. On October 21, 2019, for example, Mr. Mulloy told his team that "today's email from [Tradeshift] was the last straw," and that his team was going to "design a play" and "call it 'Operation Fyrefest'" in case BuyerQuest needed to "audible." (*Id.*). Mr. Mulloy continued to discuss "Operation Fyrefest" with his executive team throughout the project, including during a 2 hour meeting with his team on October 23, 2019.

Smucker's management appears to have initially resisted Mr. Mulloy's and Mr. Barr's recommendations that Smucker terminate its agreement with Tradeshift. Notwithstanding those recommendations, In November 2019, Smucker told Mr. Mulloy that "[BuyerQuest] and Tradeshift need to find a way to come together and pull this thing across the finish line." (BQ103117). Mr. Mulloy responded to Mr. Barr that a particular Tradeshift employee was "a master bs'er" and—notwithstanding Smucker's instructions—stated that "we'll continue to plan for a world without [Tradeshift]." (*Id.*). In other words, Mr. Mulloy had no intention of ceasing

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 19 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL / HIGHLY CONFIDENTIAL

1   his efforts to interfere with Smucker's contract with Tradeshift.

2          On December 5, 2019 BuyerQuest's CEO (Mr. Mulloy) and COO (Mr. Siddiqui) met with

3   persons from Smucker at Smucker's building.  (BQ109256).  Mr. Mulloy later described his

4   conversation with Smucker to BuyerQuest's CFO, Luke Batman.  (BQ103035).  Mr. Mulloy

5   indicated that the conversation included at least Dan Nowikci from Smucker and that Smucker

6   still would not agree to terminate its agreement with Tradeshift.  Specifically, Mr. Mulloy

7   reported that it "sounds like smucker's doesn't want to bifurcate the contract until after we go

8   live."  BuyerQuest's COO (Salman Siddiqui) also described the meeting to another Smucker

9   employee, and stated that "it was an odd ride Jack [Mulloy]" and that "Jack [Mulloy] oversold

10  and just bitched about Tradeshift #ceo_not_jack." (BQ109258) (emphasis added).  Based on these

11  discussions, it is clear that Mr. Mulloy was having conversations with Smucker without including

12  Tradeshift, including conversations intended to disparage Tradeshift and convince Smucker to

13  terminate Tradeshift or otherwise implement "Operation Fyrefest."  Discovery into the exact

14  content of these conversations is still ongoing.

15         To further "Operation Fyrefest," at least as early as December 6, 2019, BuyerQuest's

16  executive team was preparing presentations to help convince Smucker to terminate its agreement

17  with Tradeshift.  On December 6, 2019, Kyle Muskoff sent an initial draft of such a document,

18  titled "Smucker Proposal" to Salman Siddiqui.  (*See* BQ109275).

19         On December 13, 2019, BuyerQuest's CEO, Jack Mulloy, sent an email to one of

20  BuyerQuest's board members, Clark Khayat.  (BQ091161).  In the email, Mr. Mulloy provided

21  Mr. Khayat with an update on BuyerQuest's business, including the Smucker Project and

22  BuyerQuest's relationship with Smucker. During the conversation, Mr. Mulloy admits that he had

23  conversations with Smucker in which he disparaged Tradeshift, its products, its employees, and

24  its finances.  Specifically, Mr. Mulloy stated:

25         ". . . the Tradeshift/Smucker's relationship is not good []. Through social listening
           (***and hearing from me***), Smucker's is very concerned about Tradeshift's ability to
26         execute.  Their product is very immature.  The delivery team is weak [] and the
           word is out that TradeShift has missed payroll a few times recently and they
27         haven't paid any vendors in a couple of months."

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                          - 20 -                 TRADESHIFT'S OBJECTIONS AND
                                                              RESPONSES TO BUYERQUEST'S FIRST
                                                              SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL / HIGHLY CONFIDENTIAL

(BQ091161) (emphasis added).  Mr. Mulloy further stated that, as a result of Smucker's shaken confidence in Tradeshift (which BuyerQuest itself had caused), Smucker would likely terminate its contract with Tradeshift at some point.  Specifically, he stated:

> "A likely outcome at Smucker's is that Tradeshift/BuyerQuest go-live at Smucker's in May 2020.  Smucker's puts [its prior vendor] in the rearview […] soon after, Smucker's asks BuyerQuest to support 100% of their P2P efforts & remove the need for TS all together . . . .  This will result in a better commercial deal for BQ and a better solution for Smucker's."

(BQ091161).

On December 19, 2019, Mr. Mulloy had a conversation with Dan Utyuzh (BuyerQuest's Implementation Team Leader) via Slack (BQ112393).  During the conversation Mr. Mulloy admitted that he had another conversation with Smucker's Senior Director of Indirect Procurement (Jason Barr) and "further planted the seed" that Smucker should take over more of Tradeshift's work so it could ultimately cut Tradeshift out of the Smucker Project.  Specifically Mr. Mulloy stated:

> I further planted the seed that JMS could move invoicing for indirects to BQ and that would: 1) lessen the work TS needs to do (clearly TS is drowning) and 2) shift more of the scope into BQ so that we can blow TS completely out of JMS later in 2020.

(*Id.*) (emphasis added).

On or around December 20, 2019, Mr. Mulloy had another meeting with Smucker.  (BQ095231).  Mr. Mulloy reported to his team that, during this meeting, Smucker was considering Mr. Mulloy's recommendations, but still had questions about BuyerQuest's ability to take over certain of Tradeshift's task, including "Invoicing," "Supplier Portal," and "Direct Orders."  (*Id.*).  He further indicated that BuyerQuest needed to explain how they would handle these issues in order to convince Smucker to terminate its contract with Tradeshift.  (*Id.*).  Mr. Mulloy further noted that he had set up a subsequent meeting with Smucker at BuyerQuest's offices so that BuyerQuest could explain why Smucker should terminate its contract with Tradeshift and transfer the work to Smucker.  As part of this, Mr. Mulloy notes that his contact at Smucker (Jason Barr) would be "building the story as to why Tradeshift failed & how

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 21 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL / HIGHLY CONFIDENTIAL

BuyerQuest can save the day at [Smucker]." Specifically, Mr. Mulloy's notes stated, among other things, the following:

- "Smucker will be in our office on Tuesday, January 7th to discuss our go-forward plan in more detail. For this meeting, we should be prepared to speak to: The updated project timeline (by week), the product roadmap updates to support JMS, a demo of the Invoicing functionality and supplier portal."

- "As part of the January 7th discussions, Jack, Jason, and Luke will split off at some point and talk about the go-forward commercials and contracting process."

- [. . . ] "Jason mentioned that January 17th is the date when JMS will officially give us the greenlight to move forward. Starting now, Jason will be building the story as to why TradeShift failed & how BuyerQuest can save the day at JMS."

- "For obvious reasons, JMS asked us to keep this very quiet for now."

(BQ095231).

The January 7, 2020 meeting with Smucker appears to have gone forward. (*See* BQ113802). On that date, Mr. Mulloy communicated to another BuyerQuest employee that the "[S]mucker's team is almost here," and that they would be using "our front [conference] room on [the] 3rd floor" for the presentation. (*Id.*) Mr. Mulloy's team appears to have prepared several draft presentations to present to Smucker at this meeting or at some other time. One such presentation (BQ100227), included a section titled "Why are we here?" and proceeded to identify the false information that Mr. Mulloy had communicated to Smucker as "concerns around Tradeshift"

CONFIDENTIAL / HIGHLY CONFIDENTIAL



(BQ100229).  The presentation also included notes indicating the points that Mr. Mulloy had communicated to Smucker and that BuyerQuest intended to reiterate during the presentation:

- Tradeshift's P2P solution is not at the level required to meet JMS's requirements:
  - Inability to load JMS accounting file due to filesize limitation
  - Inexperience and inability to enable suppliers to send invoices via cXML or EDI
  - Inability to do receiving (receiving moved to BuyerQuest in Q4)
  - Inability to process PO's with multiple line types
- Smucker has tight timeline with Ariba
  - We aren't convinced that TradeShift can deliver a working product
  - We aren't convinced that TradeShift will be solvent in 2020

- Tradeshift is under tremendous financial pressure and can't pay vendors

(BQ10229).

The presentation went on to explain how Smucker should transfer work from Tradeshift to BuyerQuest (thus breaching Smucker's contract with Tradeshift and BuyerQuest's contracts with Tradeshift).  Specifically, the presentation explained that "BuyerQuest is currently responsible for Indirect eProcurement and Supplier Catalog Management" and that "Tradeshift is currently

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 23 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL / HIGHLY CONFIDENTIAL

responsible for Indirect & Direct Accounts Payable as well as some Supplier Management." It further stated that "BuyerQuest will take over responsibility for Indirect and Direct POs & Accounts Payable as well as all of the Supplier Management functionality." (BQ100231). Another presentation similarly explained the "Indirect P2P Scope" that BuyerQuest would be taking over from Tradeshift. (BQ097218). One presentation also indicated that BuyerQuest needed an "official green light" to take over the scope of work by January 17, 2020. (BQ100235-37).

On January 8, 2020, Mr. Mulloy had another text conversation with Mr. Batman. In that conversation, Mr. Mulloy *again* indicated that (in violation of BuyerQuest's contractual obligations to Tradeshift) he was actively encouraging Smucker to terminate its contract with Tradeshift in favor of a contract with BuyerQuest. (BQ103036). Specifically, Mr. Mulloy asked Mr. Batman whether there was a "cool down period" in BuyerQuest's contract with Tradeshift that would delay BuyerQuest's ability to work directly with Smucker. Mr. Batman indicated that there was not such a provision. Mr. Mulloy responded "Great. ***I'm working it***. Will keep you posted. Maybe we should connect tomorrow or Friday on some of the commercial elements." (BQ103036) (emphasis added).

Mr. Mulloy also appears to have spoken with Smucker on January 13, 2020 to further encourage Smucker to terminate its contract with Tradeshift. On that date, Mr. Mulloy spoke with Salman Siddiqui (BuyerQuest's Chief Operating Officer) and noted that he was going to speak with Smucker that day. (BQ118909). Mr. Siddiqui responded that Mr. Mulloy should "get lots of $$ from [Smucker]," indicating that the Mr. Mulloy was already discussing a new contract between Smucker and BuyerQuest at this time, *i.e.*, before Smucker's purported termination of its contract with Tradeshift. Mr. Mulloy also indicated that Smucker was meeting the following day to make the "go / no-go decision . . . for [BuyerQuest]." *Id.*

Mr. Mulloy's repeated efforts to interfere with Tradeshift's contract with Smucker ultimately paid off. On January 16, 2020—one day prior to the January 17, 2020 deadline that BuyerQuest gave Smucker to give a "green light" for BuyerQuest to take over Tradeshift's portion of the project—Smucker sent a letter to Tradeshift titled "Notice of Termination."

CONFIDENTIAL / HIGHLY CONFIDENTIAL

(TS_BQ_00000001).  In the letter, Smucker did not purport to terminate the agreement through the termination provisions provided in the contract.  Those provisions required Smucker to provide written notice of any material breaches to Tradeshift and to give Tradeshift 30-days to correct those purported breaches.  Instead of complying with those provisions, Smucker accused Tradeshift of fraud and stated that it was voiding the contract without complying with the termination provisions.

BuyerQuest has admitted that it subsequently worked with Smucker to finalize and execute a contract for BuyerQuest to replace Tradeshift on the Smucker Project.  Specifically, in its interrogatory responses, BuyerQuest admits that on or around January 21, 2020, Jason Barr from Smucker sent a draft contract to Jack Mulloy and BuyerQuest, and Smucker thereafter communicated about the provisions of the contract.  During this time, Tradeshift was still attempting to determine why Smucker had purported to terminate its contract with Smucker and requesting that BuyerQuest assist Tradeshift in salvaging the relationship and the agreement.  BuyerQuest outright refused to assist, apparently because it was finalizing this new agreement to take over Tradeshift's work.  On or around February 6, 2020, Dan Utyuzh at BuyerQuest sent a draft statement of work to Rowdy White at Smucker along with a Master Services Agreement.  On or around March 6, 2020, Smucker and BuyerQuest executed a new agreement for work that would have been done by Tradeshift under the Smucker Services Agreement and the BuyerQuest Agreements.

In addition to the documents, communications, and admissions indicating that BuyerQuest employees, including BuyerQuest CEO Jack Mulloy, communicated directly with Smucker without Tradeshift throughout fall of 2019 and January 2020 (and, in doing so, made false and disparaging statements about Tradeshift and encouraged Smucker to improperly terminate its contract with Tradeshift in favor of BuyerQuest), BuyerQuest has also admitted in its discovery responses that it had "[v]arious informal verbal communications in November and December 2019 about Tradeshift's [purported] failure to provide the services that Tradeshift was obligated to provide to Smucker."  BuyerQuest has not yet disclosed the timing or content of those discussions.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 25 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1    Discovery has just started. Tradeshift is continuing its investigation and reserves its right

2    to supplement this response as additional information is identified.

3    **INTERROGATORY NO. 12:**

4    IDENTIFY EACH incident in which BUYERQUEST disparaged TRADESHIFT to

5    SMUCKER, as alleged in Paragraph 37 of the Complaint, INCLUDING the speaker and recipient

6    and the substance, means, and date of EACH COMMUNICATION.

7    **RESPONSE TO INTERROGATORY NO. 12:**

8    Tradeshift specifically incorporates by reference each of its General Objections asserted

9    above.

10    Tradeshift objects to this Interrogatory because it seeks information that is equally or more

11    readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

12    communications between BuyerQuest and Smucker. Accordingly some responsive information

13    was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

14    discovery. Tradeshift reserves the right to update its response to this Interrogatory after

15    BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

16    opportunity to review that information and incorporate it into its response.

17    Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

18    including, for example, Interrogatory numbers 5 and 11.

19    In light of the foregoing objections and limitations, Tradeshift provides the following

20    response based on the information that has been made reasonably available to it at this time and

21    reasonable inferences from that information:

22    Tradeshift incorporates its responses to Interrogatory Numbers 5 and 11.

23    Discovery has just started. Tradeshift is continuing its investigation and reserves its right

24    to supplement this response as additional information is identified.

25    **INTERROGATORY NO. 13:**

26    IDENTIFY EACH incident in which BUYERQUEST "took steps to encourage Smucker

27    to wrongfully terminate the Smucker Services Agreement so that BuyerQuest could do a direct

28    deal with Smucker without Tradeshift for the Smucker project," as alleged in Paragraph 43 of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 26 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1    YOUR Complaint.

2    **RESPONSE TO INTERROGATORY NO. 13:**

3        Tradeshift specifically incorporates by reference each of its General Objections asserted

4    above.

5        Tradeshift objects to this Interrogatory because it seeks information that is equally or more

6    readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

7    communications between BuyerQuest and Smucker.  Accordingly some responsive information

8    was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during

9    discovery.  Tradeshift reserves the right to update its response to this Interrogatory after

10   BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable

11   opportunity to review that information and incorporate it into its response.

12       Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

13   including, for example, Interrogatory numbers 5, 6, and 11.

14       In light of the foregoing objections and limitations, Tradeshift provides the following

15   response based on the information that has been made reasonably available to it at this time and

16   reasonable inferences from that information:

17       Tradeshift incorporates its responses to Interrogatory Numbers 5, 6, and 11.

18       Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

19   to supplement this response as additional information is identified.

20   **INTERROGATORY NO. 14:**

21       IDENTIFY EACH incident in which BUYERQUEST "refused to communicate with,

22   cooperate with, or support Tradeshift in seeking to finish implementation of the Smucker

23   Project," as alleged in Paragraph 43 of YOUR Complaint.

24   **RESPONSE TO INTERROGATORY NO. 14:**

25       Tradeshift specifically incorporates by reference each of its General Objections asserted

26   above.

27       Tradeshift objects to this Interrogatory because it seeks information that is equally or more

28   readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 27 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

communications between BuyerQuest and Smucker.  Accordingly some responsive information was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during discovery.  Tradeshift reserves the right to update its response to this Interrogatory after BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable opportunity to review that information and incorporate it into its response.

Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories, including, for example, Interrogatory Number 6.

In light of the foregoing objections and limitations, Tradeshift responds as follows:

Tradeshift incorporates its response to Interrogatory Number 6.

Discovery has just started.  Tradeshift is continuing its investigation and reserves its right to supplement this response as additional information is identified.

**INTERROGATORY NO. 15:**

IDENTIFY EACH incident in which BUYERQUEST "manufactured an excuse not to perform its obligations under the BuyerQuest Agreements," as alleged in Paragraph 43 of YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 15:**

Tradeshift specifically incorporates by reference each of its General Objections asserted above.

Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal a trade secret and/or confidential or proprietary business information.  If Tradeshift provides such information, it will do so subject to the Protective Order entered in this case.

Tradeshift objects to this Interrogatory because it seeks information that is equally or more readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and communications between BuyerQuest and Smucker.  Accordingly some responsive information was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during discovery.  Tradeshift reserves the right to update its response to this Interrogatory after BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable opportunity to review that information and incorporate it into its response.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 28 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1    Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories,

2   including, for example, Interrogatory numbers 5, 6, and 11.

3    In light of the foregoing objections and limitations, Tradeshift provides the following

4   response based on the information that has been made reasonably available to it at this time and

5   reasonable inferences from that information:

6    Tradeshift incorporates its responses to Interrogatory Numbers 5, 6 and 11.

7    Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

8   to supplement this response as additional information is identified.

9   **INTERROGATORY NO. 16:**

10    IDENTIFY EACH reason that SMUCKER provided to TRADESHIFT for SMUCKER's

11   termination of the SMUCKER SERVICES AGREEMENT.

12   **RESPONSE TO INTERROGATORY NO. 16:**

13    Tradeshift specifically incorporates by reference each of its General Objections asserted

14   above.

15    Tradeshift objects to this request as vague and ambiguous because it asks about Smucker's

16   termination of the Smucker Services Agreement, but Smucker never properly terminated the

17   Smucker Services Agreement pursuant to the termination provisions in that contract; Tradeshift

18   will interpret this interrogatory as seeking information about the reasons Smucker gave for its

19   purported termination.  Tradeshift objects to this interrogatory as seeking information that is

20   equally available to BuyerQuest.

21    In light of the foregoing objections and limitations, Tradeshift responds as follows:

22    Smucker did not properly terminate the Smucker Services Agreement.  Instead, at the

23   behest of BuyerQuest, Smucker unexpectedly repudiated and breached its obligations under the

24   Smucker Services Agreement without following the required procedures for terminating the

25   agreement.

26     Pursuant to Federal Rule of Civil Procedure 33(d), Tradeshift identifies the following

27   documents: Smucker's January 16, 2020 letter (TS_BQ_00000001) and Smucker's January 30,

28   2020 letter (TS_BQ_00000014).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 29 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

1    Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

2    to supplement this response as additional information is identified.

3    **INTERROGATORY NO. 17:**

4    IDENTIFY ALL complaints that SMUCKER or BUYERQUEST communicated to YOU

5    about YOUR performance under the SMUCKER SERVICES AGREEMENT, INCLUDING

6    ANY complaints about the Tradeshift Platform Business Edition and the Tradeshift Pay Business

7    Edition.

8    **RESPONSE TO INTERROGATORY NO. 17:**

9    Tradeshift specifically incorporates by reference each of its General Objections asserted

10   above.

11   Tradeshift further objects to this Interrogatory on the grounds that it is vague and

12   ambiguous in its use of the term "complaints."  Tradeshift will construe "complaints" as defects

13   and "errors and change requests received regarding the Tradeshift Platform Business Edition and

14   the Tradeshift Pay Business Edition in connection with the Smucker Project."

15   In light of the foregoing objections and limitations, Tradeshift responds as follows:

16   Pursuant to Federal Rule of Civil Procedure 33(d), Tradeshift will produce documents

17   sufficient to disclose any complaints that Tradeshift received from Smucker or BuyerQuest

18   regarding Tradeshift's performance under the Smucker Services Agreements.

19   Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

20   to supplement this response as additional information is identified.

21   **INTERROGATORY NO. 18:**

22   DESCRIBE YOUR calculation of EACH category of damages YOU seek from

23   BuyerQuest in this action, INCLUDING ALL DOCUMENTS that support that calculation.

24   **RESPONSE TO INTERROGATORY NO. 18:**

25   Tradeshift specifically incorporates by reference each of its General Objections asserted

26   above.

27   Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal

28   information that is the subject of the attorney-client privilege, the attorney work product doctrine,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                           - 30 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL

1  or any other applicable privilege or doctrine.  Tradeshift will log any such communications it

2  excludes on this basis to the extent consistent with the parties' privilege log agreement.

3  Tradeshift objects to this interrogatory as premature to the extent it seeks expert testimony

4  and/or opinions that are not yet due under the scheduling order issued in this case.  Tradeshift

5  reserves the right to supplement and/or revise its calculation of damages based on the opinion of

6  such experts.

7  Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal a

8  trade secret and/or confidential or proprietary business information.  If Tradeshift provides such

9  information, it will do so subject to the Protective Order entered in this case.  Tradeshift further

10  objects to this Interrogatory to the extent that it calls for Tradeshift to reveal information that is

11  the subject of the attorney-client privilege or the attorney work product doctrine.

12  In light of the foregoing objections and limitations, Tradeshift responds as follows:

13  Tradeshift seeks at least $4,373,070.37 in damages from BuyerQuest, which is the

14  remaining amount that Smucker was required to pay pursuant to the Smucker Services

15  Agreement.  The Smucker Services Agreement provided that Smucker would pay $5,168,951 in

16  fees for implementation, services, and software licenses.  Smucker paid a total of $795,880.63

17  before BuyerQuest breached the BuyerQuest Agreements and interfered with the Smucker

18  Services Agreement.

19  Tradeshift also seeks punitive damages and attorneys' fees in amounts that have yet to be

20  determined.

21  Tradeshift will produce documents sufficient to support its damages claims.  Tradeshift

22  identifies the following non-exhaustive list of exemplary documents supporting Tradeshift's

23  damages claims: the Smucker Services Agreement (TS_BQ_00000053);  The BuyerQuest

24  Agreements (TS_BQ_00000016; TS_BQ_00000124); and Invoice and Payment Reports related

25  to the Smucker Project (TS_BQ_00000135; TS_BQ_00000136).

26  Discovery has just started.  Tradeshift is continuing its investigation and reserves its right

27  to supplement this response as additional information is identified.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

CONFIDENTIAL / HIGHLY CONFIDENTIAL

**INTERROGATORY NO. 19:**

IDENTIFY ALL conduct by BUYERQUEST by specific incident that supports YOUR request for punitive damages in this action.

**RESPONSE TO INTERROGATORY NO. 19:**

Tradeshift specifically incorporates by reference each of its General Objections asserted above.

Tradeshift objects to this Interrogatory to the extent that it calls for Tradeshift to reveal information that is the subject of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine. Tradeshift will log any such communications it excludes on this basis to the extent consistent with the parties' privilege log agreement.

Tradeshift objects to this Interrogatory because it seeks information that is equally or more readily (and, in some cases, uniquely) in BuyerQuest's possession, *e.g.*, discussions and communications between BuyerQuest and Smucker. Accordingly some responsive information was only learned by Tradeshift after-the-fact and/or has yet to be disclosed by BuyerQuest during discovery. Tradeshift reserves the right to update its response to this Interrogatory after BuyerQuest produces relevant documents and information and Tradeshift has had a reasonable opportunity to review that information and incorporate it into its response.

Tradeshift objects to this request as duplicative, at least in part, of other Interrogatories, including, for example, Interrogatory numbers 5, 6 and 11.

In light of the foregoing objections and limitations, Tradeshift responds as follows:

Tradeshift retained BuyerQuest as a subcontractor on the Smucker Project. As a result, BuyerQuest had contractual obligations to Tradeshift as well as an implied obligation of good faith and fair dealing. BuyerQuest completely ignored these obligations. It intentionally interfered with Tradeshift's contract with Smucker by undermining Tradeshift on the Smucker Project and secretly convincing Smucker to terminate the contract in favor of a direct deal with BuyerQuest only. BuyerQuest's plan—which it referred to as "Operation Fyrefest,"—was planned and executed by its executive officers, led by BuyerQuest's CEO, Jack Mulloy.

Tradeshift incorporates its responses to Interrogatory Numbers 5, 6, and 11.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                                              - 32 -                    TRADESHIFT'S OBJECTIONS AND
                                                                                     RESPONSES TO BUYERQUEST'S FIRST
                                                                                     SET OF FIRST SET OF ROGS (NOS. 1-19)

Discovery has just started.  Tradeshift is continuing its investigation and reserves its right to supplement this response as additional information is identified.

Dated: August 10, 2020                     By:   /s/ Amy K. Van Zant
                                                 Amy K. Van Zant
                                                 Jason K. Yu
                                                 Tammy Su
                                                 Attorneys for Plaintiff
                                                 TRADESHIFT, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765                     - 33 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)

## PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action.  My place of business is Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025.  On August 10, 2020, I served the within document(s):

**PLAINTIFF TRADESHIFT, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT BUYERQUEST, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-19).**

| X | By transmitting a courtesy copy **via electronic mail** the document(s) listed above to the email addresses set forth below on August 10, 2020. |
|---|---|

Karl S. Kronenberger
Jeffrey M. Rosenfeld
Liana W. Chen
Ruben Peña
KRONENBERGER ROSELFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com
ruben@KRInternetLaw.com
**ATTORNEYS FOR DEFENDANT BUYERQUEST, INC.**

Executed on August 10, 2020 at Moss Beach, California.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Karin Barnick*
Karin Barnick

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4153-0116-1765

- 1 -

TRADESHIFT'S OBJECTIONS AND
RESPONSES TO BUYERQUEST'S FIRST
SET OF FIRST SET OF ROGS (NOS. 1-19)