Anthony D. Phillips
aphillips@grsm.com



ATTORNEYS AT LAW
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
WWW.GRSM.COM

May 11, 2021

<u>ELECTRONIC MAIL AND ECF</u>

The Honorable Thomas Hixson
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom A - 15th Floor
San Francisco, CA 94102

      Re:    *Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 3:20-cv-01294-RS

## BUYERQUEST'S OPPOSITION TO TRADESHIFT'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES, ECF 83.

Dear Judge Hixson:

Defendant-BuyerQuest, Inc. respectfully submits this Letter Brief in Opposition to plaintiff-Tradeshift's Letter Brief Re Discovery Dispute Re Interrogatory Nos. 11 & 14 ("Motion to Compel"). ECF 83. Tradeshift eschewed the joint letter brief approach mandated by the Court's Discovery Standing Order, moving unilaterally and only hours after the Supplemental Interrogatory Responses at issue were served.

### MEET AND CONFER

Tradeshift did not comply with Local Rule 37-1 or Your Honor's Standing Order. BuyerQuest has twice supplemented its Interrogatory Responses in a good faith effort to avoid motion practice. BuyerQuest served its Second Supplemental Responses on May 6, 2021. Tradeshift filed the Motion to Compel the same day without attempting to confer. ECF 83. It previously signaled its determination to do so irrespective of any supplementation. *See*, ECF 83, Ex. 8 at 2-3 (5/3/21 A. Phillips Email).[1]

DATED: May 11, 2021

                                    GORDON REES SCULLY MANSUKHANI LLP

                                    */s/ Anthony D. Phillips*
                                    Anthony D. Phillips
                                    Attorneys for Defendant
                                    BUYERQUEST, INC.

---

[1] Tradeshift's pretext for moving unilaterally is a red herring. Written discovery closed on April 2 but the parties agreed that disputes over previously served discovery were preserved. The May 15 fact witness deposition cutoff does not alter that.

## BuyerQuest's Statement

Tradeshift again moves to compel after securing BuyerQuest's agreement to compromise and notwithstanding BuyerQuest's performance of that agreement. This Motion to Compel is the most brazen yet: Tradeshift asks the Court to order BuyerQuest to supplement its Interrogatory Responses with untrue information. To grant the Motion would require unquestioning acceptance of Tradeshift's theory of its case. A theory now contradicted by the fact record.

Tradeshift intended to file the Motion to Compel regardless of amendment and upon its predetermination that BuyerQuest's Supplemental Responses would not provide it with the "correct" answer Tradeshift demanded. On May 6, 2021, BuyerQuest served supplemental responses. ECF 83, Exhibit 11. Tradeshift did not meet and confer. Rather, the very same day, Tradeshift unilaterally filed its briefing concerning the instant dispute. ECF 83. Yet, somehow, Tradeshift contends BuyerQuest "repeatedly refused to provide its timely rebuttal." ECF 83 at 1.[2]

Tradeshift's failure to comply with Local Rule 37-1 and the Discovery Standing Order are reason enough to deny the Motion.

More importantly, BuyerQuest has complied with its discovery obligations and responded in full to Tradeshift's Interrogatories. The Motion to Compel is a last ditch attempt to manufacture support for Tradeshift's interference theory that is incongruous with the documentary and testimonial evidence. Tradeshift cannot force BuyerQuest to respond contrary to the facts or with information which it does not have or does not exist. Tradeshift's Motion should be denied.

***Procedural Posture.*** Tradeshift propounded Interrogatories and BuyerQuest asserted valid objections, including that they were compound and exceeded the permissible number. Rule 33(a); *see* Ex. 12 at 2:9-3:7.[3] For instance, responding to all parts of Tradeshift's interrogatory 11 equates to answering approximately 19 questions.[4] Nevertheless, subject to its objections, BuyerQuest substantively responded on March 26, 2021. *See* ECF 83, Ex. 7 at 11:7-26; 15:21-16:7. BuyerQuest provided factual explanation concerning the specific documents at issue in the interrogatories, identified witnesses who prepared or had knowledge of the documents, and cited specific documents from which further responsive information could be obtained pursuant to Rule 33(d). *Id.*

---

[2] BuyerQuest utilizes Tradeshift's Exhibits 1-11, and continues the sequence with its own Exhibit 12.

[3] Tradeshift's Interrogatories, Set Two (Nos. 7-18); BQ notes the specially defined term "IDENTIFY" adds between 6 (six) and 7 (seven) discrete sub-parts depending on the content requested in any interrogatory it is used (e.g. IDENTIFY [PERSONS or DOCUMENT]).

[4] Assuming 1 responsive communication: IDENTIFY the COMMUNICATION (6 sub-parts), + PERSONS (6 sub-parts), + DOCUMENTS (7 sub-parts) = 19 interrogatories. However, the Interrogatory also refers to several categories of communication including verbal or written, concerning 2 particular documents, or general plans/proposals, or one of several services or products. Tradeshift demanded even more granular and segmented detail during the meet and confer process – up to the eve of filing its Motion.

Tradeshift rejected these Responses because they did not "confess" that one of the PowerPoint presentations in question was sent or presented to Smucker by BuyerQuest in a bid to interfere with Tradeshift's contract. On May 6, having investigated further (including by running a document audit), BuyerQuest supplemented its Responses again in an effort to prove the negative: the presentation was *not* emailed to Smucker by BuyerQuest; was *not* shared online; and, was *not* sent from the personal email account of BuyerQuest's CEO.[5]

Between the dates of the two Supplemental Responses, Tradeshift deposed all five BuyerQuest employees that worked on the presentation including its Rule 30(b)(6) representative. All were questioned at length about the presentation. *See, e.g.*, ECF 83, Ex. 9.[6] All testified in accord: Jason Barr of Smucker verbally requested BuyerQuest prepare a presentation for its internal use in deciding whether to replace Tradeshift with BuyerQuest.[7] BuyerQuest drafted that presentation but ultimately did not send it to Smucker.

No document shows that the presentation was sent or given by BuyerQuest to Smucker – neither in BuyerQuest's document production nor in the document production made by Smucker in BuyerQuest's New York lawsuit against it. Tradeshift has all of these documents. It has the native version of the PowerPoint presentation, including therefore the relevant metadata.[8]

*Argument.* BuyerQuest's Responses are complete. It has fully explained the nature of the presentation and who prepared it. It has gone as far as possible in proving a negative – the presentation was not sent to Smucker. The documents, meta-data and deposition testimony are in accord.

Tradeshift argues the presentation may be "the most significant piece of evidence supporting Tradeshift's interference claim." ECF 83, at 4. It goes on to complain that BuyerQuest "neglect[s] to explain how the presentation eventually was provided to Smucker[.]" *Id*., at 5 (emphasis in original). Yet Tradeshift assumes what it seeks to prove. The presentation was *not* sent or given to Smucker – the decision to replace Tradeshift with BuyerQuest was made without it.

---

[5] Tradeshift suggests that the only acceptable response would eliminate every conceivable means by which the presentation could have been conveyed to Smucker. This, of course, is neither the law nor feasible. *See*, ECF 83 at 5.

[6] Testimony of BuyerQuest CEO, Jack Mulloy, beginning at transcript page 222, concerning BQ100227 (Tradeshift's Ex. 1). Mr. Mulloy testified to when Ex. 1 was created (p. 224:10-13; 238-239); who participated in its creation (p. 225, 239-240, 257) and sources of information for the content (p. 225-229).

[7] By this time (January 2020), Smucker's decision to terminate Tradeshift had been made. The question was who would replace it – BuyerQuest or a different software provider.

[8] As promised, BuyerQuest relied on the results of the document audit trail in supplementing its Responses. There is no corresponding Request for Production at issue.

Tradeshift deposed the authors of the document including BuyerQuest's COO Salman Siddiqui; CFO Luke Batman; Director of Implementation Dan Utyuzh; former Chief Revenue Officer Kyle Muskoff; and, CEO Jack Mulloy (also its 30(b)(6) designee).

Tradeshift had (and took) every opportunity to cross-examine BuyerQuest's witnesses concerning the document; whether it was sent to Smucker; and, who prepared it.[9] Tradeshift cites to no other testimony than CEO Jack Mulloy and, despite the testimony, insists BuyerQuest is withholding information. In fact, Mr. Mulloy testified there is no reason to believe the presentation was ever sent to Smucker and no search for documents has suggested otherwise. *See*, ECF 83, Ex. 9[10].

Tradeshift complains no emails from BuyerQuest sending BQ100227 to Smucker have been produced. This is because *none exist*. All testimony and documents have been consistent on this point. The Motion to Compel offers nothing to the contrary beyond the speculation of counsel. Counsel's wishful interpretation of the document is not evidence. Nor can counsel will into existence evidence it hopes will support theories that have none.

To grant the Motion to Compel, the Court must accept as fact Tradeshift's conjecture about the presentation and its paranoid insistence that every discovery response is an artful concealment to be read for what it does not say, rather than what it does. The presentation was a draft that never left BuyerQuest – it never needed to. There is no more information to provide. There is no basis to compel further supplemental responses and this Court should deny the Motion to Compel.

        Respectfully submitted,

        GORDON REES SCULLY MANSUKHANI LLP

        */s/ Anthony D. Phillips*
        Anthony D. Phillips
        Attorneys for Defendant
        BUYERQUEST, INC.

---

[9] On May 12, they will take the deposition of Smucker's Jason Barr – the individual who requested BuyerQuest draft the presentation.

[10] Referring to BQ100227 "I don't believe this was ever sent to Smucker's." ECF 83, Ex. 9 at 255:13 – 256:6.

**EXHIBIT 12**

| | |
|---|---|
| 1 | AMY K. VAN ZANT (STATE BAR NO. 197426) |
| | avanzant@orrick.com |
| 2 | JASON K. YU (STATE BAR NO. 274215) |
| | jasonyu@orrick.com |
| 3 | TAMMY SU (STATE BAR NO. 329652) |
| | tsu@orrick.com |
| 4 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 1000 Marsh Road |
| 5 | Menlo Park, CA 94025-1015 |
| | Telephone: +1 650 614 7400 |
| 6 | Facsimile: +1 650 614 7401 |
| 7 | Attorneys for Plaintiff |
| | TRADESHIFT, INC. |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC., | Case No. 3:20-cv-1294-RS |
| Plaintiff, | **PLAINTIFF TRADESHIFT, INC.'S SECOND SET OF INTERROGATORIES TO DEFENDANT BUYERQUEST, INC. (NOS. 7-18)** |
| v. | |
| BUYERQUEST, INC., | |
| Defendant. | |

**PROPOUNDING PARTY:** Plaintiff Tradeshift, Inc.

**RESPONDING PARTY:** Defendant BuyerQuest, Inc.

**SET NUMBER:** Two

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

TRADESHIFT'S SECOND SET OF
INTERROGATORIES (NOS. 7-18)
Case No. 3:20-cv-1294-RS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Tradeshift, Inc. ("Tradeshift" or "Plaintiff"), by its attorneys Orrick, Herrington & Sutcliffe LLP, hereby requests that Defendant BuyerQuest, Inc. ("BuyerQuest" or "Defendant") respond to the following interrogatories in writing, separately under oath, and serve its answers within thirty (30) days after the service hereof to the attention of Amy K. Van Zant at the law offices of Orrick, Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, California 94025.

## DEFINITIONS

A. These Definitions supplement any definitions and rules of construction set forth in the Federal Rules of Civil Procedure, Federal Rules of Evidence, or the Local Rules. Such definitions are incorporated herein by reference.

B. The term "DOCUMENT" or "DOCUMENTS" as used herein is intended to be defined in its broadest sense and includes, without limitation, the original and all nonidentical copies (including drafts and those with any notations) of all "documents," "writings," "recordings," and "photographs" of the types designated in Rule 34(a) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence and includes materials in digital forms. "DOCUMENTS" are stored in any medium from which information can be obtained either directly or, if necessary, after translation by BuyerQuest into a reasonably usable form.

C. The term "PERSON," or "PERSONS," as used herein includes both natural persons and legal entities, including, without limitation, corporations, companies, firms, partnerships, joint ventures, proprietorships, associations, unincorporated organizations, trusts, and governmental bodies or agencies. Unless noted otherwise, references to any person, entity, or party herein include its, his, or her principals, agents, representatives, attorneys, employees, employers, officers, directors, expert witnesses or consultants, or others acting on behalf of said person, entity, or party.

D. The term "PERSONS WITH KNOWLEDGE" as used herein means any PERSONS (1) who observed or witnessed the event or communication in question; (2) who participated in the event or communication in question; or (3) who discussed the event or communication in question with a PERSON meeting the description in (1) or (2) herein.

Orrick, Herrington & Sutcliffe LLP
Attorneys At Law
Silicon Valley

TRADESHIFT'S FIRST SET OF INTERROGATORIES (NOS. 7-18)
Case No. 3:20-cv-1294-RS

E. The terms "CONCERNING," "REGARDING," "RELEVANT TO," "RELATE TO," or "REFER TO," or any variants thereof, when used in connection with any DOCUMENT, shall be understood to apply if the DOCUMENT directly or indirectly mentions, discusses, constitutes, concerns, describes, explains, comprises, sets forth, or in any other way deals with the subject matter described in the request in which the term appears.

F. The term "ANY" shall be understood to include and encompass "ALL." As used herein, the singular shall always include the plural and the present tense shall also include the past tense.

G. The terms "IDENTIFY" or "IDENTIFYING" as used herein mean the following:

(a) with reference to a natural PERSON or PERSONS, it means to state, fully and separately as to each (1) such PERSON's full name; (2) any known occupation and business title held; (3) current or last known business affiliation; (4) current or last known residential address and current or last known business address; (5) current or last known email address; (5) current or last known telephone number; and (6) current or last known relationship to BuyerQuest.

(b) with reference to an entity or entities, it means to state, fully and separately as to each (1) such entity's full name; (2) state (or country) of incorporation or organization (if any); (3) principal place of business; (4) present or last known address; and (5) present or last known telephone number.

(c) with reference to any DOCUMENT or other tangible thing, it means to provide the following: (1) the date of the DOCUMENT or tangible thing; (2) the identity of each PERSON who authorized, signed, created, or prepared the DOCUMENT or tangible thing; (3) the identity of each addressee and recipient of the DOCUMENT or tangible thing; (4) the title and subject matter of the DOCUMENT or tangible thing; (5) the number of pages in the DOCUMENT or tangible thing; (6) the identity of the PERSONS having possession, custody, or control of the original copies of the DOCUMENT or tangible thing; and (7) a present location of the DOCUMENT or tangible thing.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

TRADESHIFT'S SECOND SET OF
INTERROGATORIES (NOS. 7-18)
CASE NO. 3:20-CV-1294-RS

(d) with reference to a COMMUNICATION or COMMUNICATIONS, it means to describe the date and time of the COMMUNICATION, the contents of the COMMUNICATION, the circumstances that prompted the COMMUNICATION, any subsequent action that resulted from the COMMUNICATION, all PERSONS involved in each such COMMUNICATION and all DOCUMENTS REFERRING or RELATING TO to each such COMMUNICATION.

H. The terms "DEFENDANT," "YOU," "YOUR," and "BUYERQUEST" as used herein mean Defendant BuyerQuest, Inc.

I. The terms "PLAINTIFF" and "TRADESHIFT" as used herein mean Plaintiff Tradeshift, Inc., its officers, directors, principals, employees, agents, subsidiaries, and all other PERSONS and entities representing or acting on behalf of it in any capacity.

J. The term "SMUCKER" as used herein means Smucker Services Company, and its parent(s), officers, directors, principals, employees, agents, subsidiaries, and all other PERSONS and entities representing or acting on behalf of it in any capacity, and specifically includes the J.M. Smucker Company.

K. The term "SMUCKER SERVICES AGREEMENT" as used herein means the contract entitled "Services Agreement," executed on June 28, 2019, between SMUCKER and TRADESHIFT.

L. The term "TRADESHIFT PARTNER PROGRAM AGREEMENT" as used herein means the contract entitled "Master Agreement for the Tradeshift Partner Program," entered on June 7, 2019, between BUYERQUEST and TRADESHIFT.

M. The term "CROSS SELLING ATTACHMENT" as used herein means the document entitled "Cross Selling Attachment," entered on June 7, 2019, between BUYERQUEST and TRADESHIFT.

N. The term "RESELLER ORDER FORM" as used herein means the document entitled "Reseller Order Form," executed on June 28, 2019, between BUYERQUEST and TRADESHIFT.

O. The term "BUYERQUEST AGREEMENTS" as used herein means the

TRADESHIFT PARTNER PROGRAM AGREEMENT, CROSS SELLING ATTACHMENT, and RESELLER ORDER FORM.

P. The term "SMUCKER PROJECT" as used herein means the system for managing portions of SMUCKER's supply chain (e.g., procurement, payment, supplier data, invoicing, accounts payable, etc.) that SMUCKER sought to have implemented in 2019-2020 to replace its prior system, and the scope of work and functionality involved in implementing that system, including the work done pursuant to, for example, the SMUCKER SERVICES AGREEMENT, entered on June 30, 2019, between SMUCKER and TRADESHIFT, the RESELLER ORDER FORM, entered into on June 28, 2019 between TRADESHIFT and BUYERQUEST, and the new Smucker Services agreement, entered into on March 6, 2020 between SMUCKER and BUYERQUEST

## INSTRUCTIONS

1. When an interrogatory requests that YOU provide (*e.g.*, IDENTIFY) information, all relevant, non-privileged information which YOU—or YOUR agents, attorneys, employees, officers, directors, accountants, auditors, investigators, representatives, or other PERSONS acting under YOUR or YOUR attorneys' authorization, employment, direction, or control—possess or control is to be divulged. If an interrogatory requests disclosure of a communication or other information as to which YOU claim any privilege, immunity, confidentiality, or protection of any kind as a ground for nondisclosure, IDENTIFY each PERSON who participated in or had knowledge of the communication or other information and also provide the following:

(i) the privilege, immunity, confidentiality, or protection that YOU claim precludes disclosure;

(ii) the subject matter of the communication or information (without revealing the content as to which the privilege, immunity, confidentiality, or protection is claimed); and

(iii) any additional facts or grounds on which YOU base YOUR claim of privilege, immunity, confidentiality, or protection.

2. If an interrogatory requests disclosure of information contained in any DOCUMENT or other tangible thing for which YOU claim any privilege, immunity,

confidentiality, or protection of any kind as a ground for nondisclosure, list such DOCUMENT or tangible thing, IDENTIFY such DOCUMENT or tangible thing in the manner prescribed by Paragraph G of the initial definitions, and provide the following:

 (i) the privilege, immunity, confidentiality, or protection that YOU claim precludes disclosure and

 (ii) any additional facts or grounds on which YOU base YOUR claim of privilege, immunity, confidentiality, or protection.

3. If, after exercising due diligence to secure the information requested, YOU cannot respond to an interrogatory or any portion thereof in full, so state, answer to the extent possible, and state what information and knowledge YOU do have concerning the unanswered portion. Also, describe in detail all efforts made to fully answer the interrogatory; IDENTIFY every PERSON involved in such efforts; and state the additional information YOU need, if any, to respond completely to the interrogatory.

4. If YOU object to any request or part thereof, provide an answer to the part of the request to which YOUR objection does not apply and specify to which part YOU have objected.

5. If in answering these requests YOU claim any ambiguity in either a request or a definition or instruction applicable thereto, IDENTIFY in YOUR response the language YOU consider ambiguous and state the interpretation YOU are using in responding.

## INTERROGATORIES

**INTERROGATORY NO. 7:**

To the extent BUYERQUEST contends that the SMUCKER SERVICES AGREEMENT was voidable by SMUCKER prior to January 15, 2020, DESCRIBE ALL legal and factual bases for that contention.

**INTERROGATORY NO. 8:**

To the extent BUYERQUEST contends that the SMUCKER SERVICES AGREEMENT actually was void or otherwise invalid (and not simply voidable) prior to January 15, 2020, DESCRIBE ALL legal and factual bases for that contention.

**INTERROGATORY NO. 9:**

To the extent BUYERQUEST contends that TRADESHIFT had materially breached one or more provisions of the SMUCKER SERVICES AGREEMENT as of January 15, 2020, IDENTIFY the specific provision(s) BUYERQUEST contends TRADESHIFT breached (including by identifying the specific page and language of the provision(s) in TS_BQ_00000053) and DESCRIBE the conduct that BUYERQUEST contends constituted said breach(es).

**INTERROGATORY NO. 10:**

To the extent BUYERQUEST contends that TRADESHIFT had materially breached one or more provisions of the BUYERQUEST AGREEMENTS as of January 15, 2020, IDENTIFY the specific provision(s) BUYERQUEST contends TRADESHIFT breached and DESCRIBE the conduct that constitutes said breach(es).

**INTERROGATORY NO. 11:**

IDENTIFY each COMMUNICATION between BUYERQUEST and SMUCKER from September 1, 2019 to January 16, 2020—including but not limited to verbal and written communications, including by letter, e-mail, text message, telephone, instant messenger, or in PERSON—during which BUYERQUEST (or any employee, contractor, or agent acting on behalf of BUYERQUEST) discussed or presented the information in BQ100227, BQ097216, or otherwise discussed a plan, proposal, or ability for BUYERQUEST to provide products or services for Indirect and/or Direct POs, Accounts Payable, and/or Supplier Management, including to IDENTIFY the date of each such COMMUNICATION, the PERSONS who took part in each such COMMUNICATION, the means of each such COMMUNICATION, and the substance of what BUYERQUEST communicated to SMUCKER during that COMMUNICATION (including whether BQ100227, BQ097216, or some similar information was presented).

**INTERROGATORY NO. 12:**

IDENTIFY and DESCRIBE ALL materials and information provided to SMUCKER during the January 7, 2020 meeting between SMUCKER and BUYERQUEST (discussed in

YOUR response to Interrogatory No. 4 and in BQ095231), including by IDENTIFYING (by Bates number if produced or by reasonable description if not) any slides or DOCUMENTS that were displayed or provided during the meeting and any materials or DOCUMENTS that were exchanged during or in connection with the meeting and DESCRIBING all statements made to SMUCKER during the meeting, including whether BUYERQUEST discussed its ability to take over responsibility for Indirect and Direct POs and Accounts Payable and/or Supplier Management functionality on the SMUCKER PROJECT and whether BUYERQUEST provided any demonstrations of its products.

**INTERROGATORY NO. 13:**

To the extent BUYERQUEST contends that SMUCKER asked BUYERQUEST for a proposal, plan, or other information regarding BUYERQUEST's ability to replace TRADESHIFT on the SMUCKER PROJECT, IDENTIFY each COMMUNICATION during which SMUCKER made such a request including by IDENTIFYING the PERSONS involved in the COMMUNICATION and DESCRIBING the content of the COMMUNICATION.

**INTERROGATORY NO. 14:**

DESCRIBE the nature and purpose of the document BUYERQUEST produced at BQ100227, including by IDENTIFYING the author of the document, any PERSONS who revised the document, the intended purpose of and expected audience for the document, any instances in which the document or a similar variation/version of the document was presented to or sent to PERSONS other than the author (including PERSONS outside of BUYERQUEST), and the PERSONS other than the author to whom the document was presented or sent.

**INTERROGATORY NO. 15:**

DESCRIBE the nature and purpose of the document BUYERQUEST produced at BQ097216, including by IDENTIFYING the author of the document, any PERSONS who revised the document, the intended purpose of and expected audience for the document, any instances in which the document or a similar variation/version of the document was presented to or sent to PERSONS other than the author (including PERSONS outside of BUYERQUEST), and the PERSONS other than the author to whom the document was presented or sent.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

TRADESHIFT'S SECOND SET OF
INTERROGATORIES (NOS. 7-18)
CASE NO. 3:20-CV-1294-RS

**INTERROGATORY NO. 16:**

To the extent BUYERQUEST contends that SMUCKER terminated or voided the SMUCKER SERVICES AGREEMENT for reasons other than the BUYERQUEST conduct identified in TRADESHIFT's August 10, 2020 response to BUYERQUEST's Interrogatory No. 11, IDENTIFY and DESCRIBE those reasons.

**INTERROGATORY NO. 17:**

To the extent BUYERQUEST intends to assert at trial any of the twenty-one affirmative defenses identified in its Answer, DESCRIBE the legal and factual bases for each such affirmative defense.

**INTERROGATORY NO. 18:**

To the extent BUYERQUEST contends that there were requirements identified in SMUCKER's 2019 Business Requirement Document that (1) TRADESHIFT was obligated to provide pursuant to the SMUCKER SERVICES AGREEMENT as of January 1, 2020, (2) TRADESHIFT was not capable of providing, and (3) BUYERQUEST ultimately provided to SMUCKER pursuant to the March 6, 2020 agreement between BUYERQUEST and SMUCKER, IDENTIFY each such requirement and DESCRIBE the functionality that BUYERQUEST provided to satisfy the requirement including the date on which BUYERQUEST implemented said functionality.

Dated: January 18, 2021      By: /s/ Amy K. Van Zant

                                          Amy K. Van Zant
                                          Jason K. Yu
                                          Tammy Su
                                          Attorneys for Plaintiff
                                          TRADESHIFT, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

TRADESHIFT'S SECOND SET OF
INTERROGATORIES (NOS. 7-18)
CASE NO. 3:20-CV-1294-RS

# PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My place of business is Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025. On January 18, 2021, I served the within document(s):

**PLAINTIFF TRADESHIFT, INC.'S SECOND SET OF INTERROGATORIES TO DEFENDANT BUYERQUEST, INC. (NOS. 7-18).**

| X | By transmitting **via electronic mail** the document(s) listed above to the email addresses set forth below on January 18, 2021. |
|---|---|

Anthony Phillips
Craig Mariam
Eunice Liao
275 Battery Street, Ste. 2000
San Francisco, CA 94111
aphillips@grsm.com
cmariam@grsm.com
eliao@grsm.com
**ATTORNEYS FOR DEFENDANT BUYERQUEST, INC.**

Executed on January 18, 2021 at San Jose, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Jason K. Yu*
Jason K. Yu