UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TRADESHIFT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BUYERQUEST, INC.,<br><br>Defendant. | Case No. 20-cv-01294-RS   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 79, 83, 85 |

We are here on two motions to compel brought by Plaintiff Tradeshift against Defendant BuyerQuest. The Court held a hearing on May 24, 2021, and this order follows.

**A.    ECF No. 79: Tradeshift Motion to Compel on Request for Production 15**

Tradeshift moves to compel a new search for documents responsive to RFP 15, which asked for "all documents relating to or discussing Tradeshift." Specifically, Tradeshift wants BuyerQuest to search for documents dated after March 6, 2020 using the terms "Tradeshift" and "TS" and including the custodians BuyerQuest already searched as well as identified members of BuyerQuest's product development team (Salman Siddiqui, Andrii Korolov, and four individuals identified only by their first name (Pavel, Igor, Alex and Vlad)). Tradeshift also requests an order compelling BuyerQuest to serve a privilege log for documents responsive to RFP 15 that it withholds based on privilege. BuyerQuest previously agreed to search for responsive documents from March 6 to October 1, 2020 for its regular list of custodians, which does not include the six members of the product development team. But BuyerQuest limited that search to documents that included the exact term "Tradeshift" and did not search for documents referencing "TS." Tradeshift has provided evidence in connection with this motion to compel that BuyerQuest

employees often referred to Tradeshift as "TS" in their documents.

      Let's start with the easy issues. BuyerQuest states that "[d]uring the meet and confer process, BuyerQuest acknowledged that post-March 6 documents that refer back to the Tradeshift-BuyerQuest project might be relevant and agreed (quite plainly) to a limited custodian search for 'documents referencing Tradeshift between March 6, 2020 and October 1, 2020 (the time period not covered by prior searches).'" When BuyerQuest made that agreement, it did not disclose that the way it would execute that search is by searching only for the whole word "Tradeshift." Because BuyerQuest employees sometimes refer to Tradeshift as "TS" in their documents, it was unreasonable for BuyerQuest to limit its search to documents that included the whole word "Tradeshift." When a party makes an agreement to search for something, it must carry out its agreement in a reasonable way. Accordingly, the Court orders that BuyerQuest must search again for documents between March 6 and October 1, 2020 for its regular set of custodians for references to "TS."

      As to the privilege log, the parties have stipulated that "Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log." ECF No. 34 §10(d). Therefore, BuyerQuest must produce a privilege log for any documents responsive to RFP 15 that it withholds, unless the documents fall within the agreement that certain communications need not be logged.

      With that out of the way, we come to the big issue in dispute, which is Tradeshift's request that six members of the product development team should be added as custodians for purposes of this search. A review of Tradeshift's Complaint discloses no reason why those custodians could possibly be relevant. Tradeshift's claim for breach of contract alleges that BuyerQuest agreed to support Tradeshift as necessary for the Smucker implementation, agreed to cooperate with Tradeshift to agree on all scope changes, and agreed to include Tradeshift in communications with Smucker. ECF No. 1 ¶ 29. Tradeshift alleges that "BuyerQuest has materially breached the BuyerQuest Agreements on multiple occasions, including, on information and belief, by, for example, failing to obtain Tradeshift's review and consent to scope changes to the Smucker project; interfering with Tradeshift's program management duties; failing to support Tradeshift

2

with planning, configurations, deliverables, integrations, change requests, and product updates necessary for the Smucker project implementation; failing to follow Tradeshift's lead with respect to supplier onboarding strategy and planning; failing to follow the Change Control Process; and failing to include Tradeshift in communications with Smucker related to the Smucker project." *Id*. ¶ 31. From a reading of the Complaint, all of the breach allegations relate to BuyerQuest's successful effort to sabotage Tradeshift's work for Smucker and to get Smucker to terminate its contract with Tradeshift and instead contract directly with BuyerQuest. Tradeshift's implied covenant claim is to the same effect, *id*. ¶ 43, as is its tortious interference claim, *id*. ¶ 37.

In this motion to compel, Tradeshift's theory of why the product development custodians are relevant rests on a theory of contract liability that is completely outside the Complaint, as Tradeshift acknowledged at the hearing. Tradeshift argues that "BuyerQuest breached the confidentiality provision in that contract by misusing Tradeshift's confidential specification and design documents to enhance BuyerQuest's product to mimic and replace Tradeshift's products on the Smucker Project." Tradeshift asserts that the six members of the product development team that it seeks to add as custodians were the ones who misappropriated Tradeshift's confidential documents to develop new BuyerQuest product. Tradeshift acknowledged at the hearing that these six individuals did not work on the implementation of the Tradeshift-Smucker contract that is the subject of the Complaint. Thus, by seeking documents dated *after* March 6, 2020 (i.e., after Smucker terminated the contract) from custodians who had no involvement in the contract breaches alleged in the Complaint (and therefore would not have emails or other documents that might refer back to those events), Tradeshift's push for these custodians rests entirely on an unpled theory of liability.

The Court agrees with BuyerQuest that this is a bridge too far. Relevance for discovery purposes has to be framed by the pleadings, and a complaint has to say more than "the defendant breached the contract." The complaint has to give notice under Rule 8 of what the breaches were, and there has to be enough factual material in the complaint to satisfy *Twombly* and *Iqbal*. Those factual allegations are what the Court looks to in order to measure relevance and proportionality. The problem with Tradeshift's new theory of liability in this motion to compel is not that the

3

Complaint lacks a certain level of detail, such as listing each and every contractual provision that was breached, or describing every last fact concerning each claim. Rather, the problem here is that the Complaint is very well written and its dimensions are crystal clear. It tells a good, concise story about a successful plot by BuyerQuest to sabotage Tradeshift's contract with Smucker, a story that seems to end in February 2020 when Tradeshift's damages were complete. And Tradeshift's February 2020 Complaint suggests that Tradeshift knew with precision what those damages were. Complaint, first prayer for relief ("For actual damages in an amount to be proven at trial, but not less than $4,323,070"). BuyerQuest's misuse of Tradeshift's technical documentation later in 2020 in the course of working for Smucker is simply outside of this well-told story. For purposes of this discovery dispute, Tradeshift is in a sense the victim of its own clear writing. The Court understands exactly what Tradeshift's claims are about, and they are not about this.

Evidence that BuyerQuest was misappropriating Tradeshift's materials in the course of its later work for Smucker would probably have supported a timely motion to amend the Complaint, but such a motion was due in August of last year. ECF No. 36. The passage of that deadline does have consequences for the scope of discovery because we now have a Complaint with an easily understood theory of liability and one that can't be changed, and that theory doesn't reach the six proposed product development custodians. Thus, while it is true that Tradeshift has disclosed this new theory of liability in its interrogatory response, the theory is not in any operative pleading and can't be added to one now.

Oh, and it's not true that BuyerQuest implicitly conceded that the March-October 2020 time frame is relevant by agreeing to search for responsive documents from its regular set of custodians. Those custodians were involved in the conduct alleged in the Complaint, so their later-in-time documents might refer back to relevant events. The sole justification Tradeshift offers for the proposed product development custodians is that they may have evidence of BuyerQuest's misuse of Tradeshift's technical documents later in 2020, not that they would have anything relevant to the conduct alleged in the Complaint.

Further, in terms of proportionality, adding these six proposed new custodians would more

4

than double the number of document custodians for BuyerQuest. BuyerQuest stated at the hearing that for its document productions during fact discovery (which is now closed), it collected from five custodians. Adding the proposed six new custodians would more than double that number to 11 total custodians – and *most* of the 11 would be for a theory of liability that is nowhere mentioned in the Complaint and can't be added now. For these reasons, the Court finds that adding the six proposed product development custodians is disproportional to the needs of the case.

Accordingly, Tradeshift's motion to compel at ECF No. 79 is granted in part and denied in part as stated above.

**B.      ECF No. 83: Tradeshift's Motion to Compel on Interrogatories 11 and 14**

In ECF No. 83, Tradeshift moves to compel further responses to its rogs 11 and 14 concerning document BQ100227, which is attached to the joint discovery letter brief as Exhibit 1. At the hearing Tradeshift clarified that for rog 11 it is asking if BuyerQuest shared or provided that document to Smucker in any way at all. BuyerQuest's current response says the document was "not sent" to Smucker, "was not emailed" to Smucker, and "was not shared online" with Smucker. That's not quite a complete response. The Court orders BuyerQuest to amend its response to rog 11 to state whether BQ100227, or any version of that document, was ever communicated, displayed or shown to Smucker in any way.

The parties also discussed rog 14. The Court agrees that BuyerQuest must make the same revisions to its response to rog 14 that it makes to its response to rog 11. Tradeshift also argued that BuyerQuest had to identify everyone who wrote or edited BQ100227, but BuyerQuest points out that it has done so. BuyerQuest also represented that counsel reviewed the audit trail for that document, and the rog response's list of individuals is consistent with the audit trail, even if witness testimony might be different. Tradeshift said it would accept that representation, so no further changes are needed to the list of who edited the document.

///

///

///

Accordingly, Tradeshift's motion to compel at ECF No. 83 is granted in part and denied in part as stated above.

**IT IS SO ORDERED.**

Dated: May 25, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge