1   AMY K. VAN ZANT (STATE BAR NO. 197426)
    avanzant@orrick.com
2   JASON K. YU (STATE BAR NO. 274215)
    jasonyu@orrick.com
3   TAMMY SU (STATE BAR NO. 329652)
    tsu@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025-1015
    Telephone:    +1 650 614 7400
6   Facsimile:    +1 650 614 7401

7   Attorneys for Plaintiff
    TRADESHIFT, INC.

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   TRADESHIFT, INC., a Delaware corporation,        Case No. 3:20-cv-1294-RS

13                   Plaintiff,                        **PLAINTIFF TRADESHIFT, INC.'S
                                                       NOTICE OF MOTION AND MOTION
14          v.                                         FOR RELIEF FROM
                                                       NONDISPOSITIVE PRETRIAL ORDER
15   BUYERQUEST, INC., an Ohio corporation,            OF MAGISTRATE JUDGE (DKT. NO.
                                                       94)**
16                   Defendant.
                                                       Dept:        3 – 17TH FLOOR
17                                                     Judge:       The Hon. Richard Seeborg
                                                       Date:        TBD
18                                                     Time:        TBD

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on a date to be determined by the Court, in Courtroom 3,

3  17th Floor, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA

4  94102, Plaintiff Tradeshift, Inc. ("Plaintiff" or "Tradeshift") will and hereby does move this

5  Court for relief from Nondispositive Pretrial Order of Magistrate Judge (ECF 94) (the "Order").

6    Defendant brings this Motion pursuant to Federal Rule of Civil Procedure 72 and Civil

7  Local Rule 72-2.  Tradeshift objects to the portion of the Order denying discovery related to

8  Tradeshift's contention that BuyerQuest breached the confidentiality provision of the BuyerQuest

9  Agreements.  According to the Order, that issue is not specifically raised in the Complaint and

10  thus is not discoverable.  This holding is contrary to Supreme Court and Ninth Circuit precedent.

11  *E.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("Consistent[] with the

12  notice-pleading system established by the Rules, discovery is *not* limited to issues raised by the

13  pleadings, for discovery itself is designed to help define and clarify the issues.") (emphasis

14  added); *Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc.*, 320 F. App'x. 675,

15  677 (9th Cir. 2009) (holding the same and reversing district court's denial of motion to compel).

16  It is also based on a clearly erroneous reading of the Complaint, which asserts a claim for breach

17  of the agreements and lists *exemplary* acts of breach without limitation.  Moreover, the Order is

18  extremely prejudicial because it could deprive Tradeshift of its ability to pursue this theory of

19  breach.

20    This Motion is based on this Notice, Memorandum of Points and Authorities, the

21  Declaration of Jason Yu and exhibits thereto, the record in this case, oral argument as permitted

22  by the Court, and any other matters that the Court deems appropriate.

23

24   Dated: June 8, 2021            */s/ Amy K. Van Zant*

25                      AMY K. VAN ZANT
                      ORRICK, HERRINGTON & SUTCLIFFE LLP

26
                      Attorneys for Plaintiff
27                      TRADESHIFT, INC.

28

1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     RELEVANT FACTS ..................................................................................................... 1

      A.      Tradeshift Files Complaint for Breach of Contract and Tortious
           Interference. ................................................................................................... 1

      B.      Tradeshift Discovers Breach of Confidentiality Provision and Supplements
           Interrogatory Responses. ................................................................................ 2

      C.      Tradeshift Moves to Compel and Magistrate Hixson Grants-in-Part and
           Denies-in-Part. .............................................................................................. 3

III.    ARGUMENT ................................................................................................................ 4

IV.     CONCLUSION ............................................................................................................. 6

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*,
    No. C10–02856 EJD (HRL), 2011 WL 2181692 (N.D. Cal. June 2, 2011) ..............................4

6

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ........................................................................................................1, 4

7

8

*Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc.*,
    320 F. App'x. 675 (9th Cir. 2009) ...............................................................................1, 4

9

**Other Authorities**

10

Fed. R. Civ. P. 15(a) & (b)..................................................................................................5

11

Fed. R. Civ. P. 26(b) ..........................................................................................................5

12

Rule 8 .................................................................................................................................1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MTN FOR RELIEF
CASE NO. 3:20-CV-1294-RS

1

## I.   **INTRODUCTION**

2

Tradeshift seeks relief from the portion of ECF No. 94 (the "Order") denying Tradeshift's

3

letter brief request to compel BuyerQuest to search the records of five employee custodians for

4

documents related to Tradeshift's claim for breach of contract.  The documents undisputedly

5

relate to Tradeshift's contention that BuyerQuest breached the confidentiality provision of the

6

parties' agreements and, thus, Tradeshift's claim for breach of those agreements.  According to

7

the Order, however, the Complaint does not specifically address breach of *the confidentiality*

8

*provision* of the agreements and thus, that issue is not discoverable.

9

The Order is contrary to well-established Supreme Court and Ninth Circuit law that

10

"discovery is *not* limited to issues raised by the pleadings, *for discovery itself is designed to help*

11

*define and clarify the issues.*" *See e.g., Oppenheimer Fund*, 437 U.S. at 351 (emphasis added).  It

12

is also based on an erroneous reading of the Complaint which alleges non-limiting *exemplary*

13

breaches of the agreements.  Moreover, it is contrary to Rule 8, which does not require a party to

14

plead every conceivable theory of a claim.

15

The Order is also extremely prejudicial.  Tradeshift did not know that BuyerQuest

16

breached the confidentiality provision when it filed its Complaint and only recently learned of

17

that specific breach.  Tradeshift immediately supplemented its interrogatory responses to disclose

18

what it had learned.  According to the Order, such theories cannot be a basis for additional

19

discovery.  But such a rule could have grave consequences for Tradeshift (and other parties) since

20

it could deprive them from *ever* pursuing such newly discovered theories.  Accordingly,

21

Tradeshift seeks relief from the portion of the Order denying Tradeshift's request.

22

## II.   **RELEVANT FACTS**

23

### A.   **Tradeshift Files Complaint for Breach of Contract and Tortious Interference.**

24

Tradeshift filed its Complaint for breach of contract/implied covenant of good faith and

25

fair dealing, and tortious interference on February 20, 2020 alleging that Tradeshift and third

26

party Smucker signed a contract (the "SSA") for a software implementation project in 2019 (the

27

"Smucker Project").  ECF No. 1 ("Compl."), ¶ 9.  Around the same time, Tradeshift also entered

28

into a set of agreements with defendant BuyerQuest (the "BuyerQuest Agreements") for

- 1 -

1    BuyerQuest to work as a subcontractor on the project.  *Id.*, ¶¶ 12-15.

2          Tradeshift's claims for interference and breach against BuyerQuest are predicated on

3    BuyerQuest's surreptitious plot to convince Smucker to get rid of Tradeshift and hire BuyerQuest

4    to take over the entire Project.  *Id.*, ¶¶ 26-27.  Because the details of BuyerQuest's covert conduct

5    were not (and could not be) fully known to Tradeshift at the time of filing, Tradeshift did not

6    describe every act of interference or breach in the Complaint.  *Id.*  Instead, Tradeshift provided

7    non-limiting *examples* of contractual provisions and of interfering and breaching conduct.[1]  At the

8    time, Tradeshift was not aware (and had no way to know) that BuyerQuest had misused

9    Tradeshift's confidential specifications and design documents from the Smucker Project to

10   identify and copy functionality into its own products.

11         **B.     Tradeshift Discovers Breach of Confidentiality Provision and Supplements
           Interrogatory Responses.**

12         Late in fact discovery, Tradeshift learned that BuyerQuest misused Tradeshift's

13   confidential information as part of its scheme to take over the Smucker Project.  Specifically,

14   BuyerQuest used Tradeshift's confidential specifications and design documents to identify

15   functionality in Tradeshift's products to add to BuyerQuest's products and replace Tradeshift on

16   the Smucker Project.  *See* Yu Decl., Ex. A at 5-11.[2]  The BuyerQuest Agreements only permitted

17   BuyerQuest to use those documents for purposes of performing its subcontractor obligations and,

18   thus, using Tradeshift's information to "roadmap" and build out new features in BuyerQuest's

19   products constituted a breach of the BuyerQuest Agreements.  *Id.*

20         Tradeshift first became aware of this particular breach when deposing BuyerQuest's Chief

21   Product Officer (Salman Siddiqui) and BuyerQuest's Project Manager (Dan Utyuzh) in April

22   2021.  During those depositions, Tradeshift asked Mr. Siddiqui and Mr. Utyuzh about Slack chat

23   messages that appeared to show Mr. Siddiqui and Mr. Utyuzh circulating Tradeshift's designs and

24   specifications for the Project.  It was not clear from the face of the Slack chat messages that the

25

26   [1] *See e.g.,* ECF No. 1, ¶ 29 ("Among other thing*s*, the BuyerQuest Agreements require . . . ."); *id.*, ¶ 31
     ("BuyerQuest has materially breached the BuyerQuest Agreements on multiple occasions, including . . .
27   by, for example, failing to . . . .").

28   [2] All cites to Exhibits are to Exhibits of the Jason Yu Declaration in Support of Motion for Relief from
     Non-dispositive Order.

                                                               PLAINTIFF'S MTN FOR RELIEF
                                                               CASE NO. 3:20-cv-1294-RS

documents were being circulated for a non-Project purpose, but that became evident during those depositions.  Specifically, both Mr. Siddiqui and Mr. Utyuzh testified that Mr. Siddiqui was not part of the Smucker Project implementation team and was not involved at all in the implementation of the Smucker Project.  Ex. B (Siddiqui Dep. Tr.) at 20:6-22:4; Ex. C (Utyuzh Dep. Tr.) at 19:15-18, 20:18-21, 38:21-39:2.  Rather, Mr. Siddiqui testified that his job was to "roadmap" new features to add to BuyerQuest's products and, at the time he requested these documents, he was developing a plan to add features to BuyerQuest products that would replicate and replace the functionality that Tradeshift's products were providing on the Project.  Ex. B at 17:17-18:11, 19:9-24, 72:22-73:15, 74:16-75:13.[3]  BuyerQuest then presented Siddiqui's plan to Smucker at a January 7, 2020 in-person meeting, which caused Smucker to choose BuyerQuest and terminate Tradeshift ten days later.  *Id.* at 81:16-20.

Once Tradeshift had Mr. Siddiqui's testimony, it promptly served a supplemental interrogatory response disclosing that Siddiqui's use of Tradeshift's design documents separately constituted breach of contract (confidentiality provisions), was additional evidence of wrongful interference, and was grounds for punitive damages.  Ex. A at Second Supp. Response to Interrogatory No. 19.[4]

### C.   Tradeshift Moves to Compel and Magistrate Hixson Grants-in-Part and Denies-in-Part.

Tradeshift propounded Request for Production No. 15 on October 2, 2020, seeking documents relating to or discussing Tradeshift.  Ex. D.  At the time of Mr. Siddiqui's and Mr. Utyuzh's depositions, the parties were conferring about the scope of BuyerQuest's response to that request.  Tradeshift insisted that BuyerQuest's search (1) include the search terms "TS" and "Tradeshift" and (2) include documents sent to or from the product development team (five custodians) that Siddiqui had tasked with the development of the copycat Tradeshift product

---

[3] Mr. Utyuzh testified that even though Mr. Siddiqui was not on the Smucker Project and had no reason to be reviewing Tradeshift's documents, he sent them to Mr. Siddiqui anyway, claiming not to know why Mr. Siddiqui needed them.  *See e.g.*, Ex. C (Utyuzh Dep. Tr.) at 107:7-22, 109:6-110:19, 113:7-17, 116:6-117:7.

[4] BuyerQuest did not serve an interrogatory asking Tradeshift to identify each way in which it alleges that BuyerQuest breached the Agreements, but out of an abundance of caution, Tradeshift served this response.

1    features.  Ex. E at 3.  BuyerQuest, however, refused to do a proper search and Tradeshift

2    submitted a letter brief to the Court.  *Id.* at 2; ECF No. 79.

3          The Magistrate's Order granted Tradeshift's request as to the search terms, but denied

4    Tradeshift's request as to the additional five product development custodians.  ECF No. 94 (the

5    "Order").  The Order does not dispute that the additional custodians' documents are relevant to

6    proving BuyerQuest's breached the confidentiality provision, but finds this "theory" of beach to

7    be irrelevant because the Complaint does not specifically mention the confidentiality provision

8    when it alleges that BuyerQuest breached the BuyerQuest Agreements. *Id.* at 2-5 ("Tradeshift's

9    theory of why the product development custodians are relevant rests on a theory of contract

10   liability that is completely outside the Complaint . . . .").

11   **III.   <u>ARGUMENT</u>**

12         The Order's finding that documents related to the issue of BuyerQuest's breach of the

13   confidentiality provision of the BuyerQuest Agreements are not discoverable because

14   Tradeshift's Complaint does not specifically mention that provision is contrary to Supreme Court

15   and Ninth Circuit precedent.  "Consistent[] with the notice-pleading system established by the

16   Rules, discovery is <u>*not*</u> limited to issues raised by the pleadings, for discovery itself is designed to

17   help define and clarify the issues."  *See e.g., Oppenheimer Fund*, 437 U.S. at 351 (emphasis

18   added); *see also Pasadena Oil & Gas Wyoming LLC*, 320 F. App'x. at 677 (holding the same and

19   reversing district court's denial of motion to compel).[5]  The Order does not address this well-

20   established precedent or cite any authority to support its contrary holding that a Complaint must

21   expressly list a theory of liability in order for to explore it during discovery.

22         Separately, the Order's is based on erroneous findings of fact.  The Order finds, for

23   example, that Tradeshift's Complaint confines it theories to those expressly listed in the

24   complaint.  *See* Order at 3-4.  But, as noted at n.1, the Complaint states that it is listing *exemplary*

25   provisions that support a breach and thus, is expressly *not* limiting.[6]  Similarly, the Order appears

26

27   [5] *See also Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. C10–02856 EJD (HRL), 2011 WL 2181692, at *3 (N.D. Cal. June 2, 2011).

28   [6] Relatedly, the Order faults Tradeshift because "the Complaint is very well written and its dimensions are crystal clear . . . Tradeshift is in a sense the victim of its own clear writing."  Order at 4.  The rule endorsed

- 4 -

1    to be based (at least in part) on a finding that the deadline to <u>move</u> for leave to amend the

2    Complaint had passed in August 2020.  Order at 4.  But that was merely the deadline to amend

3    the Complaint <u>without leave of the Court;</u> there is no deadline to move for leave to amend and, in

4    fact, the Rules allow parties to amend up to the date of (and even after) trial.  *See* ECF No. 36;

5    Fed. R. Civ. P. 15(a) & (b).[7]

6            The Court's statement regarding proportionality is similarly contrary to law because it is

7    inherently based on the same (incorrect) finding of relevance balanced against the burden of

8    providing the information.  Fed. R. Civ. P. 26(b); Order at 4-5.  And, separately, the Court's

9    finding regarding burden is based on a single admittedly erroneous fact, i.e., that searching the

10   additional five product development custodians would *double* the number of custodians

11   BuyerQuest was collecting from.  *Id.* at 4-5.  That finding relies on a representation from

12   BuyerQuest's counsel during oral argument that BuyerQuest had only collected documents from

13   a total of five custodians, meaning Tradeshift's request would double the number.  *Id.*; *see also*

14   Yu Decl., ¶ 7.  But BuyerQuest's counsel admitted shortly after the Order issued that his

15   representation was in error and in fact some fourteen custodians had been searched, making the

16   request for five additional custodians far more proportional and, in any event, this search is

17   limited to very specific search terms ("TS" and "Tradeshift").[8] Ex. F.  Accordingly, this holding

18   too is based on a relevance finding that is contrary to law and a fac that is clearly erroneous.

19          Finally, the Order would be extremely prejudicial to Tradeshift, who may not be able to

20   fully explore or pursue the full extent of BuyerQuest's breach of the confidentiality provision

21   without filing a separate lawsuit or, perhaps, at all.  In contrast, there is no prejudice to

22   BuyerQuest in allowing the discovery.  Information about BuyerQuest's breaching conduct is,

23   and always has been, in BuyerQuest's possession.  And the additional discovery at issue is limited

24   to a handful of custodians, a narrow time frame, and two narrow search terms.

---

25   by the Order would encourage parties to obfuscate their claims by pleading them in broad and vague terms
26   instead of pleading what they know as clearly as they can at the time.

27   [7] Because Tradeshift has alleged a claim for breach of the BuyerQuest Agreements, it does not believe it is
     necessary to amend its Complaint.  To the extent the Court disagrees, however, Tradeshift is more than
     willing to seek leave to amend to include the facts stated in Exhibit A.

28   [8] The Order also states that the request is for six additional custodians, but it is actuallyfive.  Yu Decl., ¶ 7.

PLAINTIFF'S MTN FOR RELIEF
CASE No. 3:20-CV-1294-RS

1

## IV.   __CONCLUSION__

For the foregoing reasons, the Court should grant relief from Tradeshift objects to and

seeks relief from the challenged portion of the magistrate's non-dispositive order pretrial order at

ECF No. 94.


Dated: June 8, 2021                         ORRICK, HERRINGTON & SUTCLIFFE LLP


                                            */s/ Amy K. Van Zant*
                                            AMY K. VAN ZANT

                                            Attorneys for Plaintiff
                                            TRADESHIFT, INC.