AMY K. VAN ZANT (STATE BAR NO. 197426)
avanzant@orrick.com
JASON K. YU (STATE BAR NO. 274215)
jasonyu@orrick.com
TAMMY SU (STATE BAR NO. 329652)
tsu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

MICHAEL C. CHOW (STATE BAR NO. 273912)
mchow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA  92614-8255
Telephone:  +1 949 567 6700
Facsimile:  +1 949 567 6710

OLIVIA CLEMENTS (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd St.
New York, NY 10019
Telephone:  +1 212 506-5000
Facsimile:  +1 212 506-5151

Attorneys for Plaintiff
TRADESHIFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>BUYERQUEST, INC., an Ohio corporation,<br><br>                    Defendant. | Case No. 3:20-cv-1294-RS<br><br>**PLAINTIFF TRADESHIFT, INC.'S OPPOSITION TO DEFENDANT BUYERQUEST, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES**<br><br>Dept:      3 – 17TH FLOOR<br>Judge:     The Hon. Richard Seeborg<br>Date:      September 2, 2021<br>Time:      1:30 p.m. |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ............................................................... 2

    A.    Factual Background ...................................................................................... 2

    B.    Procedural Background ................................................................................. 3

        1.    Relevant Pleadings ........................................................................... 3

        1.    Relevant Discovery ........................................................................... 4

III.   LEGAL STANDARD .............................................................................................. 5

IV.    ARGUMENT ........................................................................................................... 6

    A.    BuyerQuest's Amendments Are Based on Facts That BuyerQuest Knew
        More Than 11 Months Ago (if Not Earlier)................................................... 7

        1.    Amendment to Add Justification and Privilege Affirmative
            Defenses ............................................................................................ 8

        2.    Amendment to Third Party Acts and Omissions ........................... 9

        3.    Amendment to Waiver, Estoppel, Acquiescence ......................... 10

        4.    Amendment to Impossibility, Impracticability, Frustration of
            Purpose, Prevention of Performance ........................................... 10

        5.    Amendment to Failure to Join Indispensable Parties................. 12

        6.    Amendment to Unjust Enrichment and Addition of Set Off
            Affirmative Defense........................................................................ 12

        7.    Amendment to Add Limitation of Liability Affirmative Defense ........... 13

    B.    Rule 16: BuyerQuest Has Not Shown Good Cause to Modify the
        Scheduling Order. ....................................................................................... 13

    C.    Rule 15: BuyerQuest Has Failed to Meet the Standard for Obtaining Leave
        to Amend. .................................................................................................... 15

        1.    The Court Should Deny BuyerQuest's Request for Leave to Add a
            "Justification or Privilege" Defense.............................................. 15

        2.    The Court Should Deny BuyerQuest's Request for Leave to Add a
            "Set Off" Affirmative Defense....................................................... 19

         3.    The Court Should Deny BuyerQuest's Request for Leave to Add a
            "Limitation of Liability" Affirmative Defense. ........................... 20

        4.    The Court Should Deny BuyerQuest's Request for Leave to
            Supplement Its Affirmative Defenses with Any Facts.............................. 20

V.     CONCLUSION ...................................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers,*
5
    781 F.2d 1393 (9th Cir. 1986)............................................................................ 7, 16

6
*AmerisourceBergen Corp. v. Dialysist West, Inc.,*
    465 F.3d 946 (9th Cir. 2006)................................................................................ 6
7

8
*Bernstein v. Virgin Am., Inc.,*
    No. 15-cv-02277-JST, 2018 W 6199679 (N.D. Cal. Nov. 28, 2018) .................................... 22

9
*Foman v. Davis,*
10
    371 U.S. 178 (1962) ......................................................................................... 6

11
*Freed v. Manchester Serv., Inc.,*
    165 Cal. App. 2d 186 (1958) ........................................................................... 16, 18
12

13
*Herron v. State Farm Mut. Ins. Co.,*
    56 Cal. 2d 202 (1961) .................................................................................... 16, 18

14
*Imperial Ice Co. v. Rossier,*
15
    18 Cal. 2d 33 (1941) ...................................................................................... 18

16
*Ingram v. City of San Francisco,*
    No. C12-3038 JSC, 2012 WL 3257805 (N.D. Cal. Aug. 8, 2020) .......................................... 20
17

18
*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992)......................................................................... 6, 13, 14

19
*Los Angeles Cty. Emps. Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc.,*
20
    No. CV 01 -1351DDP, 2002 WL 32919576 (C.D. Cal. June 20, 2002)................................... 19

21
*Owens v. Kaiser Found. Health Plan, Inc.,*
    244 F.3d 708 (9th Cir. 2001)............................................................................ 6
22

23
*Quan v. San Francisco Police Dep't,*
    No. C 10-01835 MEJ, 2011 WL 2470477 (N.D. Cal. June 21, 2011)................................... 14

24
*Richardson v. La Rancherita,*
25
    98 Cal. App. 3d 73 (1979).............................................................................. 17, 18

26
*Sterling Sav. Bank v. Poulsen,*
    No. 12-01454 EDL, 2013 WL 12173596 (N.D. Cal. Apr. 25, 2013) ..................................... 14
27

28

*Sweaney v. Ada Cty., Idaho*,
    119 F.3d 1385 (9th Cir.1997) ................................................................... 6

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) ................................................................... 6

*Tradeshift, Inc. v. Smucker Services Co.*,
    Case No. 1:20-cv-3661 (S.D.N.Y.) ........................................................ 3

*Trans Video Elecs., Ltd. v, Sony Elecs., Inc.*,
    278 F.R.D. 505 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) .............. 6, 21, 22

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 17

Fed. R. Civ. P. 15 ............................................................................ 7, 15

Fed. R. Civ. P. 15(a) ..................................................................... 1, 5, 6, 7

Fed. R. Civ. P. 16 ......................................................................... 1, 7, 15

Fed. R. Civ. P. 16(b) ...................................................................... 6, 7, 13

Fed. R. Civ. P. 26(a) ...................................................................... 21, 22

Fed. R. Civ. P. 30(b)(6) ......................................................................... 5

Fed. R. Civ. P. 37(c)(1) ....................................................................... 21

1

## I.      **INTRODUCTION**

2       More than one year after it filed its original Answer on June 3, 2020, BuyerQuest now

3  seeks leave pursuant to Rule 15(a) to file its First Amended Answer ("Amended Answer") to add

4  affirmative defenses, withdraw certain affirmative defenses, and add factual allegations to the

5  affirmative defenses that remain.  Tradeshift opposes BuyerQuest's motion for leave to add

6  affirmative defenses and add factual allegations to existing affirmative defenses because

7  BuyerQuest's undue delay in seeking leave to amend its Answer fails to meet the good cause

8  requirement of Rule 16 to modify the Court's scheduling order, to the extent modifying the

9  Court's scheduling order is necessary.  BuyerQuest's motion claims that it was diligent in

10  conducting fact discovery and could not have uncovered all the facts underlying its proposed

11  amendments but identifies *zero* facts that it learned after the August 31, 2020 deadline to amend

12  pleadings without leave of the Court to justify its failure to amend its Answer.  Thus, BuyerQuest

13  cannot satisfy the good cause requirement of Rule 16.

14       BuyerQuest's undue delay and bad faith in seeking to amend its Answer and the prejudice

15  resulting from allowance of the amendments are so severe, that BuyerQuest cannot meet the

16  liberal amendment standard of Rule 15(a).  Instead of responding to Tradeshift's discovery

17  requests in good faith to disclose the factual allegations Tradeshift now seeks to add to its existing

18  affirmative defenses (which by its own concession have been known to BuyerQuest since at least

19  August 2020, if not earlier), BuyerQuest chose to wait until after the close of fact discovery to

20  amend its Answer to prevent Tradeshift from fully exploring BuyerQuest's allegations during

21  discovery.  Such bad faith and gamesmanship will significantly prejudice Tradeshift and are

22  precisely what Rule 15(a) is designed to avoid.  Additionally, the affirmative defenses and

23  supporting factual allegations BuyerQuest now seeks to add are futile because even taking the

24  additional factual allegations as true, they would not survive a Rule 12(b)(6) motion to dismiss.

25       Accordingly, Tradeshift requests that the Court deny BuyerQuest's Motion for Leave to

26  File its First Amended Answer and Affirmative Defenses.

27

28

## II.     STATEMENT OF RELEVANT FACTS

### A.     Factual Background

Tradeshift filed its Complaint against BuyerQuest for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract on February 20, 2020.  ECF 1 ("Compl.").  The Complaint alleged that Tradeshift and third party Smucker Services Company ("Smucker") signed a contract (the "SSA") in June 2019 for a license to Tradeshift's software solution and platform, a license to third party BuyerQuest's software solution, and for certain managed services to implement the joint Tradeshift/BuyerQuest software solution (the "Smucker Project").  *Id.*, ¶ 9.

Around the same time, Tradeshift also entered into a set of agreements (the Tradeshift Partner Program Agreement (ECF 113.03), the Cross Selling Attachment (ECF 113.04), and the Reseller Order Form (ECF 113.05)) (collectively, the "BuyerQuest Agreements") with defendant BuyerQuest.  The BuyerQuest Agreements provided for Tradeshift to act as BuyerQuest's reseller on the Smucker project, established a framework for future joint endeavors between Tradeshift and BuyerQuest, and specifically established a payment and work schedule for BuyerQuest to act as Tradeshift's subcontractor in assisting Tradeshift in implementing the joint Tradeshift/BuyerQuest solution for the Smucker Project.  *Id.*, ¶¶ 12-15.

Ultimately, BuyerQuest interfered with the SSA between Tradeshift and Smucker and breached its own obligations to Tradeshift under the BuyerQuest Agreements in the process.  *Id.*, ¶¶ 26-27, 34-44.  Among other things, BuyerQuest's CEO engaged in a campaign to mislead Smucker to believe that Tradeshift could not perform technically as required under the SSA and that Tradeshift was on the brink of financial ruin.  *See e.g.*, ECF 107.05 (Tradeshift's Objs. & Resps. to BuyerQuest's First Set of Interrogs. (Nos. 1-19)), pp. 17-26.  At the direction of BuyerQuest's CEO, BuyerQuest's Chief Product Officer also used Tradeshift's confidential specifications and designs to tailor BuyerQuest's own product "roadmap" to replicate the features of Tradeshift's Pay solution in BuyerQuest's own anemic procurement software solution so that it could convince Smucker that BuyerQuest had the capability to take over responsibility for the

entire Smucker Project.  ECF 107.04 (Tradeshift's Suppl. Resp. to BuyerQuest's First Set of Interrogs. (No. 19)).  BuyerQuest's interference campaign culminated in a January 7, 2020 in-person meeting at BuyerQuest headquarters between BuyerQuest's executive team and key Smucker Project stakeholders at Smucker.  Less than a week later, Smucker decided to terminate Tradeshift in favor of BuyerQuest, sending a January 16 termination notice to Tradeshift (Compl., ¶ 17).  Because Smucker did not have time to comply with the termination provision of the SSA (which required notice of any material breach and a 30-day period for Tradeshift to cure) and still keep the Smucker Project on a desired "go-live" track, Smucker falsely claimed that Tradeshift had made misrepresentations to induce Smucker to sign the SSA and so purported to "void" the contract for fraud.  Tradeshift subsequently sued BuyerQuest in the Northern District of California and Smucker in the Southern District of New York (as required by the respective agreements).

### B.   Procedural Background

#### 1.   Relevant Pleadings

On May 11, 2020, Tradeshift filed a complaint against Smucker for breach of the SSA in the Southern District of New York.  *Tradeshift, Inc. v. Smucker Services Co.,* Case No. 1:20-cv-3661 (S.D.N.Y.), ECF 1.  On June 26, 2020, Smucker filed an answer and counterclaims, alleging that Tradeshift made material misrepresentations regarding its capabilities.  *Tradeshift, Inc. v. Smucker Services Co.,* Case No. 1:20-cv-3661 (S.D.N.Y.), ECF 16 (hereinafter "Smucker Answer"), pp. 9-38.  BuyerQuest was well-aware of the allegations asserted by both parties in that action, both because the pleadings were public, and because at least as early as May 26, 2020, BuyerQuest and Smucker were negotiating a joint defense agreement.  Ex. A[1] (BuyerQuest's 2/13/2021 Privilege Log), Entry Nos. 15, 16.

On June 2, 2020, the Court issued its Initial Case Management Scheduling Order, setting August 31, 2020 as the deadline to amend pleadings without first seeking leave from the Court.

---

[1] Unless otherwise specified, all exhibit cites are to exhibits attached to the Declaration of Jason K. Yu in Support of Tradeshift's Opposition to BuyerQuest's Motion for Leave to File First Amended Answer and Affirmative Defenses ("Yu Decl.").

ECF 36.  BuyerQuest filed its original Answer and Affirmative Defenses ("Answer") some three

months ahead of that deadline on June 3, 2020.  In its Answer, BuyerQuest asserted 21

affirmative defenses, though it did not allege **any** facts to support or explain them.  *Id.*  Among

these boilerplate and conclusory defenses were the following defenses that BuyerQuest seeks the

Court's leave to amend now: Waiver, Estoppel, Acquiescence (Answer, p. 6), Unjust Enrichment

(*id.*, p. 7), Third Party Acts or Omissions (*id.*, p. 8), Impossibility, Impracticability, Frustration of

Purpose, Prevention of Performance (*id.*, p. 8), and Failure to Join Indispensable Parties (*id.*, p.

9).

### 1.    <u>Relevant Discovery</u>

At the outset of discovery in this matter, on August 5, 2020, Tradeshift produced copies

of: (1) the SSA between Tradeshift and Smucker (Yu Decl., ¶ 2); and (2) Smucker's termination

letter in which Smucker alleged that Tradeshift had made material misrepresentation about the

Smucker Project (*id.*, ¶ 3).

Additionally, because BuyerQuest had pled no allegations of fact to support or explain

any of its 21 affirmative defenses, Tradeshift propounded its Interrogatory No. 17, which asked

BuyerQuest to describe the legal and factual bases for each of the affirmative defenses that it

intended to rely on at trial.  Ex. B (Tradeshift's Second Set of Interrogs. to BuyerQuest (Nos. 7-

18)).  BuyerQuest initially refused to respond to Interrogatory No. 17, relying on boilerplate

objections.  Ex. C (BuyerQuest's Resp. to Tradeshift's Second Set of Interrogs. (Nos. 7-18)), pp.

10-11.  After conferral, BuyerQuest agreed to supplement its response to Interrogatory No. 17 by

March 26, 2021.  Ex. D (email correspondence re BuyerQuest's responses to Tradeshift's Second

Set of Interrogs.), pp. 1 (BuyerQuest offering to supplement its responses by March 26, 2021), 4

(Tradeshift agreeing to BuyerQuest's offer).  On March 26, 2021, BuyerQuest supplemented a

number of its responses to other interrogatories in Tradeshift's Second Set, but it did not, in fact,

provide any further response to Interrogatory No. 17.  Having agreed and had the opportunity to

provide a substantive response if it had one, Tradeshift understood BuyerQuest's lack of response

to mean that it did not intend to rely on any of the boilerplate defenses pled in its Answer.  Even

though Tradeshift had attempted to question BuyerQuest's FRCP 30(b)(6) witness, CEO Jack Mulloy, on April 20, 2021 on the factual bases of its affirmative defenses,[2] he could not identify specific facts in support of its defenses either.  Ex. F (4/20/2021 Mulloy Dep. Tr.) at 276:25-278:9, 296:23-298:1.  With Mr. Mulloy unable to provide facts, BuyerQuest's counsel disrupted the line of questioning by declaring "discovery is ongoing in this case, and we will supplement our pleadings as necessary when the time comes.  It's not within the province of this witness to testify about…."  *Id.* at 298:2-6.  Yet, BuyerQuest did not supplement its response to Interrogatory No. 17 prior to the close of written fact discovery on April 2, 2021, prior to the close of non-expert depositions on April 30, 2021—or at any time since—and did not move for leave to amend its affirmative defenses as pled in its Answer until two months after that, even though it relied on facts that have been in its possession since the outset of discovery (and in some cases, even earlier).

Without identifying a single new fact that BuyerQuest has learned since the case was filed, since the deadline to amend pleadings without leave of court, since its responses to Tradeshift's interrogatories, since the deposition of its corporate witness on this topic, or since the close of fact discovery, BuyerQuest now moves for leave to amend its Answer to: (1) add the affirmative defenses of Justification or Privilege, Set Off, and Limitation of Liability, (2) amend its affirmative defenses of Waiver, Estoppel, Acquiescence, Third Party Acts or Omissions, Duplicative Claims, and Failure to Join Indispensable Parties to add allegations of facts known to BuyerQuest at the time it filed its Answer or shortly thereafter, and (3) withdraw other affirmative defenses for which BuyerQuest concedes it does not have evidentiary support. Tradeshift opposes (1)-(2) and believes (3) is unnecessary since BuyerQuest can simply not pursue those defenses at trial.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that a party may amend any pleading by

---

[2] Mr. Mulloy was designated as BuyerQuest's 30(b)(6) corporate designee for Topic 14: "The factual bases for the affirmative defenses in BuyerQuest's answer in this action."  Ex. E (April 1, 2021 Anthony Phillips Email).

1   moving for leave of court and instructs that leave to amend "shall be freely given."  *Foman v.*

2   *Davis*, 371 U.S. 178, 182 (1962).  In the Ninth Circuit this policy is "applied with extreme

3   liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation

4   omitted) (granting motion for leave to amend answer where defendant moved to amend

5   immediately upon discovering the availability of the res judicata affirmative defense).

6       Courts consider five factors in determining whether leave to amend is warranted: (i) undue

7   delay; (ii) prejudice to the opposing party; (iii) futility of the amendment; (iv) bad faith; and (v)

8   whether the moving party has previously amended its pleadings.  *Foman*, 371 U.S. at 182.  In

9   determining whether there was undue delay, courts "inquire 'whether the moving party knew or

10   should have known the facts and theories raised by the amendment in the original pleading.'"

11   *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (citation

12   omitted).  Courts have found that delays of as short as eight months between obtaining a relevant

13   fact and seeking leave to amend to be unreasonable.  *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799

14   (9th Cir. 1991).

15       While delay alone is normally insufficient to deny a motion to amend, a contemporaneous

16   finding of prejudice, bad faith, or futility can also justify denying a motion for leave to amend.

17   *Trans Video Elecs., Ltd. v, Sony Elecs., Inc.*, 278 F.R.D. 505, 507-508 (N.D. Cal. 2011), *aff'd*,

18   475 F. App'x 334 (Fed. Cir. 2012) (citing *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999)).

19   "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to

20   the pleadings that would constitute a valid and sufficient claim or defense."  *Sweaney v. Ada Cty.,*

21   *Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997) (citation omitted).

22       If the Court issued a scheduling order setting a deadline for amending pleadings, the party

23   seeking leave to amend must first move to modify the scheduling order pursuant to Rule 16(b),

24   upon a showing of good cause, *before* seeking leave to demonstrate that an amendment is proper

25   under Rule 15(a).  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir. 1992).

26   **IV.   <u>ARGUMENT</u>**

27       BuyerQuest's Motion for Leave should be denied because it has failed to show good cause

28

under Rule 16(b) to modify the Court's scheduling order (to the extent necessary),[3] and has not

shown that its proposed amendments justify leave to amend under Rule 15(a).[4]

### A. BuyerQuest's Amendments Are Based on Facts That BuyerQuest Knew More Than 11 Months Ago (if Not Earlier).

The dates on which BuyerQuest discovered the factual bases for the amendments it seeks

to add are important to the analyses under both Rule 15 (undue delay, bad faith, prejudice) and

Rule 16 (good cause and diligence) considerations.  Even under the liberal standards of Rule 15,

"late amendments to assert new theories are not reviewed favorably when the facts and the theory

have been known to the party seeking amendment since the inception of the cause of action."

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Here, the facts that BuyerQuest seeks to add to its affirmative defenses were known to

BuyerQuest *before the case was even filed* or, at best, in some cases, very early on in discovery.

Notably, as Tradeshift's subcontractor, BuyerQuest was intimately involved in the

implementation of the Smucker Project.  Indeed, because BuyerQuest was cajoling Smucker to

jettison Tradeshift from the Project all along—and because Smucker and BuyerQuest have since

entered into a joint defense agreement—BuyerQuest has undoubtedly had more knowledge about

the relevant facts of its defenses than does Tradeshift.  And, even for facts that were arguably not

in BuyerQuest's possession as of the date of the Answer, they were at the latest known to

BuyerQuest (based on documents Tradeshift produced) at the outset of discovery in the case.  As

explained below, BuyerQuest's motion does not provide any evidence or argument to suggest that

it was not aware of these facts prior to any of the numerous relevant dates here, *i.e.*, the date

BuyerQuest filed its original Answer, the deadline for BuyerQuest to file an Amended Answer

without leave, or the date that BuyerQuest served its supplemental responses to Tradeshift's

---

[3] Tradeshift does not believe that it is necessary to move to amend the Court's scheduling order because it did not contain a deadline for amending pleadings **with** leave of Court.  It only contained a deadline for amending pleadings **without** leave of the Court.  However, to the extent BuyerQuest is correct that this is a requirement as it has argued in opposition to Tradeshift's pending Motion for Leave (ECF 113, pp. 2-4), BuyerQuest certainly has not shown good cause here.

[4] Tradeshift does not oppose BuyerQuest's amendments to withdraw existing affirmative defenses.

1   interrogatories.

2   **1.    Amendment to Add Justification and Privilege Affirmative Defenses**

3       BuyerQuest's original Answer did not include a Justification or Privilege Defense at all.

4   BuyerQuest's amendment to add justification and privilege as affirmative defenses relies on the

5   following boilerplate allegations: (1) BuyerQuest's actions with respect to all claims alleged in

6   the Complaint were undertaken in good faith and for good cause, with the absence of any

7   malicious intent or impropriety, and were lawful, proper, and justified; (2) any agreements and

8   communications between representatives of BuyerQuest and Smucker were truthful, made in a

9   good faith-effort to complete the project in the timeframe established in the project agreements,

10  and were an exercise of BuyerQuest's legal rights and for a legitimate business purpose; (3)

11  BuyerQuest's actions were taken, in whole or in part, to protect its economic interest in the

12  Smucker Services Agreement, including its interest in payments owed to BuyerQuest that

13  Tradeshift was required to pass-through to BuyerQuest once received from Smucker, but

14  allegedly did not; (4) BuyerQuest faced the risk of a $1.1 million penalty specified in the

15  Smucker Services Agreement; and (5) at all times throughout the course of the relevant

16  agreements, BuyerQuest communicated only truthful information to Smucker about Tradeshift,

17  including answering Smucker's questions about whether Tradeshift had timely paid BuyerQuest

18  (it had not) and forwarding publicly-available information about the financial condition of

19  Tradeshift.  Amended Answer, pp. 10-11.

20      BuyerQuest was clearly aware of these putative "facts"—which exclusively involve its

21  own actions and motivations—before the case was filed.  Notably, Tradeshift was not involved in

22  BuyerQuest's clandestine agreements and communications with Smucker discussed in the

23  proposed allegations above, and therefore, BuyerQuest could not have learned them from

24  Tradeshift during discovery.  But, as a party to those agreements and communications,

25  BuyerQuest knew well before the lawsuit was filed all of the "facts" on which it now intends to

26  rely to support the addition of the Justification or Privilege affirmative defense  In fact,

27  BuyerQuest's counsel admitted that its failure to add justification and privilege as affirmative

28

1   defenses was likely an "oversight" by prior counsel, proving that BuyerQuest knew all the facts

2   necessary to plead them in their original Answer, but simply failed to do so (though he fails to

3   explain why his own firm did not immediately move to add the defenses when it came on board

4   nearly a year ago).  Ex. G (6/25/2021 Email from Anthony Phillips).

**2.**       **Amendment to Third Party Acts and Omissions**

6          BuyerQuest's original Answer pled the defense of Third Party Acts or Omissions but

7   included only one conclusory statement in support: "Plaintiff's claims are barred and/or limited

8   because Defendant is not liable for the acts, omissions, wrongs, or negligence of any other entity

9   or individual," and failed to identify any specific act or omission.  Answer, p. 8.  BuyerQuest's

10  amendment to this defense adds the following factual allegations: (1) Tradeshift's

11  misrepresentations to Smucker and BuyerQuest regarding the function and capabilities of its

12  product, including those described in the January 16, 2020 termination letter; (2) Tradeshift's

13  failure to perform under the Smucker Services Agreement; and/or Smucker's termination and/or

14  recission of the Smucker Services Agreements.  Amended Answer, pp. 7-8.

15         These alleged "facts" were well known to BuyerQuest very early on in the case.

16  BuyerQuest was aware of the existence of the January 16, 2020 termination letter and Smucker's

17  allegations against Tradeshift from Tradeshift's Complaint (and, as discussed below, likely from

18  Smucker itself).  Compl., ¶¶ 17-19.  Were there any doubt, Tradeshift also produced the January

19  16, 2020 termination letter that BuyerQuest references in its amendment on August 5, 2020.  And,

20  even before that, correspondence between BuyerQuest's CEO, Jack Mulloy, and Smucker's

21  Project Manager, Jason Barr, show them scheduling joint calls with their lawyers as early as

22  February 2020, *i.e.,* just after Tradeshift filed suit and months before BuyerQuest filed its

23  Answer.  Exs. H-I (February 2020 text messages between Mr. Barr and Mr. Mulloy discussing

24  how Smucker's outside counsel will advise on whether Smucker can provide the termination

25  letter to BuyerQuest); Ex. J (April 2020 text messages between Mr. Barr and Mr. Mulloy

26  discussing a call between BuyerQuest and Smucker counsel).  And we know that Smucker and

27  BuyerQuest ultimately signed a joint defense agreement by June 22, 2020.  Ex. A (BuyerQuest's

28

1    2/13/2021 Privilege Log), Entry No. 16.  Therefore, it is likely BuyerQuest learned of the

2    allegations and contentions from Smucker or from Smucker's June 26, 2020 publicly filed

3    Answer in SDNY, which contained the same allegations of misrepresentations and failure to

4    perform that BuyerQuest now wants to add more than a year later.  Smucker Answer, ¶¶ 22-58.

5              **3.     Amendment to Waiver, Estoppel, Acquiescence**

6              Buyer Quest's original Answer pled the defense of Waiver, Estoppel, Acquiescence but

7    included only one conclusory statement in support: "Plaintiff's claims are barred and/or limited

8    by the equitable doctrines of waiver, estoppel, and acquiescence."  Answer, p. 6.  BuyerQuest's

9    proposed amendment to this defense adds the following factual allegations: (1) Tradeshift was

10   aware of the actions and communications by BuyerQuest that now form the basis of their claim

11   for breach of contract prior to the termination of the relationship in January 2020 and did not raise

12   any concerns or objections to BuyerQuest at any time during the course of the BuyerQuest-

13   Tradeshift Agreement; (2) BuyerQuest therefore was unaware that Tradeshift objected to any of

14   these actions or communications, and detrimentally relied on Plaintiff's tacit approval and

15   permissive response; (3) Plaintiff provided BuyerQuest with "notice of termination of the SOW

16   per our agreement" on January 23, 2020; and (4) BuyerQuest justifiably relied on this

17   representation to consider the BuyerQuest-Tradeshift Agreement terminated.  Amended Answer,

18   p. 8.

19             Though it defies logic to suggest that BuyerQuest and Smucker involved Tradeshift in

20   communications about, *e.g.*, concocting a rationale to terminate Tradeshift so Smucker could give

21   the entire project to BuyerQuest, had it actually involved Tradeshift in such communications,

22   BuyerQuest would have been in possession of the allegations it now wants to plead as soon as

23   they occurred during the course of the project and thus prior to the filing of this case.  BuyerQuest

24   has no explanation for its delay in pleading these allegations.

25             **4.     Amendment to Impossibility, Impracticability, Frustration of Purpose, Prevention of Performance**

26

27             Buyer Quest's original Answer pled the defense of Impossibility, Impracticability,

28   Frustration of Purpose, Prevention of Performance but included only one conclusory statement in

support: "Plaintiff's claims are barred and/or limited to the extent that performance was impossible, impracticable, or due to frustration of purpose or prevention of performance." Answer, p. 8. BuyerQuest's proposed amendment to this defense adds the following factual allegations: (1) The BuyerQuest-Tradeshift Agreement was premised on the parties working together to complete the Smucker project; (2) The BuyerQuest-Tradeshift Agreement and the Smucker Services Agreement established a master contractor-subcontractor relationship between Tradeshift and BuyerQuest, respectively; (3) Tradeshift's failure to perform under the Smucker Services Agreement, including their failure to deliver promised software functionality; failure to meet project deadlines; and failure to implement software that could pass Smucker's testing requirements, in-turn prevented BuyerQuest's performance under the BuyerQuest-Tradeshift Agreement and/or rendered its performance impossible or impracticable and/or frustrated the purpose of the BuyerQuest-Tradeshift Agreement, which was to complete the Smucker project; (4) when Smucker terminated that project on January 16, 2020, any obligations of performance BuyerQuest owed to Tradeshift became effectively impossible; and (5) as described in Smucker's termination letter to Tradeshift, Plaintiff's pre-contracting misrepresentations to Smucker rendered the Smucker Services Agreement void *ab initio* and the performance of the BuyerQuest-Tradeshift Agreement was rendered impossible as a matter of law. Amended Answer, pp. 9-10.

BuyerQuest was aware of the first two facts when it entered into the Buyer-Quest-Tradeshift Agreements, nearly two years before the filing of this lawsuit. And, because BuyerQuest was involved during the implementation and testing of the software functionality promised under the SSA, BuyerQuest would have had knowledge of any alleged Tradeshift "failures," including any missed project deadlines or failures to pass Smucker's testing requirements as they occurred, and that is before Smucker ever terminated its Tradeshift contract and well prior to the filing of this lawsuit. Moreover, BuyerQuest admits that it discussed Tradeshift's alleged "failures" at least during its secret meetings with Smucker in late 2019 and early 2020, *i.e.*, before the case was even filed. *See e.g.*, Ex. K (3/26/2021 BuyerQuest's Second Suppl. Resps. to Tradeshift's First Set of Interrogs. (Nos. 4-5), pp. 8-9) (explaining that

BuyerQuest met with Smucker on December 19-20, 2019 and January 7, 2021 to discuss "Tradeshift's inability to satisfy the Smucker Agreement," "gaps in functionality . . . which Tradeshift had failed to address," and "deficiencies in Tradeshift's product.")   And, as discussed above, BuyerQuest was aware of the termination of the project and Smucker's allegations of pre-contracting misrepresentations by Tradeshift, no later than August 5, 2020 (but likely much earlier due to the joint defense agreement between BuyerQuest and Smucker).

### 5.      Amendment to Failure to Join Indispensable Parties

Buyer Quest's original Answer pled the defense of Failure to Join Indispensable Parties but included only one conclusory statement in support: "Plaintiff's claims are barred and/or limited based on Plaintiff's failure to join one or more indispensable parties who are subject to service of process, whose joinder will not deprive the court of subject-matter jurisdiction, and who's absence will deprive the Court of the ability to accord complete relief among the existing parties."  Answer, p. 9.  BuyerQuest's amendment to this defense adds the following factual allegation: Plaintiff's claims arise entirely out of Smucker's termination of the Smucker Services Agreement, who alleged that it was induced by Tradeshift's fraud.  Amended Answer, p. 12.  Presumably, then, BuyerQuest believes that Smucker is an indispensable party.

BuyerQuest was aware of Tradeshift's claims as of at least February 26, 2020, when BuyerQuest was served with the Complaint, and, as discussed above, was aware of Smucker's allegations of misrepresentation and fraud no later than August 5, 2020 (but likely much earlier due to the joint defense agreement between BuyerQuest and Smucker).

### 6.      Amendment to Unjust Enrichment and Addition of Set Off Affirmative Defense

Buyer Quest's original Answer pled the defense of Unjust Enrichment but included only one conclusory statement in support: "Plaintiff's claims are barred and/or limited because any recovery to Plaintiff would unjustly enrich Plaintiff."  Answer, p. 7.  BuyerQuest's proposed amendment to this defense adds the affirmative defense of "Set Off" add the following factual allegations: (1) Plaintiff's Complaint seeks damages for not less than $4,323,070; (2) while Plaintiff does not explain how this figure was calculated, it is greater than the full value of either

the BuyerQuest-Tradeshift Agreement or the Smucker Services Agreement; and (3) this figure also does not contemplate the monies already received under the BuyerQuest-Tradeshift Agreement or Smucker Services Agreement, or the damages sought by Tradeshift in the ongoing, related action brought against Smucker in the Southern District of New York.  Amended Answer, p. 9.

BuyerQuest was aware of the damages Tradeshift sought when BuyerQuest was served with the Complaint on February 26, 2020.  ECF 9.  Additionally, BuyerQuest knew both the full value of the BuyerQuest-Tradeshift Agreement and the amount of any monies Tradeshift had received under the Smucker Services Agreement before the litigation was filed and it likewise knew the full value of the SSA at least as of August 5, 2020, when Tradeshift produced the SSA to BuyerQuest (and likely earlier, due to its joint defense agreement with Smucker).

### 7.  Amendment to Add Limitation of Liability Affirmative Defense

BuyerQuest's proposed amendment to add a Limitation of Liability affirmative defense relies on the following proposed factual allegation: any potential liability is expressly limited under the BuyerQuest-Tradeshift Agreement and incorporated in related agreements.  Amended Answer, p. 12.  But BuyerQuest had knowledge of this alleged express limitation in the BuyerQuest-Tradeshift Agreement when it was executed in June 2019.  Complaint, ¶¶ 14-15.

### B.  Rule 16: BuyerQuest Has Not Shown Good Cause to Modify the Scheduling Order.

The Court need not consider issues beyond BuyerQuest's total failure to show that it acted in a timely manner to seek the present amendments.  However, just as BuyerQuest failed at explaining even at a cursory level why its amendments were timely, it likewise fails to show good cause.  "Rule 16(b)'s good cause standard primarily considers <u>the diligence of the party seeking the amendment</u>.  The district court may modify the pretrial schedule if it cannot reasonably be met <u>despite the diligence of the party seeking the extension</u>."  *Johnson*, 975 F.2d at 609 (internal quotations omitted and emphasis added).

BuyerQuest has not been diligent, and it provides no evidence to the contrary.  *See* Mot. at 5-6.  Instead, BuyerQuest argues only that its current counsel were not substituted into the case

PLAINTIFF'S OPP. TO MOTION FOR LEAVE TO
FILE FIRST AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
CASE NO. 3:20-CV-1294-RS

1   until September 14, 2020 and, "[t]herefore BuyerQuest could not meet the deadline set in the

2   Initial Case Management Order [August 31], despite its diligence . . . ."  Mot. at 6.  But new

3   counsel is not a sufficient reason to excuse delay.  *Sterling Sav. Bank v. Poulsen*, No. 12-01454

4   EDL, 2013 WL 12173596, at *3 (N.D. Cal. Apr. 25, 2013) (finding that "new counsel's different

5   strategy" was insufficient to excuse delay); *Quan v. San Francisco Police Dep't*, No. C 10-01835

6   MEJ, 2011 WL 2470477, at *5 (N.D. Cal. June 21, 2011) (finding that change in counsel did not

7   excuse delay of over one year in seeking to amend complaint even where "current counsel may

8   disagree with the pleading his predecessor drafted").  BuyerQuest offers no reason why its prior

9   counsel could not have reasonably met the August 31 deadline to amend its Answer.  BuyerQuest

10  implies that its prior counsel was somehow careless in failing to assert certain factual allegations

11  or affirmative defenses prior to the August 31 deadline, but never actually makes that argument

12  and, in any event, that excuse  "is not compatible with a finding of diligence and offers no reason

13  for a grant of relief."  *Johnson*, 975 F.2d at 609.

14          More confoundingly, BuyerQuest provides no substantive explanation as to why its

15  current counsel did not diligently move for leave to amend BuyerQuest's answer in the ten

16  months since it became counsel of record.  Instead, BuyerQuest simply concludes—without

17  support—that BuyerQuest acted diligently during this time.  *See, e.g.*, Mot. at 6-7 ("BuyerQuest

18  did not have the factual or evidentiary basis to determine which affirmative defenses may be

19  applicable against the claims asserted."; "BuyerQuest could not have uncovered the full set of

20  facts underlying its proposed amendments to its affirmative defenses…until it had the opportunity

21  to conduct discovery."; "BuyerQuest has diligently re-evaluated and amended its affirmative

22  defenses.").  Simply repeating that BuyerQuest acted with diligence, however, does not make it

23  so.  Indeed, BuyerQuest fails to identify so much as *a single* fact that it allegedly discovered

24  during discovery that necessitated its need to amend its answer now.  In fact, as discussed above,

25  the additional factual allegations BuyerQuest seeks to include in its Amended Answer were

26  known to BuyerQuest prior to the August 31 deadline to amend without leave of court (and were

27  likely known to BuyerQuest prior to filing its Answer on June 3).

28

Accordingly, to the extent it is required, BuyerQuest has failed to demonstrate the diligence required for a showing of "good cause" under Rule 16.

### C.   Rule 15: BuyerQuest Has Failed to Meet the Standard for Obtaining Leave to Amend.

The Court should also decline to grant BuyerQuest leave to amend under Rule 15. Though BuyerQuest nowhere acknowledges this fact in its Motion, Tradeshift propounded an interrogatory (No. 17) on BuyerQuest on January 18, 2021, asking it to identify each affirmative defense it intended to rely on and any facts in support thereof.  Ex. B, p. 8.  BuyerQuest did not bother to substantively respond to that interrogatory.  Ex. C, pp. 10-11.  BuyerQuest had every opportunity to disclose those facts, *e.g.*, (1) in its June 3, 2020 Answer, (2) in an Amended Answer that could have been filed without leave until August 31, 2020, (3) in BuyerQuest's February 17, 2021 Responses to Tradeshift's Interrogatory No. 17, (4) in its March 26, 2021 Supplemental Responses, or (5) in any other discovery responses prior to the April 3, 2021 close of written discovery and April 30, 2021 close of fact depositions.  BuyerQuest did not do so and, instead, delayed in order to keep Tradeshift in the dark until depositions and discovery were complete.[5]  Moreover, as explained herein, allowing BuyerQuest to amend at this late stage would prejudice Tradeshift because there is discovery it would have sought had BuyerQuest timely disclosed its allegations, but now fact discovery is closed.

### 1.   The Court Should Deny BuyerQuest's Request for Leave to Add a "Justification or Privilege" Defense.

BuyerQuest's proposed Amended Answer seeks to add an affirmative defense of "Justification or Privilege."  Amended Answer, pp. 10-11.  The circumstances do not warrant leave to add this defense at this point in the case.

### a.   BuyerQuest's Undue Delay in Seeking to Add the Defenses of Justification and Privilege Prejudices Tradeshift

The factors of undue delay, bad faith, and prejudice weigh heavily against granting leave

---

[5] In contrast, when Tradeshift discovered the facts supporting its request for leave to amend, it immediately notified BuyerQuest in conferral communications and supplemental interrogatory responses so that BuyerQuest could ask about the issues during discovery (which it did).  ECF 107 (Tradeshift's Contingent Mot. for Leave to File FAC), pp. 4-5, 8.

1   to amend here.  As discussed above (Section IV.A.1.), all the factual allegations BuyerQuest

2   makes to support its defenses of justification and privilege were known to BuyerQuest prior to

3   Tradeshift filing this lawsuit.  That BuyerQuest knew of these facts prior to filing its original

4   Answer over a year ago but sat on its hands until after discovery was closed to assert a new

5   affirmative defense should not be viewed favorably by this Court.  *Acri*, 781 F.2d at 1398.

6   BuyerQuest provides no explanation in its motion for why it failed to allege these affirmative

7   defenses in its original Answer and identifies ***zero facts*** in its motion for leave that it learned

8   during discovery to justify or explain its over one-year delay in seeking to amend its Answer to

9   add these affirmative defenses.

10          During conferral with Tradeshift, BuyerQuest's current counsel tried to blame its failure

11   to plead these defenses on an oversight by prior counsel.  Ex. G.  But BuyerQuest does not make

12   that argument here and, in any event, that would not explain why BuyerQuest failed to otherwise

13   identify the defenses and the facts supporting them during discovery or why BuyerQuest's current

14   counsel waited 10 months after it took over representation of BuyerQuest and two months after

15   the close of fact discovery to move for leave to amend.  BuyerQuest failed to act with diligence in

16   seeking to disclose this defense, and it provides no evidence or argument to the contrary.  It just

17   sat on its hands from the outset through discovery to assert this defense.  BuyerQuest's decision

18   to wait until *after* the close of fact discovery to seek to add these defenses that were known to it

19   when it filed its original Answer is per se bad faith gamesmanship.

20          BuyerQuest's delay of its disclosure of its Justification or Privilege defense until after the

21   close of discovery significantly prejudices Tradeshift.  Had Tradeshift known about the defense, it

22   would have taken additional discovery and potentially retained an expert on relevant issues.  For

23   example, the defense of justification requires "a balancing of the importance, social and private,

24   of the objective advanced by the interference against the importance of the interest interfered

25   with, considering all circumstances including the nature of the actor's conduct and the

26   relationship between the parties."  *Herron v. State Farm Mut. Ins. Co.*, 56 Cal. 2d 202, 206

27   (1961); *see also Freed v. Manchester Serv., Inc.*, 165 Cal. App. 2d 186, 190 (1958).  Had

28

1    BuyerQuest disclosed its justification defense in a timely manner, Tradeshift would have

2    investigated the societal interest BuyerQuest was supposedly seeking to protect with its actions

3    and could have presented additional expert testimony on why protection of that societal interest

4    did not outweigh Tradeshift's interest in the contract.

5           As another example, the defense of privilege requires a showing that the actions taken to

6    protect a legally protected interest were "appropriate means."  *Richardson v. La Rancherita*, 98

7    Cal. App. 3d 73, 81 (1979).  If BuyerQuest had disclosed its privilege defense earlier, Tradeshift

8    could have taken additional discovery to determine whether BuyerQuest believed its actions were

9    typical in the software as a service ("SaaS") industry, whether there were standards in the SaaS

10   industry that would govern BuyerQuest's actions, and, if so, Tradeshift likely would have sought

11   expert testimony as to whether BuyerQuest's actions lived up to those SaaS industry standards.

12   Tradeshift also would have asked BuyerQuest's witness more focused questions about

13   BuyerQuest's "societal and private" interests advanced by the interference and why those

14   witnesses believe that the means of interference justified those interests.[6]  Simply put, Tradeshift

15   has been prejudiced by BuyerQuest's failure to disclose this defense in its Answer, in an earlier

16   Amended Answer, or in any response to discovery requests.  And, given the nature of the defense

17   and the facts supporting it, that prejudice appears intentional.  Accordingly, the factors of undue

18   delay, bad faith, and prejudice weigh against granting BuyerQuest leave here.

19                    **b.      BuyerQuest's Addition of the Defense of Justification or**
                              **Privilege Is Futile Because It Is Legally Insufficient**
20

21          BuyerQuest's amendment to add the affirmative defenses of justification or privilege

22   should also be denied as futile.  As BuyerQuest admits in its opposition to Tradeshift's motion for

23   leave to amend, the proper test to be applied when determining the legal sufficiency of a proposed

24   amendment is the same applied to a pleading challenged under rule 12(b)(6).  *See* ECF 113 at 9.

25          A justification defense requires "a balancing of the importance, social and private, of the

26   ───────────────

27   [6] Furthermore, if discovery must be reopened and expert discovery extended causes the
     November 1 trial date to be continued, Tradeshift will be prejudiced with the further delay in
     having its claims resolved.
28

PLAINTIFF'S OPP. TO MOTION FOR LEAVE TO
FILE FIRST AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
CASE NO. 3:20-CV-1294-RS

1    objective advanced by the interference against the importance of the interest interfered with,

2    considering all circumstances including the nature of the actor's conduct and the relationship

3    between the parties."  *Herron*, 56 Cal. 2d at 206; *see also Freed*, 165 Cal. App. 2d at 190

4    (identifying the relevant factors in determining whether the interference is justified: (1) the nature

5    of the actor's conduct; (2) the nature of the expectancy with which his conduct interferes; (3) the

6    relations between the parties; (4) the interest sought to be advanced by the actor; and (5) the

7    social interests in protecting the expectancy on the one hand and the actor's freedom of action on

8    the other hand).  The interest of mere competition is not enough.  *Imperial Ice Co. v. Rossier*, 18

9    Cal. 2d 33, 36 (1941) ("[A] person is not justified in inducing a breach of contract simply because

10   he is in competition with one of the parties to the contract and seeks to further his own economic

11   advantage at the expense of the other.").  Here, even accepting BuyerQuest's anemic proposed

12   factual allegations as true, BuyerQuest fails to identify any societal interest to be protected that

13   has a greater social value than simply enforcing the contracts at issue in this case, and thus,

14   BuyerQuest's amendment as to the defense of justification would be futile.

15          BuyerQuest's amendment to add the affirmative defense of privilege is also futile.  The

16   affirmative defense of privilege requires: (1) a legally protected interest; (2) in good faith

17   threatens to protect it; and (3) the threat is to protect it by appropriate means.  *Richardson*, 98 Cal.

18   App. 3d at 81.  Even accepting BuyerQuest's factual allegations as true, they would fail to show

19   that: (1) BuyerQuest's actions were made in good faith to protect its legally protected interest;

20   and (2) BuyerQuest was protecting its interest by appropriate means.  The only alleged "interests"

21   that BuyerQuest identified in its amendment are: (1) its economic interests in payments owed to

22   BuyerQuest that Tradeshift was required to pass-through to BuyerQuest once received from

23   Smucker; and (2) the risk of a $1.1 million penalty that BuyerQuest negotiated that it would face

24   in the event the Smucker Project did not meet its deadline.  Amended Answer, p. 11.  But

25   BuyerQuest was not acting to "protect" its interest in getting paid by Tradeshift.  To the contrary,

26   it was acting to throw Tradeshift under the bus so BuyerQuest could take Tradeshift's share of the

27   contract.  Indeed, BuyerQuest's interference caused a breach of the agreement and termination of

28

PLAINTIFF'S OPP. TO MOTION FOR LEAVE TO
FILE FIRST AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
CASE NO. 3:20-CV-1294-RS

1    the project which would have ensured that (1) no further payments would be made to Tradeshift

2    (and passed through to BuyerQuest) and (2) the project would not meet the deadline and the

3    penalty could be assessed.  Furthermore, as a subcontractor to Tradeshift on the Smucker

4    Project—which BuyerQuest admits it was (Answer, ¶ 8)—BuyerQuest's unauthorized

5    communications with Smucker about Tradeshift made without Tradeshift's knowledge are not

6    "appropriate means."  Therefore, BuyerQuest's defense fails as a matter of law and would not be

7    appropriate even if the other factors did not weigh against BuyerQuest.  Accordingly,

8    BuyerQuest's motion for leave to amend should be denied as to the new affirmative defense of

9    privilege.

10             **2.       The Court Should Deny BuyerQuest's Request for Leave to Add a**

11             **"Set Off" Affirmative Defense.**

12          BuyerQuest's proposed Amended Answer seeks to add an affirmative defense of "Set

13   Off."  Amended Answer, p. 9.  The circumstances do not warrant leave to add this defense at this

14   late point in the case.  As noted above, BuyerQuest was perfectly capable of asserting this defense

15   in its original Answer, a timely filed Amended Answer, or in response to Tradeshift's specific

16   interrogatories, but it did not do so.  Accordingly, the factors of undue delay and bad faith weigh

17   against BuyerQuest.

18          More importantly, BuyerQuest's amendment would be futile.  "[T]he right of setoff (also

19   called 'offset') allows entities that owe each other money to apply their mutual debts against each

20   other, thereby avoiding the absurdity of making A pay B when B owes A."  *Los Angeles Cty.*

21   *Emps. Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc.*, No. CV 01 -1351DDP, 2002 WL

22   32919576, at *7 (C.D. Cal. June 20, 2002) (citing *Citizens Bank of Maryland v. Strumpf*, 516 U.S.

23   16, 18 (1995)).  To determine whether the right of setoff exists, the Ninth Circuit established a

24   three-prong test to determine mutuality of debts: (1) the debts must be in the same right; (2) the

25   debts must be between the same individuals; and (3) those individuals must stand in the same

26   capacity.  *Id.* at *8-9.

27          Here, BuyerQuest's affirmative defense of set off is futile because, even accepting its

28

PLAINTIFF'S OPP. TO MOTION FOR LEAVE TO
FILE FIRST AMENDED ANSWER AND
AFFIRMATIVE DEFENSES
CASE NO. 3:20-CV-1294-RS

1   factual allegations related to its defense of set off are true, there is no mutuality of debts between

2   Tradeshift and BuyerQuest.  BuyerQuest does not have any claims or counterclaims against

3   Tradeshift at all.  Thus, under "no set of facts can be proved under [BuyerQuest's amendment] to

4   the pleadings that would constitute a valid and sufficient…defense" of set off because

5   BuyerQuest cannot establish mutual debts between the same individuals.  Accordingly,

6   BuyerQuest's motion for leave to amend should be denied as to the new affirmative defense of set

7   off.

8          **3.      The Court Should Deny BuyerQuest's Request for Leave to Add a**
               **"Limitation of Liability" Affirmative Defense.**
9

10         BuyerQuest's proposed Amended Answer seeks to add an affirmative defense of

11   "Limitation of Liability."  Amended Answer, p. 12.  The circumstances do not warrant leave to

12   add this defense at this late point in the case.  As noted above, the basis BuyerQuest cites for this

13   defense comes straight out of the BuyerQuest Agreements and thus BuyerQuest was perfectly

14   capable of asserting this defense in its original Answer, a timely-filed Amended Answer, or in

15   response to Tradeshift's discovery requests, but it did not do so.  Accordingly, the factors of

16   undue delay and bad faith weigh against BuyerQuest.

17         More importantly, BuyerQuest's amendment would be futile.  BuyerQuest offers no

18   substantive facts and, instead, simply concludes that "Plaintiff's claims are barred, in whole or in

19   part, because any potential liability is expressly limited under the BuyerQuest-Tradeshift

20   Agreement, and incorporated in related agreements."  Mot, Ex. A at 12.  Such conclusory

21   statements are not enough to satisfy the pleading standard.  *Ingram v. City of San Francisco*, No.

22   C12-3038 JSC, 2012 WL 3257805, at *3 (N.D. Cal. Aug. 8, 2020) (dismissing an amended

23   complaint where the cause of action was "supported by mere conclusory statements.") (quoting

24   *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  Accordingly, BuyerQuest's motion for leave to

25   amend should be denied as to the new affirmative defense of Limitation of Liability.

26         **4.      The Court Should Deny BuyerQuest's Request for Leave to**
               **Supplement Its Affirmative Defenses with Any Facts.**
27

28         Even as to the defenses that were mentioned (although not supported) in BuyerQuest's

1  original Complaint, the Court should deny BuyerQuest's request for leave to amend.

2       The undue delay, bad faith, and prejudice factors again weigh strongly against granting

3  leave here.  As discussed above, the majority of factual allegations that BuyerQuest seeks to add

4  in its First Amended Complaint were known to BuyerQuest long prior to its filing of its Answer

5  on June 3, 2020, and all of the factual allegations were known by no later than August 5, 2020,

6  well before the August 31, 2020 deadline to amend pleadings without leave of Court.  Most

7  importantly, they were all known long, long before BuyerQuest sought leave to amend its Answer

8  this month, nearly a year after the deadline for amending as of right had passed.  BuyerQuest

9  offers no explanation for its delay, other than conclusory statements alleging that it "worked

10  diligently to conduct fact discovery in a timely manner, analyze evidence and testimony…, and

11  reevaluate the relevance of its affirmative defenses…" (a contention hotly contested by

12  Tradeshift, who was forced to file multiple letter briefs to eek discovery out of BuyerQuest).

13  Mot. at 11.  While delay alone is insufficient to justify denying a motion to amend, BuyerQuest's

14  motion for leave to amend its previously pled affirmative defenses should be denied because it is

15  extremely untimely while made in bad faith and would prejudice Tradeshift.  *Trans Video Elecs.*,

16  278 F.R.D. at 507-508.

17       BuyerQuest's motion is a bad faith attempt to avoid having its affirmative defenses of

18  Waiver, Estoppel, Acquiescence, Unjust Enrichment, Third Party Acts or Omissions,

19  Impossibility, Impracticability, Frustration of Purpose, Prevention of Performance, and Failure to

20  Join Indispensable Parties dismissed before trial due to its utter failure to substantiate those

21  defenses in a timely manner during discovery.  BuyerQuest's failure to respond to Interrogatory

22  No. 17—not once, but twice—was a tacit admission that BuyerQuest did not have adequate

23  factual or legal bases to support those defenses and, therefore, did not intend to pursue them.

24  That BuyerQuest did not disclose the factual allegations that it seeks to add now in response to

25  Interrogatory No. 17 is itself grounds to preclude any argument or evidence to support those

26  defenses at trial.  Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a

27  witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

28

1    witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

2    substantially justified or is harmless."); Fed. R. Civ. P. 26(e) ("[a] party who has made a

3    disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or

4    request for admission – must supplement or correct its disclosure or response: (A) in a timely

5    manner if the party learns that in some material respect the disclosure or response is incomplete

6    or incorrect, and if the additional or corrective information has not otherwise been made known to

7    the other parties during the discovery process or in writing . . . ."); *Bernstein v. Virgin Am., Inc.*,

8    No. 15-cv-02277-JST, 2018 W 6199679, at *2-5 (N.D. Cal. Nov. 28, 2018) (striking defendant's

9    waiver defense where plaintiff failed to disclose documents during discovery).  Now, BuyerQuest

10   wants it both ways; it made a conscious choice to evade discovery on the facts supporting its

11   defenses when discovery was open (*see* Ex. F at 298:2-6 (counsel stating that BuyerQuest would

12   supplement its discovery responses on any facts supporting its affirmative defenses in lieu of

13   testimony from its CEO)), but now that Tradeshift cannot test those facts (since fact discovery is

14   closed), it seeks to amend its Answer to include factual allegations that it has known all along.

15   BuyerQuest's motion amounts to a bad faith, last ditch attempt to avoid having its existing

16   affirmative defenses stricken due to its own conscious and abject failure to timely respond to

17   directly relevant discovery.  *See Trans Video Elecs.*, 278 F.R.D. at 510 (finding bad faith and

18   denying a motion for leave to amend complaint where motion was found to be a "last-ditch

19   attempt to avoid the case being dismissed in its entirety").  Such gamesmanship is not to be

20   rewarded with leave to amend.

21       Additionally, allowing BuyerQuest to amend its existing affirmative defenses to add

22   factual allegations not timely disclosed during discovery is prejudicial to Tradeshift.  Granting

23   BuyerQuest's motion would force Tradeshift to rebut affirmative defenses that it expected

24   BuyerQuest would be prevented from presenting at trial and that Tradeshift could not fully

25   explore during discovery (which is now closed) due to BuyerQuest's failure to identify such facts

26   in its original Answer, in response to Interrogatory No. 17, and at its corporate deposition on this

27   topic.  For example, BuyerQuest's Amended Answer is the first time BuyerQuest has alleged

28

that: (1) Tradeshift was aware of the actions and communications by BuyerQuest that now form the basis of their claim for breach of contract prior to the termination of the relationship in January 2020 and did not raise any concerns or objections to BuyerQuest at any time during the course of the BuyerQuest-Tradeshift Agreement or that (2) BuyerQuest was unaware that Tradeshift objected to any of these actions or communications, and detrimentally relied on Plaintiff's tacit approval and permissive response.  Without knowledge that BuyerQuest was going to allege that Tradeshift was somehow aware of all of BuyerQuest's furtive communications with Smucker (an allegation that is spurious on its face) and that BuyerQuest supposedly relied on Tradeshift's "tacit approval and permissive response" (to communications it did not know were happening), Tradeshift did not know it should have explored which communications with which BuyerQuest was imputing Tradeshift with knowledge, what facts led BuyerQuest to believe that Tradeshift had given tacit approval or a permissive response, and why that resulted in BuyerQuest's detrimental reliance.

Thus, because BuyerQuest acted with undue delay and in bad faith, and the amendments would result in severe prejudice to Tradeshift (including increased costs for additional discovery, lack of timely discovery in an orderly manner, and likely losing the current trial date), BuyerQuest's motion for leave to amend its existing affirmative defenses to add additional factual allegations should be denied.

## V.   <u>CONCLUSION</u>

Because BuyerQuest's amendments would severely prejudice Tradeshift, BuyerQuest acted with undue delay and bad faith in seeking to amend its existing affirmative defenses, and BuyerQuest's attempt to add affirmative defenses is futile, the Court should deny BuyerQuest's Motion for Leave to File First Amended Answer and Affirmative Defenses.

Dated: July 22, 2021                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                        */s/ Amy K. Van Zant*
                                        AMY K. VAN ZANT

                                        Attorneys for Plaintiff
                                        TRADESHIFT, INC.