Craig J. Mariam  (SBN:  225280)
cmariam@grsm.com
Anthony D. Phillips  (SBN:  259688)
aphillips@grsm.com
Eunice J. Liao  (SBN:  330655)
eliao@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 986-5900
Facsimile:  (877) 306-0043

Attorneys for Defendant
BUYERQUEST, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BUYERQUEST, INC., an Ohio corporation,<br><br>Defendant. | CASE NO.  3:20-cv-01294-RS<br><br>**[REDACTED VERSION]**<br><br>**DEFENDANT BUYERQUEST, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom: 3 (17th Floor)<br><br>**Date:**  September 9, 2021<br>**Time:**  1:30 p.m. |

*Gordon Rees Scully Mansukhani, LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

[REDACTED VERSION]
DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

<div style="text-align:center; font-weight:bold">Gordon Rees Scully Mansukhani, LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111</div>

1

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

2

**PLEASE TAKE NOTICE THAT** on September 9, 2021, at 1:30 p.m., or as soon

3 thereafter as the matter may be heard, in the Courtroom of the Honorable Richard Seeborg,

4 located at Courtroom 3 – 17th Floor, 450 Golden Gate Avenue, San Francisco CA 94102,

5 Defendant BuyerQuest, Inc. ("BuyerQuest" or "BQ") will, and hereby does, move the Court for

6 summary judgment, pursuant to Federal Rule of Civil Procedure 56, as to all three Causes of

7 Action asserted against it by Plaintiff Tradeshift, Inc. ("Tradeshift" or "TS") in its Complaint.

8 Namely, the Causes of Action for Breach of Contract; Tortious Interference with Contract; and,

9 Breach of the Covenant of Good Faith and Fair Dealing.

10       BuyerQuest respectfully requests that the Court grant its motion, enter summary

11 judgment in its favor as to all three causes of action in the Complaint and dismiss the Complaint

12 in its entirety.  This Motion is based on this Notice of Motion and Motion for Summary

13 Judgment and the following Memorandum of Points and Authorities in support thereof; the

14 Declarations and evidence submitted concurrently herewith; and, the Complaint and other

15 pleadings in this matter; the arguments of counsel; and, all other material which may properly

16 come before the Court at or before the hearing of this Motion.

17

18

19

20

21

22

23

24

25

26

27

28

<div style="text-align:center">[REDACTED VERSION]<br>DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND<br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF</div>

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 2

II. STATEMENT OF FACTS ................................................................................. 2

    A. Tradeshift, BuyerQuest, and Smucker ................................................... 2

    B. The Tradeshift-BuyerQuest Agreement ................................................. 3

    C. The Tradeshift-Smucker Agreement ...................................................... 5

    D. The Smucker Project ............................................................................... 6

    E. Tradeshift's Performance Failures on the Smucker Project .................. 6

    F. Smucker's Decision to Terminate the Tradeshift-Smucker Agreement ............. 7

    G. Tradeshift's Failure to Timely Pay BuyerQuest ................................... 8

    H. Smucker Terminates the Tradeshift-Smucker Agreement .................... 9

    I. Tradeshift Terminates the Tradeshift-BuyerQuest Agreement and Sues ............. 11

III. ARGUMENT ..................................................................................................... 11

    A. Summary Judgment Standard ............................................................... 11

    B. No Genuine Issue of Material Fact Exists as to Breach of Contract .................. 11

        1. Tradeshift Did Not Perform under the Tradeshift-BuyerQuest Agreement ............. 12

        2. Tradeshift Cannot Establish BuyerQuest's Breach .................... 13

        3. Tradeshift Cannot Recover Lost Profits .................................... 14

    C. No Genuine Issue of Material Fact Exists as to Tortious Interference .............. 16

        1. Tradeshift Cannot Establish the Existence of a Valid Contract ............. 17

        2. Tradeshift Cannot Establish an Intentional Act Designed to Induce Breach ............. 17

        3. Tradeshift Cannot Establish Causation .................................... 20

    D. No Genuine Issue of Material Fact Exists as to Breach of the Covenant of Good Faith and Fair Dealing ............. 21

IV. CONCLUSION ................................................................................................... 22

-i-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACIM NY, L.L.C. v. Nissan N. Am., Inc.*,
No. 17 CIV. 729 (LGS),
2019 WL 935424 (S.D.N.Y. Feb. 26, 2019) ...................... 13

*Am. Software v. Ali*,
46 Cal. App. 4th 1386 (Cal. Ct. App. 1996).................... 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................... 11

Bauer v. Interpublic Group of Companies, Inc.,
255 F. Supp. 2d 1086 (N.D. Cal. 2003)................... 18, 21

*Cabanas v. Gloodt Assocs.*,
942 F. Supp. 1295 (E.D. Cal. 1996),
*aff'd sub nom. Cabanas v. Gloodt Assocs., Inc.*,
141 F.3d 1174 (9th Cir. 1998).................... 19

Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,
(1990) 222 Cal. App. 3d 1371 (Cal. Ct. App. 1990).................... 21

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (Cal. 1992) ...................... 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................... 11

DeVoto v. Pacific Fidelity Life Ins. Co.,
618 F.2d 1340 (9th Cir. 1980) ...................... 18

*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.*,
101 Cal.App.4th 1083 (Cal. Ct. App. 2002).................... 13

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir.2008).................... 17

*Food Safety Net Svcs. v. Eco Safe Systems USA, Inc.*,
209 Cal. App. 4th 1118 (Cal. Ct. App. 2012).................... 15

*Hahn v. Diaz-Barba*,
194 Cal. App. 4th 1177 (Cal. Ct. App. 2011).................... 20

*Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008).................... 16

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (Cal. 2020) .................... 16

-ii-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Lewis Jorge Constr. Mgmt. v. Pomona Unified Sch. Dist.*,
    34 Cal. 4th 960 (Cal. 2004) ........................................................................... 15

*Matilock, Inc. v. Pouladdej*,
    2020 WL 3187198 (N.D. Cal. June 15, 2020) ............................................... 20

*Moore v. Apple Inc.*,
    2015 WL 7351464 (N.D. Cal. Nov. 20, 2015) ............................................... 21

*Moser v. Encore Cap. Grp., Inc.*,
    455 F. App'x 745 (9th Cir. 2011) ................................................................. 21

*Online Policy Grp. v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) ......................................................... 19

*Powertech Tech., Inc. v. Tessera, Inc.*,
    No. 10 Civ. 945,
    2013 WL 12324116 (N.D. Cal. Apr. 15, 2013) ............................................. 13

*Renaissance Realty, Inc. v. Soriano*,
    120 Cal. App. 3d Supp. 13 (Cal. Ct. App. 1981) .......................................... 17

*Richman v. Hartley*,
    (2014) 224 Cal.App.4th 1182 ....................................................................... 12

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
    732 F. Supp. 2d 952 (N.D. Cal. 2010) ........................................................... 21

*Sade Shoe Co. v. Oschin & Snyder*,
    162 Cal. App. 3d 1174 (Cal. Ct. App. 1985) ................................................ 19

*Savage v. Pac. Gas & Elec. Co.*,
    21 Cal. App. 4th 434 (Cal. Ct. App. 1993) ................................................... 20

*Shamblin v. Berge*,
    166 Cal. App. 3d 118 (Cal. Ct. App. 1985) .................................................. 17

*Tradeshift, Inc. v. Smucker Services Co.*,
    No. 20-cv-03661-ER (S.D.N.Y.) .................................................................. 11

*Tunkl v. Regents of the Univ. of California*,
    60 Cal. 2d 92 (Cal. 1963) ............................................................................. 15

*VasoNova Inc. v. Grunwald*,
    2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ............................................. 20

*Worldwide Primates, Inc. v. McGreal*,
    26 F.3d 1089 (11th Cir. 1994) ...................................................................... 20

**Statutes**

Civil Code
    Section 3000 ................................................................................................. 15

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-iii-

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1

**Rules**

Federal Rules of Civil Procedure
    Rule 56 ................................................................................................................ 11

**Treatises**

Restatement of Torts
    Section 432 ......................................................................................................... 21

Restatement of Torts
    Section 769 ......................................................................................................... 19

Restatement of Torts
    Section 772 ................................................................................................... 19, 20

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

## STATEMENT OF ISSUES

1.      Whether any genuine issue of material fact exists as to Tradeshift's Cause of Action for Breach of Contract.  Specifically:

a. Whether Tradeshift can prove its performance given it failed to timely pay BuyerQuest under the Tradeshift-BuyerQuest Agreement;

b. Whether Tradeshift can prove a breach given there is no admissible evidence of any breach by BuyerQuest;

c. Whether Tradeshift's sole damages claim for lost profits is barred by the Tradeshift-BuyerQuest Agreement that expressly precludes recovery of such damages.

2.      Whether any genuine issue of material fact exists as to Tradeshift's Cause of Action for Tortious Interference with Contract.  Specifically:

a. Whether Tradeshift can prove a valid contract between it and a third-party given that Smucker voided the Tradeshift-Smucker Agreement for fraudulent inducement by Tradeshift;

b. Whether Tradeshift can establish an intentional act by BuyerQuest designed to disrupt the Tradeshift-Smucker Agreement given that the conduct complained of was undertaken either to protect BuyerQuest's economic interest in the Tradeshift-Smucker Agreement or to provide truthful information;

c. Whether Tradeshift can establish that any conduct of BuyerQuest caused the termination of the Tradeshift-Smucker Agreement given that Smucker's termination decision was independent of any conduct by BuyerQuest.

3.      Whether any genuine issue of material fact exists as to Tradeshift's Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing.  Specifically:

a. Whether the Cause of Action is barred by the Non-Exclusivity provisions of the Tradeshift-BuyerQuest Agreement that expressly permits solicitation of existing clients.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

This is a business tort case about two Agreements and a complex three-party software implementation.  Tradeshift and BuyerQuest are erstwhile partners who teamed up to win a large e-procurement system contract with Smucker, the well-known consumer foods company.[1]  When Tradeshift failed to perform, Smucker terminated it and later sued it for fraudulent inducement.  After Tradeshift's termination, BuyerQuest successfully completed the project alone and under a new contract between it and Smucker.

Tradeshift sued BuyerQuest alleging breach of their separate Agreement and tortious interference with the Tradeshift-Smucker Agreement.  Tradeshift claims BuyerQuest convinced Smucker to terminate it through a series of machinations and disparagements.

The complete record after discovery belies this theory.  Smucker voided its Agreement with Tradeshift after a lengthy, thorough, and independent internal business review.  BuyerQuest exerted no influence on the decision – a decision made inevitable by Tradeshift's well-documented failures on the Smucker Project.  Nor does any evidence show BuyerQuest breached the Tradeshift-BuyerQuest Agreement.  Tradeshift itself failed to perform its payment obligations under that Agreement, forcing BuyerQuest to act justifiably in approaching Smucker to assist its attempts to collect.

Now with a complete factual record, Tradeshift cannot establish essential elements of any of its three Causes of Action.  There are no genuine issues of material fact for a jury.

**II.   STATEMENT OF FACTS**

**A.   Tradeshift, BuyerQuest, and Smucker**

Plaintiff-Tradeshift and Defendant-BuyerQuest both provide cloud-based business-to-business software designed to automate users' commercial transactions with their suppliers.  In April 2019, the two partnered together to win a joint project for non-party Smucker Services Co.

[1] All references "Phillips, __" or "Ex.__" are to the concurrently-filed Declaration of Anthony D. Phillips In Support of BuyerQuest's Motion for Summary Judgment and its accompanying exhibits.

-2-

("Smucker" or "JMS") to implement for Smucker a new electronic procurement system. As envisioned by Smucker, that system would automate the management of Smucker's hundreds of suppliers; the generation of purchase orders; the reconciliation of goods received; and, the processing and payment of invoices. Smucker aimed to select and implement the new system before May 2020, when its software subscription with its incumbent provider, Ariba, would end.

Smucker undertook an extensive vendor selection process before accepting the joint Tradeshift-BuyerQuest proposal in June 2019. Smucker asked a number of candidates to answer its Request for Proposal (RFP), a document posing detailed questions about the software functionality, pricing, experience, and financial condition of each. Ex. C. Successful RFP respondents were then asked to complete a more detailed Business Requirements Document (BRD) that listed over 180 "Must Have" functions that the selected software would have to provide. Ex. D. Candidates were admonished by Smucker that "Failure to deliver [on "Must Have" requirements] would constitute a project failure." *Id.*, at TS_BQ_00004383.

Tradeshift and BuyerQuest responded separately to the Smucker RFP in March 2019, then together to the BRD in June 2019 – having by then agreed to bid for the project jointly. In the BRD response, Tradeshift represented that it could deliver dozens of "Must Have" requirements. Ex. D. Smucker would later sue Tradeshift for misrepresenting its ability to provide at least eight of those specific Must Have functions. Ex. E (¶¶ 48-50).

Ex. C (RFP Response Nos. 1.2; 1.5). In actual fact, ███████████████████████0 ████████████████ Ex. F. Smucker has also sued Tradeshift for those misrepresentations, among others. Ex. E (¶¶ 28-29). Nevertheless, Smucker decided in June 2019 to accept the joint Tradeshift-BuyerQuest proposal.

### B.     The Tradeshift-BuyerQuest Agreement

To facilitate the Smucker Project and potential future relationships, Tradeshift and BuyerQuest entered into their own contract in June 2019. It comprised three parts: a "Master

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-3-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  Agreement for the Tradeshift Partner Program" ("MSA" (Ex. A-1)) that governed the parties'

2  relationship, generally; a "Cross-Selling Attachment" ("CSA" (Ex. A-2)) that governed referrals

3  and joint sales; and, a Reseller Order Form ("ROF" (Ex. A-3)) specific to the Smucker Project

4  itself (together, the "Tradeshift-BuyerQuest Agreement").  The Tradeshift-BuyerQuest

5  Agreement includes the following relevant provisions:

6  ***Limitation of Liability***.



13  The CSA modified this Limitation of Liability to

14  ████████.  CSA 9.4.  As detailed below, the amount paid to BuyerQuest

15  under the ROF was ████.  The ROF specifically incorporated both Limitation of Liability

16  provisions.  ROF, Exhibit C § 8.[2]

17  ***Payment Terms***.  The ROF contemplated both software subscription fees and consulting

18  fees.  Tradeshift would invoice Smucker in accordance with the Tradeshift-Smucker Agreement

19  (discussed below); Smucker would pay Tradeshift; then Tradeshift would pass through to

20  BuyerQuest its portion of the fees ████████.

21  ████████  ROF § 3.d.

22  ***Risk Sharing Term***.

25

26  [2] That section also added one exception not applicable here: "████████

27  ████████

28  ████

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1
2 ████████████████████  ROF § 6(a)(A)(a).

3      ***Statement of Work.***  The ROF included a Statement of Work that defined the scope of

4 the Smucker Project, along with specific technical tasks that Tradeshift and BuyerQuest would

5 each perform to integrate their two software products with Smucker's systems.  The Statement of

6 Work included "General Assumptions" made by BuyerQuest about how the project would

7 proceed and how project management duties would be divided with Tradeshift.  Nothing in the

8 Statement of Work, or elsewhere in the Tradeshift-BuyerQuest Agreement, prohibits direct

9 communication between BuyerQuest and Smucker or mandates Tradeshift's inclusion in all

10 communications between BuyerQuest and Smucker.  *Id.*, Ex. F § 3.1.

11      ***Non-Exclusivity***.



18 ████████ *see also*, Ex. HH (Response to RFA No. 2).

19      **C.      The Tradeshift-Smucker Agreement**

20      On June 30, 2019, Tradeshift and Smucker executed the Tradeshift-Smucker Agreement.

21 Ex. B.  BuyerQuest did not sign, but was named in it as a "Key Subcontractor".  *Id.*, at p.1.

22      The Tradeshift-Smucker Agreement provided that Smucker would pay ████████████

23 ████" after invoicing.  *Id.*, at § 3(c).

24
25
26
27
28

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### D.    The Smucker Project

The Smucker Project began in July 2019.  BuyerQuest's project team worked largely on-site at Smucker's offices in Orrville, Ohio where they routinely interacted with Smucker's staff. The same BuyerQuest staff members remained on the Project throughout.  By contrast, on-site attendance by Tradeshift was periodic and the project handled by a revolving-door of different staff members.  As early as August 2019, Smucker expressed concern about Tradeshift's approach and its ability to deliver the project timely and complete.  Ex. G.

It soon became apparent that Tradeshift could not deliver certain "Must Have" functions it had committed to in the BRD.  For example, ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Ex. H. Tradeshift's overreach did not go unnoticed by the BuyerQuest team left to pick up the slack. Early on, BuyerQuest's CEO privately likened Tradeshift to "FyreFest" – the notorious failed 2017 luxury music festival that over-promised and catastrophically under-delivered leading to litigation and two documentaries.  Ex. I [pp. 207:6-208:1].  At BuyerQuest, the nickname stuck. ████████████████████████████████████ *Id*.  Further delays beyond May would put Smucker in the position of having to renew the software subscription it had with Ariba, its legacy e-procurement provider, and to keep that system in place longer than planned.  It nevertheless became apparent that the May 2020 Go-Live date was not feasible with Tradeshift, either. Ex. K.[3]

### E.    Tradeshift's Performance Failures on the Smucker Project

The testing phase of the Smucker Project began in December 2019.  As of January 6, 2020, Smucker had compiled a list of defects that included seven unresolved issues with Tradeshift's product that Smucker considered "Critical" or "Fatal" meaning the project could not be completed while they remained unresolved.  Ex. J.  Certain issues had stood unresolved for

---

[3] ████████████████████████████████████████████████████████ ████████████████████

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1 over twenty days without a satisfactory response from Tradeshift.  *Id*.

2

3 Ex. L; *see also*, Ex. M [pp. 71:24-72:11; 75:21-76:18.]; Ex. FF

4 . On

5 January 16, Smucker terminated the Tradeshift-Smucker Agreement by letter.  Ex. N.

6 **F.    Smucker's Decision to Terminate the Tradeshift-Smucker Agreement**

7 The January 16 termination of the Tradeshift-Smucker Agreement was the culmination of

8 months of growing concern at Smucker.  Smucker conducted a thorough and deliberative internal

9 analysis of its business relationship with Tradeshift and developed a contingency plan should

10 Tradeshift continue failing to perform.  That process involved a number of Smucker executives

11 independently analyzing different aspects of Tradeshift's performance and suitability as a partner

12 and ultimately recommending its termination and replacement.  Ex. O [pp. 185:10-186:18 ("

13 ")].  Smucker's Senior Director of

14 Procurement explained the reasons for the termination of the Tradeshift-Smucker Agreement at

15 his deposition:

16

17

18

19

20

21

22 Ex. O [p. 263:12-23].

23 The recommendations were also memorialized in writing in an internal Smucker

24 document.  *See*, Ex. FF ("

25 ").  Concerns

26 about Tradeshift's financial viability also factored into the decision.  Ex. O, at 264:22 ("

27

28

-7-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  ████████████████████████.").  Financial concerns germinated from three

2  sources in October 2019: what Smucker called "social listening" about the company;[4]

3  Tradeshift's "front-running" of invoices, that is attempts to collect them before they became

4  due;[5] and, from BuyerQuest's answers to Smucker's questions about whether Tradeshift had paid

5  it by late October – it had not.[6]   These concerns prompted Smucker to inquire further.

6     On October 31, 2019, Smucker's Senior Vice President-Rob Ferguson contacted

7  Tradeshift's CEO-Christian Lanng to discuss █████████████ Ex. Q; Ex. R

8  [p. 17:17-18:8; 19:1-10].   Mr. Lanng referred Mr. Ferguson to Peter van Pruissen, Tradeshift's

9  then-CFO.  Ex. R [p. 19:7-10].  The two spoke on November 4, 2019 and corresponded further.

10  Mr. Ferguson requested copies of Tradeshift's audited financial statements; to speak with

11  Tradeshift's auditor; or, an Agreed-Upon Procedures letter from the auditor to confirm whether it

12  had (or had not) delivered an unmodified audit opinion.  Ex. Q.  Tradeshift did not provide any

13  of the requested information.  Ex. P [pp. 75:23-76:2; 77:10-80:17; 81:6-15].[7]

14     **G.     Tradeshift's Failure to Timely Pay BuyerQuest**

15     Also in late October 2019, Smucker asked BuyerQuest-CEO Jack Mulloy about

16  BuyerQuest's experience collecting payment from Tradeshift.  Ex. I [pp. 211:8-217:6].  Mulloy

17  candidly divulged that Tradeshift had not paid BuyerQuest by that time.  The two returned to the

18  topic in conversation and correspondence through the end of 2019, with Mr. Mulloy detailing

19  BuyerQuest's ongoing frustrated attempts to collect from Tradeshift and its hope that a direct

20  *payment* relationship between BuyerQuest and Smucker would alleviate the problem by

21  eliminating Tradeshift as an intermediary.  Ex. I [p. 272:6-15]; Ex. O [pp. 102:11-103:6].  In that

22  _____

23  [4] Ex. I [p.211:3-24 ████████████████████████████████████████; Ex. P [p.71:16-23].

24  [5] Ex. O [pp. 168:4-172:4("████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████].

26  [6] Ex. I [p.216:23-25 ████████████████████████████████████]; Ex. O [p.80:15-81:9].

27  [7] "████████████████████████████████████████████████

28  _____

-8-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

context, Mulloy also shared with Smucker certain online reviews about Tradeshift that appeared on the public Glassdoor website and that BuyerQuest found them concerning.  Ex. S.

Tradeshift did not pay BuyerQuest in accordance with the Tradeshift-BuyerQuest Agreement.  BuyerQuest invoiced Tradeshift for the first installment of its fees on July 1, 2019 – a total of ████.  Ex. T. On June 30, 2019 and again on August 31, Tradeshift invoiced Smucker in accordance with the Tradeshift-Smucker Agreement.  Ex. U.  Smucker paid Tradeshift ████ on October 2, 2019.  Ex. V.  Payment from Tradeshift to BuyerQuest was therefore due on October 17 under the Tradeshift-BuyerQuest Agreement.

Tradeshift did not make its first payment to BuyerQuest until November 7 and then only in the amount of ████.  Ex. W.  On October 31, Smucker made a second payment of ████ in satisfaction of Tradeshift's August 31 invoice.  Ex. X.  Tradeshift did not make its second payment to BuyerQuest until January 2, 2020, more than sixty days after receipt from Smucker.  Ex. Y [p. 82:6-21].  The two eventual Tradeshift payments totaled ████.

Between October and December, BuyerQuest made repeated demands for payment from Tradeshift and Tradeshift repeatedly reneged on its promises to make such payments.  Ex. Z.  BuyerQuest's concerns heightened as the weeks went by, reaching a point at which BuyerQuest questioned whether it could continue staffing the project. Ex. O [104:16-105:1].  BuyerQuest shared its concerns with Smucker in the hope Smucker might press Tradeshift to comply with its agreement to pass through the payments it had received.  *Id.* [pp. 102:11-103:6]; Ex. S at BARR0001 ("The ONLY leverage BQ has to get paid by TS is JMS.").

**H.    Smucker Terminates the Tradeshift-Smucker Agreement**

By December, Smucker had concluded Tradeshift had failed to perform on the Smucker Project.  Ex. O [p. 222:5-223:8 ████████ ████████).  Smucker thereafter prepared to execute its contingency plan, in part by requesting a proposal from BuyerQuest to take over the whole

-9-

Smucker Project.[8]  BuyerQuest's team met with Smucker's team at the BuyerQuest office in Berea, Ohio on January 7, 2020 and presented as requested.  Smucker ultimately selected BuyerQuest and the two companies contracted on March 6, 2020.  BuyerQuest went on to complete the project and remains Smucker's e-procurement vendor today.

Smucker reached the decision to terminate the Tradeshift-Smucker Agreement independently, based on business reasons and factual determinations made deliberatively and alone.  The record on this point is clear.  Mr. Barr of Smucker testified unequivocally:

Ex. GG [pp.252:14-253:17]; *see also*, Ex. FF.  The independence of the analysis was made plain to Tradeshift's CEO during his conversation  with Smucker in October:

Ex. R [p. 19:1-10].

On January 16, 2020, Smucker terminated the Tradeshift-Smucker Agreement.  Ex. N.  In its termination letter,

*Id*. In May 2020, Smucker sued Tradeshift for Fraudulent Inducement and to void the Tradeshift-Smucker Agreement.  Ex. E.  Smucker asserts various misrepresentations made by Tradeshift about the functionality of its products as well as its financial condition.  Tradeshift sued Smucker for breach of contract in the same lawsuit.  The case is pending in the United States District Court for the Southern District of New York.  *See*,

---

[8] That BuyerQuest would step into the void left by Tradeshift was no foregone conclusion –

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    *Tradeshift, Inc. v. Smucker Services Co.*, No. 20-cv-03661-ER (S.D.N.Y).

2      **I.**     **Tradeshift Terminates the Tradeshift-BuyerQuest Agreement and Sues**

3        On January 23, 2020, in reaction to Smucker's termination, Tradeshift sent a letter to

4 BuyerQuest that read, in part: ████████████████████████████████████

5 ████████████████████████████████████ Ex. AA. On

6 February 20, 2020, Tradeshift filed this lawsuit. ECF 1. Trial is set for November 1, 2021. Fact

7 discovery closed on May 15.

8 **III.**     **ARGUMENT**

9      **A.**     **Summary Judgment Standard**

10        Summary judgment should be granted where the "pleadings, the discovery and disclosure

11 materials on file, and any affidavits show that there is no genuine issue as to any material fact and

12 that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson*

13 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue of material fact is one that

14 could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome

15 of the suit." *Id.* at 248. A dispute about a material fact is "genuine" only if "the evidence is such that

16 a reasonable jury could return a verdict for the nonmoving party." *Id*.

17        Where a non-moving party "fails to make a showing sufficient to establish the existence of

18 an element essential to that party's case, and on which that party will bear the burden of proof at trial"

19 there is no genuine issue of material fact, because "a complete failure of proof concerning an

20 essential element of the nonmoving party's case necessarily renders all other facts immaterial."

21 *Celotex Corp. v. Catrett*, 477 U.S. 317 at 322 (1986).

22        The fact record in this case is now complete and clear. Tradeshift cannot establish essential

23 elements of any of its three Causes of Action. No reasonable jury could return a verdict for

24 Tradeshift at trial. Summary judgment is therefore warranted as detailed below.

25      **B.**     **No Genuine Issue of Material Fact Exists as to Breach of Contract**

26        Tradeshift's First Cause of Action for Breach of Contract alleges six purported breaches

27

28

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-11-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

committed by BuyerQuest on the Smucker Project. ¶ 31.[9]  Namely, "[1] failing to obtain

Tradeshift's review and consent to scope changes to the Smucker project; [2] interfering with

Tradeshift's program management duties; [3] failing to support Tradeshift with planning,

configurations, deliverables, integrations, change requests, and product updates…[4] failing to

follow Tradeshift's lead with respect to supplier onboarding strategy and planning; [5] failing to

follow the Change Control Process; and, [6] failing to include Tradeshift in communications with

Smucker related to the Smucker project." *Id*.  The Complaint does not cite any specific

provision of the Tradeshift-BuyerQuest Agreement. *Id*.  Tradeshift's own performance is alleged

in conclusory fashion. *Id*., at ¶ 30.[10]

   "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the

contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the

defendant's breach, and (4) the resulting damage to the Plaintiff." *Richman v. Hartley* (2014)

224 Cal.App.4th 1182, 1186.  While the existence of the Tradeshift-BuyerQuest Agreement is

not disputed, Tradeshift cannot establish the other three essential elements of its claim.

### 1.  Tradeshift Did Not Perform under the Tradeshift-BuyerQuest Agreement

   The Tradeshift-BuyerQuest Agreement required Tradeshift to pay BuyerQuest its share

of the fees for the Smucker Project ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ROF §

3.d.  Smucker made its first payment to Tradeshift on October 2, 2019.  Tradeshift did not pay

BuyerQuest until November 7.  Smucker made its second payment to Tradeshift on October 31,

2019.  Tradeshift did not pay BuyerQuest until January 2, 2020.  The two payments were

therefore made 36 and 63 days after payment by Smucker to Tradeshift, respectively.

   Tradeshift's failure to perform was not immaterial.  It placed considerable strain on its

relationship with BuyerQuest; on BuyerQuest's ability to perform; and, contributed to Smucker's

concerns about Tradeshift's financial viability that, in-turn, led to Smucker's decision to

---

[9] All citations "¶ __" are to the Complaint.

[10] "Tradeshift has substantially complied with all conditions, covenants and promises required on its part to be performed under each of the BuyerQuest Agreements except to the extent they have been excused by BuyerQuest's refusal to perform."

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-12-

1    terminate the Tradeshift-Smucker Agreement.

2              **2.       Tradeshift Cannot Establish BuyerQuest's Breach**

3         The Complaint does not specify which provisions of the Tradeshift-BuyerQuest

4    Agreement that BuyerQuest breached.  *See*, ¶¶ 31-32.  Five of the six breaches described

5    correspond to only one section of the Agreement, however: the General Assumptions listed in

6    the Statement of Work.  *See*, ROF, Ex. F, section 3.1 ("BuyerQuest has made the following

7    assumptions…").[11]

8         ***The General Assumptions***.  The General Assumptions are not enforceable obligations

9    that can give rise to a breach claim as a matter of law.  "The law has long distinguished between

10   a 'covenant' which creates legal rights and obligations, and a 'mere recital' which a party inserts

11   for his or her own reasons into a contractual instrument. Recitals are given limited effect even as

12   between the parties." *Emeryville Redevelopment Agency v. Harcros Pigments, Inc.,* 101

13   Cal.App.4th 1083, 1101 n.6 (Cal. Ct. App. 2002)(collecting cases); *Powertech Tech., Inc. v.*

14   *Tessera, Inc.*, No. 10 Civ. 945, 2013 WL 12324116, at *10 (N.D. Cal. Apr. 15, 2013)("Since

15   recitals indicate only the background of a contract, that is, the purposes and motives of the

16   parties, they do not ordinarily form any part of the real agreement.")(citations omitted); *see also*,

17   *ACIM NY, L.L.C. v. Nissan N. Am., Inc.*, No. 17 CIV. 729 (LGS), 2019 WL 935424, at *4

18   (S.D.N.Y. Feb. 26, 2019)("Accordingly, no fact issue exists regarding the issue of [breach],

19   because the Recitals are not binding as a matter of law." (applying California law)).

20        The General Assumptions are recitals made by BuyerQuest to provide context for its

21   agreements in the preceding "Approach and Deliverables" section of the Agreement.  If

22   anything, the General Assumptions limited BuyerQuest's obligations by delineating tasks that it

23   would rely on Tradeshift to perform.  Assumptions were used similarly in the Tradeshift-

24   Smucker Agreement.  *See*, ROF Ex. G.  And Tradeshift agreed that the Assumptions in its

25   contracts were █████████████████████████████████████████

26   ████████████████████████ Ex. BB [pp.39:16-40:11].

27   _____

28   [11] Compare, ¶ 31 with, General Assumptions 3.1.2; 3.1.4; 3.1.9; 3.1.12; and, 3.1.14.

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

***Communications with Smucker***.  The remaining obligation Tradeshift alleges BuyerQuest breached (by "failing to include Tradeshift in communications with Smucker related to the Smucker project" (¶ 31)) appears ***nowhere*** in the Tradeshift-BuyerQuest Agreement.[12]  Moreover, witnesses from all parties testified that the project team communicated frequently and informally and that BuyerQuest and Smucker staff often communicated directly by virtue of the fact that BuyerQuest staff spent more time on-site at Smucker than did Tradeshift's.  Ex. I [pp. 233:5-11; 234:8-11]; Ex. M [p.32:15-23]; Ex. BB [pp. 82:6-83:9].  Tradeshift was well aware of this by September, made no complaint, and the Project proceeded in the same way until its termination in January.  Ex. BB [pp. 82:6-83:9].

***No Evidence of Breach***.  Even if the Agreement sections the Complaint alludes to created enforceable obligations, there is no evidence that BuyerQuest breached them.  Tradeshift identified four examples of breaching conduct in response to Interrogatories – all involved technical aspects of the Smucker Project.[13]  *See*, Ex. CC (Response to Interrogatory Nos. 5-10); M [pp.100:15-102:8].  Two were resolved to all parties' satisfaction at the time.  Ex. M [pp. 84:11-85:8 ▮▮▮▮▮ 93:8-100:1 ▮▮▮▮▮ ▮▮▮▮▮  Two others arose in testing, were known to all parties and remained open by the time Smucker terminated Tradeshift.  *Id.* [pp. 86:9-87:21 ▮▮▮▮▮; 89:18-91:83 ▮▮▮▮▮)].

### 3.   Tradeshift Cannot Recover Lost Profits

Tradeshift amended its Initial Disclosures to demand "its lost profits" from the Tradeshift-Smucker Agreement.  Ex. DD.  It subsequently again amended its Initial Disclosures

---

[12] When asked to identify which sections of the Tradeshift-BuyerQuest Agreement forbade BuyerQuest to communicate directly with Smucker, Tradeshift's corporate designee pointed to seven subsections.  None remotely supports the theory that BuyerQuest was required to include Tradeshift in all communications with Smucker.  *See*, Ex. BB [pp. 127:24-132:18]; *see also*, SOW §§ 2.1.2.2.2; 2.1.2.2.4; 2.2.3.1; 3.1.4; 3.1.5; 7.2.4. In fact, those provisions contemplate a collaborative effort with Tradeshift, BuyerQuest, and Smucker working freely together.

[13] Namely, issues related to (1) ▮▮▮▮▮ (Response No. 5); (2) ▮▮▮▮▮; (*id.*) (3) a ▮▮▮▮▮ (*id.*); and (4) ▮▮▮▮▮ (Response No. 8).

-14-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

to conform to the opinion of its damages expert - [redacted][14] Ex. EE.

Tradeshift's demand overlooks the Limitation of Liability provisions in the Tradeshift-BuyerQuest Agreement. [redacted]

Limitation of liability provisions "have long been recognized as valid in California." *Food Safety Net Svcs. v. Eco Safe Systems USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (Cal. Ct. App. 2012)("a limitation of liability clause is intended to protect the wrongdoer from unlimited liability."). Neither of the bases commonly used to challenge the provision present themselves – the Agreement does not implicate a public interest or any suggestion of unconscionability.[15] *See, Tunkl v. Regents of the Univ. of California*, 60 Cal. 2d 92, 98 (Cal. 1963).

Lost profits are axiomatically the type of [redacted] that the Tradeshift-BuyerQuest Agreement prohibits. *See*, REST. (SECOND) CONTRACTS § 347(b)(consequential damages are those proximately caused by the breach, such as mitigation costs; incidental expenses; or, lost profits); *Lewis Jorge Constr. Mgmt. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 975 (Cal. 2004)("Lost profits, if recoverable, are more commonly special rather than general damages.").[16] The Tradeshift-BuyerQuest Agreement therefore expressly precludes any recovery of lost profits, particularly upon termination of the Agreement, as Tradeshift did. Ex. AA.

---

[14] Tradeshift paid BuyerQuest only [redacted] during the life of the Tradeshift-BuyerQuest Contract.

[15] Indeed, the Tradeshift-BuyerQuest Contract was prepared on a form developed by Tradeshift and Tradeshift was ostensibly the larger of the two companies. *See, Am. Software v. Ali*, 46 Cal. App. 4th 1386, 1390 (Cal. Ct. App. 1996).

[16] Alternatively, even if recoverable, the maximum recovery would be limited [redacted]. CSA § 9.4.

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

## C.     No Genuine Issue of Material Fact Exists as to Tortious Interference

The centerpiece of the Complaint is its theory that BuyerQuest "disparaged" Tradeshift and maneuvered to create with Smucker the impression that Tradeshift was at fault for the failures of the Smucker Project.   ¶ 37. The result was the termination of the Tradeshift-Smucker Agreement and Smucker's award of a new contract to BuyerQuest alone.  ¶ 39.

In truth, Smucker independently concluded that Tradeshift had misrepresented its capabilities and its financial stability to induce the Tradeshift-Smucker Agreement.  Smucker also independently concluded by December 18, 2019 that Tradeshift had failed to perform on the Smucker Project.  At that point, Smucker intensified its contingency planning, including by inviting BuyerQuest to propose a solution of its own.  BuyerQuest's role in these events comprised making up for Tradeshift's shortfalls on the Project; providing truthful answers to Smucker's queries; and, attempting to secure its own financial interest – both with respect to unpaid fees Tradeshift owed BuyerQuest and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that BuyerQuest risked facing if the Smucker Project failed.

The complete factual record bears out only this version of events.  Tradeshift's witnesses could identify no disparagement that took place during the project.  Ex. M [pp. 102:21-103:11]; Ex. BB [pp.76:23-77:18].   Smucker made clear there was none: ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. GG [p.252:19-22].

The elements of a Cause of Action for Intentional Interference with Contractual Relations are (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption; and (5) resulting damage.  *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (Cal. 2020)(citations omitted); *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 825 (9th Cir. 2008).  Tradeshift cannot establish a genuine issue of material fact as to at least three of these elements.

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**1.    Tradeshift Cannot Establish the Existence of a Valid Contract**

The threshold element of a tortious interference claim is the existence of a valid contract. *Shamblin v. Berge*, 166 Cal. App. 3d 118, 124 (Cal. Ct. App. 1985)("a contract is valid if it is not illegal, opposed to public policy, or otherwise void.")(citations omitted).  A contract procured by fraud is void and therefore cannot support a claim for tortious interference.  *Renaissance Realty, Inc. v. Soriano*, 120 Cal. App. 3d Supp. 13, 18 (Cal. Ct. App. 1981)("a fraudulently procured contract cannot be the subject of the tort of interference with a business or contractual relationship.").

In Smucker's January 16, 2020 letter, it terminated the Tradeshift-Smucker Contract citing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Ex. N.  Smucker went on to say that, had Tradeshift ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ *Id*.  For these reasons, Smucker deemed the Tradeshift-Smucker Agreement voidable and then went on to void the Agreement by suing Tradeshift for Fraudulent Inducement and seeking a declaration to that effect as well as tort damages.  Ex. E.  That pending lawsuit asserts specific instances of fraud respecting Tradeshift's products as well as misrepresentations about Tradeshift's financial condition.

Tradeshift cannot therefore bear its burden of proof to establish a valid contract.  Smucker voided the Tradeshift-Smucker Agreement on fraudulent inducement grounds.  The record here is in accord. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ alone demonstrate Tradeshift's misrepresentation. *Compare*, Ex. C *with* Ex. F. Without a valid contract, Tradeshift's interference claim fails at the outset.

**2.    Tradeshift Cannot Establish an Intentional Act Designed to Induce Breach**

The *sine qua non* of Tortious Interference is the defendant's intentional act done for the purpose of disrupting or bringing about a breach of contract.  *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 825 (9th Cir.2008) (affirming summary

-17-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  judgment against intentional interference of contract claim where plaintiff could not prove "that

2  [defendant's] action was designed to accomplish interference").  Nothing in the record supports

3  such a finding.

4          Rather, the evidence of BuyerQuest's communications with Smucker show an intent to

5  protect BuyerQuest's legitimate economic interest in the Smucker Project; or to convey truthful

6  information useful for Smucker's independent inquiry into Tradeshift; or post-date Smucker's

7  decision to proceed with selecting a replacement for Tradeshift.  None can survive a summary

8  judgment challenge – no jury could agree that BuyerQuest acted with the intent to disrupt the

9  Tradeshift-Smucker Agreement. Specifically, in discovery, Tradeshift cited the following:

10          ***January 2020 Powerpoint Slides***.  Tradeshift relies on two Powerpoint slide

11  presentations.  Ex. CC (Response No. 11).  One, presented by BuyerQuest to Smucker at

12  Smucker's request on January 7, 2020, outlines BuyerQuest's proposal to complete the Smucker

13  Project alone.  *Id*., at p. 24 (*citing* BQ097218).  Tradeshift is not mentioned.  The other, a draft

14  presentation, was never actually shared with Smucker. *Id*. (*citing* BQ100227); Ex. II (Supp.

15  Response No. 11).

16          These documents cannot therefore evince a genuine issue as to whether BuyerQuest acted

17  with intent to disrupt: termination of the Tradeshift-Smucker Agreement was by January 7 a

18  foregone conclusion (although whether BuyerQuest would be selected to continue the Smucker

19  Project was not[17]).  *DeVoto v. Pacific Fidelity Life Ins. Co.,* 618 F.2d 1340, 1348 (9th Cir.

20  1980)("where a contract has been abrogated, competitors may thereafter offer to deal with the

21  party who repudiated the contract without incurring liability in tort: there is no act of

22  inducement, and once the contract is abrogated there is no advantage to appropriate")(*citing*

23  Rest. (Second) of Torts § 766, cmt. n); *Bauer v. Interpublic Group of Companies, Inc.,* 255 F.

24  Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003).

25          ***Pre-January 2020 Communications.***  Tradeshift has cited certain communications

26

27  [17] Exhibit O [p. 268:10-12 " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮ "]

-18-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   before January 7 to further support its claims that BuyerQuest disparaged Tradeshift.  Ex. CC

2   (Response No. 11, pp.18-22).  Yet, these communications (mostly internal BuyerQuest emails

3   relaying second-hand accounts of conversations between BuyerQuest's CEO and Smucker's

4   Jason Barr) do little more than highlight the undeniable problems with Tradeshift's performance

5   on the Smucker Project and BuyerQuest's intensifying efforts to get paid by Tradeshift.

6          Actions taken by a party to protect its own economic interest in another's contract are not

7   actionable as tortious interference as a matter of law.  Nor do they prove an intent to disrupt the

8   Tradeshift-Smucker Agreement – the intent was to protect BuyerQuest's position under the

9   Tradeshift-BuyerQuest Agreement.  *See, e.g.*, *Sade Shoe Co. v. Oschin & Snyder*, 162 Cal. App.

10  3d 1174, 1181 (Cal. Ct. App. 1985)("One who has a financial interest in the business of another

11  is privileged purposely to cause him not to enter into or continue a relation with a third person in

12  that business if the actor (a) does not employ improper means, and (b) acts to protect his interest

13  from being prejudiced by the relation.") (*citing* Restatement (Second) of Torts, § 769).

14         Furthermore, these communications were good faith responses to Smucker's requests for

15  information.  *See Cabanas v. Gloodt Assocs*., 942 F. Supp. 1295, 1307 (E.D. Cal. 1996), *aff'd*

16  *sub nom. Cabanas v. Gloodt Assocs., Inc*., 141 F.3d 1174 (9th Cir. 1998) (finding that it is not

17  improper to interfere with a contract if one gives "honest advice within the scope of a request for

18  the advice" and that "the advice was given in good faith")(quoting Restatement (Second) Torts §

19  772(b)).  There is therefore no tort.

20         ***Glassdoor Reviews*.**  Tradeshift made much in discovery about the forwarding of

21  negative reviews posted to the website "Glassdoor" by Tradeshift insiders.  BuyerQuest's CEO

22  shared them with Mr. Barr of Smucker.  He did so to follow up on conversations in which the

23  two discussed Tradeshift.  The reviews are critical of Tradeshift, but available to any internet

24  user.  Mr. Mulloy forwarded them with anodyne commentary, e.g. "Attached are four of the

25  recent glassdoor posts that gave me pause" but also expressions of hope for the project: "testing

26  is going well…so, that's good to hear."  Ex. S.

27         The sharing of public information and the disclosure of truthful information cannot

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

28

-19-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   support a tortious interference claim.  *See, e.g. Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th

2   434, 449 (Cal. Ct. App. 1993) ("A person cannot incur liability for interfering with contractual or

3   economic relations by giving truthful information to a third party.")(citation omitted); *Matilock,*

4   *Inc. v. Pouladdej*, 2020 WL 3187198, at *5 (N.D. Cal. June 15, 2020)("The Court nevertheless

5   questions the viability of pursuing a cause of action premised on the idea that a defendant's

6   truthful statements interfered with someone's business or contract, and this issue plainly will be

7   relevant at the summary judgment stage if the case makes it that far.")(*citing Worldwide*

8   *Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994)); *see also* Restatement (Second)

9   of Torts § 772 (1979).

10          **3.          Tradeshift Cannot Establish Causation**

11          Tradeshift must also prove that the acts of BuyerQuest caused the disruption or breach of

12   the Tradeshift-Smucker Agreement.  That is, Tradeshift must demonstrate that, absent the

13   BuyerQuest conduct complained of, the Tradeshift-Smucker Agreement would have continued

14   and been performed.  *See, e.g.*, *VasoNova Inc. v. Grunwald*, 2012 WL 4119970, at *4 (N.D. Cal.

15   Sept. 18, 2012) (granting motion to dismiss tortious interference with contract claim because

16   plaintiff failed to allege that the "contract would otherwise have been performed")(quotations

17   and citations omitted).  *Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1177, 1197 (Cal. Ct. App.

18   2011)("Plaintiffs must first prove a causal connection between defendants' conduct and their

19   harm, meaning that the letter agreement would have been performed absent the interference with

20   it.").  The record flatly contradicts causation here.

21          Smucker decided alone and independently to terminate the Tradeshift-Smucker

22   Agreement.  It undertook a wide-ranging inquiry into its business relationship with Tradeshift

23   beginning in October 2019.  It took into account Tradeshift's failure to perform the Smucker

24   Project as well as its misrepresentations in the vendor selection process - including those about

25   its financial health.  Tradeshift's failure on the Smucker Project was plain to the Smucker team

26   managing it.  Concerns about Tradeshift's finances arose independently of any input from

27   BuyerQuest.  Tradeshift had multiple opportunities to assuage Smucker's concerns but eschewed

28

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-20-

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   them all.

2          By December 18, Smucker had independently concluded Tradeshift was a lost cause.  At

3   most, BuyerQuest's communications to Smucker were data points in a broader collection of facts

4   that led to that conclusion.  Without BuyerQuest's input, the same conclusion would have been

5   reached and the Tradeshift-Smucker Agreement would have been terminated regardless.  *See*

6   *Moser v. Encore Cap. Grp., Inc.*, 455 F. App'x 745, 748 (9th Cir. 2011)(affirming summary

7   judgment on intentional interference with contract claim because plaintiff "has not shown

8   proximate causation" between defendant's acts and the contract breach); *Moore v. Apple Inc.*,

9   2015 WL 7351464, at *3 (N.D. Cal. Nov. 20, 2015) (no liability if the defendant's conduct "is

10  not a substantial factor in bringing about harm to another if the harm would have been sustained

11  in the absence of the actor's conduct")(*quoting* Restatement (Second) of Torts § 432(1)); *Bauer*,

12  255 F. Supp. 2d at 1095.  Tradeshift cannot establish the essential element of causation.

13          **D.      No Genuine Issue of Material Fact Exists as to Breach of the Covenant of**
            **Good Faith and Fair Dealing**
14

15          To prevail on its third Cause of Action for Breach of the Covenant of Good Faith and

16  Fair Dealing, Tradeshift must show that: "(1) the parties entered into a contract; (2) the plaintiff

17  fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's

18  performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive

19  the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."

20  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (internal

21  citations omitted).  Tradeshift alleges that BuyerQuest breached the Covenant by encouraging

22  Smucker to terminate the Tradeshift-Smucker Agreement and by refusing to continue to perform

23  under the Tradeshift-BuyerQuest Agreement after Smucker did terminate the Tradeshift-

24  Smucker Agreement.  ¶ 43.  The Breach of Covenant claim fails for two reasons.

25          First, a breach of covenant claim cannot simply restate the same factual allegations as a

26  breach of contract claim brought in the same action. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*

27  (1990) 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990)("If the allegations do not go beyond

28
                                                -21-
        DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
           MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

Here, Tradeshift's Contract and Covenant claims allege the same facts and seek identical damages. *Compare,* ¶ 32 ("BuyerQuest has further materially breached the Agreements by refusing to perform any of its work or obligations following Smucker's purported termination of the Smucker Services Agreement") *with* ¶ 43 ("BuyerQuest has cited Smucker's ineffective termination of the Smucker Services Agreement for BuyerQuest's own refusal to continue to perform under and comply with the terms of the BuyerQuest Agreements.") *and* ¶ 33 *with* ¶ 44 (identical damages claims).

Second, the covenant of good faith and fair dealing cannot "be read to prohibit a party from doing that which is expressly permitted by an agreement." *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (Cal. 1992)("implied terms should never be read to vary express terms.").

The Tradeshift-BuyerQuest Agreement expressly provides that ███████████████
███████████████████████████████████████████████████████
████████████████████████████████████████ CSA § 9.2; *see also*, MSA § 12.2 ("████████████████████████████████████
████"). Tradeshift cannot therefore complain that conduct expressly contemplated and permitted by the mutual non-exclusivity provision breached the covenant of good faith and fair dealing. The Breach of Covenant Cause of Action is barred as a matter of law.

## IV.   CONCLUSION

No genuine dispute as to any material fact exists on any of Tradeshift's three Causes of Action. Tradeshift cannot establish the essential elements of its claims. Moreover, the record demonstrates that BuyerQuest acted properly to ensure the success of the Smucker Project and thereby to protect its own interest in the Tradeshift-Smucker Agreement. It engaged in no disparagement, only the good faith provision of truthful information. The decision to terminate

DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

the Tradeshift-Smucker Agreement was Smucker's alone – one reached through the methodical

deliberative process of a large and sophisticated business.  Nothing said or done by BuyerQuest

compelled the inevitable conclusion that Smucker reached by itself:  Tradeshift misrepresented

itself; failed to perform; and, had to be replaced.

Respectfully submitted,

Dated:  August 4, 2021                              GORDON REES SCULLY MANSUKHANI, LLP


By: _____
        Craig J. Mariam
        Anthony D. Phillips
        Eunice J. Liao
Attorneys for Defendant BuyerQuest, Inc
.

1220641/60224096v.1

-23-
DEFENDANT BUYERQUEST, INC.'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF