UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADESHIFT, INC.,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>BUYERQUEST, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-01294-RS<br><br>**ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE; GRANTING LEAVE TO AMEND COMPLAINT AND LEAVE TO AMEND ANSWER; DENYING MOTIONS FOR SUMMARY JUDGMENT; AND DENYING MOTIONS TO SEAL AND EVIDENTIARY MOTIONS** |

**I. INTRODUCTION**

This order deals with a cavalcade of motions brought by Tradeshift and BuyerQuest. First, Tradeshift seeks relief from the magistrate judge's order denying them discovery on a breach of contract theory that was not pled in its complaint. In the alternative, Tradeshift moves to amend its complaint to reflect its new confidentiality breach theory. BuyerQuest, for its part, seeks to amend its answer to add additional affirmative defenses. Both sides also move for summary judgment. Finally, both sides wish to seal various documents and raise evidentiary objections.

The magistrate judge's order is entitled to deference, and Tradeshift cannot clear the high bar of showing it was clearly erroneous. So, its motion for relief is denied. Tradeshift seeks to salvage its breach of contract claim through a contingent motion to amend its complaint. Although Tradeshift claims it is a minor tweak, it is essentially switching the basis for its breach claim to

1  this new theory. With the original trial schedule, this may have caused prejudice to BuyerQuest.
2  However, the trial must now be delayed for reasons unrelated to this case. Given this delay, there
3  is ample time for additional discovery, preventing any prejudice. Leave to amend the complaint is
4  granted; leave to amend the answer is granted for the same reason.

Trying to tell the story of this case reveals why both parties' summary judgment motions must be denied. Tradeshift signed a contract with J.M. Smucker, Inc. ("Smucker") to provide it software. Or did they? BuyerQuest claims there was no contract because it was fraudulently induced. Each side claims the other breached the contract. Tradeshift claims BuyerQuest intentionally tanked its contract with Smucker; BuyerQuest says it was trying to save the project. Clearly, there are genuine disputes about material facts.

Finally, there are two administrative sets of motions. The parties raise various evidentiary objections, nearly all of which are procedurally improper, and so will be disregarded. The properly raised objections are considered and denied. The parties' requests to seal many exhibits and large chunks of their papers are denied as overbroad, without prejudice to bringing a properly formulated, narrower request to seal.

## II. BACKGROUND

Tradeshift, a Delaware corporation headquartered in San Francisco, sells operations software. In 2019, Smucker solicited proposals for new e-procurement software. Tradeshift coordinated with BuyerQuest, a company incorporated and headquartered in Ohio which makes such software, to respond jointly to Smucker's vendor search. Smucker ultimately selected Tradeshift as its new vendor, with BuyerQuest acting as a subcontractor. In June 2019, Tradeshift entered into an agreement with Smucker (the "Smucker Services Agreement") pursuant to which Tradeshift would provide Smucker with a subscription to software for five years, along with implementation services. In return, Smucker would pay Tradeshift over $5 million. The Smucker Services Agreement also listed BuyerQuest as a "key subcontractor."

Under the Smucker Services Agreement, Smucker would pay Tradeshift only. Tradeshift and BuyerQuest entered into separate agreements that called for Tradeshift to pay BuyerQuest a

portion of the annual subscription fees. Tradeshift's contractual relationship with BuyerQuest was principally governed by the "Master Agreement for the Tradeshift Partner Program" (hereafter "Partner Agreement"), executed on June 7, 2019. The Partner Agreement contained a confidentiality clause that precluded either party using or disclosing the other's confidential information for any purpose beyond performing the contract. The Partner Agreement did not reference the Smucker Services Agreement or Smucker generally. The parties also signed a "Cross Selling Attachment," and "reseller order form" through which BuyerQuest, as "Provider," agreed to provide certain BuyerQuest subscriptions and services to Tradeshift, as "Reseller," for use in the Smucker project. Work on the Smucker project began in July 2019, and problems soon arose. On January 16, 2020, Smucker sent a letter to Tradeshift purporting to terminate the Smucker Services Agreement based on alleged misrepresentations by Tradeshift concerning its product capabilities. The letter also noted "all the documented misrepresentations were in connection with the capabilities of the Tradeshift [software], not those represented as part of the BuyerQuest [software]." Cmplt. ¶ 19.

Tradeshift was caught off guard by this letter, and denies making any such misrepresentations to Smucker. Tradeshift contacted BuyerQuest, and allegedly told Tradeshift it had been communicating directly with Smucker about Smucker's decision to terminate the agreement and the Smucker project generally, without including Tradeshift as was required under the Statement of Work attached at Exhibit F to the Reseller Order Form. According to BuyerQuest, however, such direct communications with Smucker were permissible because there was no longer an agreement between Tradeshift and Smucker. The parties exchanged a series of follow-up letters, and this lawsuit followed.

Based on discovery, Tradeshift now alleges BuyerQuest never intended to honor its agreement. Tradeshift believes BuyerQuest intended for Tradeshift to acquire it, and when that failed to happen, it pivoted to plotting to replace Tradeshift in its contract with Smucker. To that end, in October 2019, BuyerQuest launched an informal effort nicknamed "Operation Fyrefest," so named for the notorious music festival in which the promoters entirely failed to deliver the

promised product, stranding attendees on a beach. In Tradeshift's telling, the plan was to sabotage and defame Tradeshift, making it seem incompetent. Tradeshift points to numerous emails in which BuyerQuest's CEO, Jack Mulloy, reveals these intentions, e.g. where he wrote he "planted the seed" that Tradeshift was incompetent and in financial trouble, and that BuyerQuest should take over. Declaration of Jason Yu, Ex. 39, Dkt. No. 130-27. Mulloy wrote that despite being a contractor only to Tradeshift, "[r]egardless of what contract BQ has with TS, BuyerQuest's commitment is to Smucker's … I can't emphasize this enough." Yu Decl., Ex. 49, Dkt. No. 130-37. As part of this operation, he communicated with Jason Barr, a leader of the project at Smucker. Mulloy voiced his misgivings about Tradeshift, which led to Smucker conducting a "vendor risk assessment" with the potential for changing the terms of the project. Yu Decl., Ex. 21, Dkt. No. 130-11. Mulloy followed up with negative information about Tradeshift from the website Glassdoor, in which employees can post information about their experiences interviewing with and working for organizations. *Id.* The next day, Barr invited Mulloy for a meeting to discuss replacing Tradeshift on the project. Yu Decl., Ex. 56, Dkt. No. 130-43. Smucker began to investigate Tradeshift's finances, and Mulloy continued to denigrate Tradeshift. Yu Decl., Ex. 25, Dkt. No. 130-18.

In December 2019, before the contract was terminated, BuyerQuest prepared to take over from Tradeshift. Yu Decl., Ex. 30, Dkt. No. 130-18. As part of this effort BuyerQuest's Chief Product Officer, Salman Siddiqui, used Tradeshift's confidential information to develop software that would allow BuyerQuest to replace Tradeshift. Yu Decl., Exs. 1, 4, 55. Dkt Nos. 131-2, 131-5, 131-21. Specifically, another BuyerQuest employee sent him a "Tradeshift solutions doc" and a "Tradeshift configuration sheet" and met to discuss how BuyerQuest could implement Tradeshift's existing and anticipated features. Yu Decl., Exs. 33, 37, Dkt. No 131-19. BuyerQuest's efforts to replace Tradeshift culminated in a formal presentation to Smucker in January 2020. Yu Decl., Ex. 35, Dkt. No., 130-23. Apparently, BuyerQuest's plan worked. Smucker's reasons for terminating Tradeshift included the fact that BuyerQuest had provided a contingency plan. Yu Decl., Ex. 46, Dkt. No. 130-34.

In BuyerQuest's telling, Operation Fyrefest was a good faith effort to get paid and ensure the project's success despite Tradeshift's failures. BuyerQuest was not instigating a disaster but making contingency plans for the one it saw unfolding. According to its bid to Smucker, Tradeshift represented it had 2018 revenue of $300-$500 million. Declaration of Anthony Phillips, Ex. C, Dkt. No. 128-6. In fact, BuyerQuest alleges, its revenue that year was just over $30 million, and it lost well over $100 million. Philips Decl., Ex. F, Dkt. No. 128-9. When Tradeshift failed to pay BuyerQuest on time, BuyerQuest began communicating its concerns to Smucker to increase its chance of getting paid, perhaps by Smucker directly. BuyerQuest also claims Tradeshift misrepresented its ability to provide several essential functions Smucker required; Smucker is suing Tradeshift for those misrepresentations. Philips Decl., Ex. E, Dkt. No. 128-8. BuyerQuest places great emphasis on Smucker deposition testimony claiming the decision to terminate the contract with Tradeshift was Smucker's alone, because of Tradeshift's failures and misrepresentations. Philips Decl., Exs. O and GG, Dkt. No. 128-9 and 128-37. BuyerQuest also points to non-exclusivity portions of the Partnership Agreement and other contracts which allow BuyerQuest to solicit a contract with the client at any time, or to develop competing products. Finally, BuyerQuest highlights that the agreement it signed with Tradeshift contained several provisions limiting liability, such as those precluding liability for special damages.

In its complaint, Tradeshift specifically avers BuyerQuest breached the Partner Agreement, the Cross Selling Attachment, and the Reseller Order Form by failing to obtain Tradeshift's consent before making changes to the scope of the Smucker project, and by failing to support Tradeshift with certain aspects of the Smucker project implementation. Tradeshift further avers BuyerQuest breached by refusing to perform any additional work under the agreements following Smucker's purported termination. Tradeshift also now avers BuyerQuest misused its confidential information.

Tradeshift also brings claims for breach of the covenant of good faith and fair dealing based on BuyerQuest's alleged disparagement of Tradeshift's products to Smucker and for BuyerQuest's refusal to continue performance under its agreements with Tradeshift following

Smucker's termination. Finally, Tradeshift brings a claim for tortious interference, averring BuyerQuest intentionally interfered in Tradeshift's Smucker Services Agreement by disparaging Tradeshift to convince Smucker to terminate its relationship with Tradeshift.

A previous motion to dismiss was denied. As described above, Tradeshift learned during discovery that BuyerQuest had, in Tradeshift's view, misused confidential information, specifically by sending Tradeshift documents to its product development team. Tradeshift sought material from additional custodians for the period after Smucker terminated its contract with Tradeshift. The Magistrate Judge denied its request, holding that the new theory of liability was outside the complaint. Dkt. No. 94. Tradeshift objects to that ruling; in the event the order is upheld, it seeks leave to amend. BuyerQuest also seeks leave to amend its answer to add affirmative defenses, add factual support for existing defenses, and to abandon some defenses. Both parties also move for summary judgment, and to seal parts of their motions and supporting exhibits. After the parties' briefing had been submitted, a scheduling conflict necessitated moving the trial date at least several months later than planned.

### III. LEGAL STANDARD

#### A. Relief from Discovery Order

As the magistrate judge rightly noted, relevance for discovery purposes must be framed by the pleadings, and a complaint has to say more than "the defendant breached the contract." The complaint must give notice under Rule 8 of what the breaches were, plus enough factual material in the complaint to satisfy *Twombly* and *Iqbal*. 550 U.S. 544 (2007); 556 U.S. 662 (2000). Those factual allegations must be considered to measure relevance and proportionality. A district judge considering objections to a magistrate judge's nondispositive order must defer to it unless it is "clearly erroneous or contrary to law." *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

#### B. Leave to Amend Pleadings

As a responsive pleading has already been filed in this case, the burden is on defendants as the nonmoving party to establish a basis for denying leave to amend under Federal Rule of Civil

Procedure 15. *See DCDprograms Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). The factors to consider in determining whether to grant leave to amend are (i) undue delay; (ii) prejudice to the opposing party; (iii) futility of the amendment; (iv) bad faith; and (v) whether the moving party has previously amended its pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Undue delay by itself, however, is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Inferences should be drawn in favor of granting the motion. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

### C. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The non-moving party must then offer evidence of such a caliber that 'a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient.'" *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).

### D. Evidentiary Issues

On summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Evid. 56(c)(2). Per Local Rules 7-3(a) and 7-3(c), any evidentiary and procedural objections to the motion or opposition must be contained within the brief or reply brief.

**E. Sealing Motions**

To overcome the presumption of public access, a party seeking to seal a document must establish they are sealable pursuant to Local Rule 79-5. The request must be narrowly tailored. To overcome the presumption in favor of public access, there must be "compelling reasons supported by specific factual findings." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."). Under Local Rule 79-5(d)(1)(A) of this court, "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable."

## IV. DISCUSSION

**A. Relief from Discovery Order**

Tradeshift says a BuyerQuest employee improperly forwarded a confidential Tradeshift document to someone on the product development team, so he could copy Tradeshift's features. Tradeshift seeks discovery from additional custodians showing BuyerQuest did in fact copy Tradeshift's features after the contract with Smucker was terminated. BuyerQuest disputes whether the documents involved were confidential at all, saying they were jointly created by all the project participants.

The magistrate judge denied this request as being well outside the complaint because it does not relate to the conduct that caused the Smucker project to fail. Tradeshift argues the magistrate judge's order is contrary to law that discovery is not limited to issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).[1] Rule 8, after all, does not require a party to plead every conceivable theory of a claim. In Tradeshift's view, the complaint only provided

---

[1] BuyerQuest is correct that *Oppenheimer* was issued in the class notice context, but Tradeshift is correct to note it is frequently cited for its holdings regarding complaints generally. For example, *see* cases cited by BuyerQuest, *e.g. Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc.*, 320 F. App'x 675, 677 (2009).

ORDER
CASE NO. 20-cv-01294-RS
8

examples of breach, so this breach is not excluded. Tradeshift says it first became aware of this breach when deposing BuyerQuest's Chief Product Officer, Salman Siddiqui, and BuyerQuest's Project Manager Dan Utyuzh in April 2021. Thus, it argues it could not have known about the confidentiality breach at the pleading stage, and it would be unfairly prejudiced if not allowed to amend its complaint. Tradeshift then sent a supplemental interrogatory response asserting this was a breach. Tradeshift points out *Coleman* held plaintiffs were required to plead their theory in their complaint *or* make it known during discovery. *Coleman v. Quaker Oats*, 232 F.3d 1271, 1292 (9th Cir. 2000). BuyerQuest responds that it took some of its depositions before being alerted.

Tradeshift also argues the order was based on erroneous findings of fact, but those facts were not the bases for the magistrate judge's order. Specifically, Tradeshift notes the number of custodians sought would not double, and no deadline had been set to seek leave to amend, so the passing of the deadline for amendment as of right was irrelevant. Tradeshift is correct on both counts, although the former appears to have played little role in the order. The second was not a basis for the order at all because it was not a motion to amend the complaint. The magistrate judge noted this would have supported a timely motion for leave to amend, but did not use the deadline's passing as a basis for his order.

Most importantly, the magistrate judge's ruling is correct that the original complaint would not put BuyerQuest on notice it was being accused of breaching any confidentiality provisions. The list of breaching conduct which follows "for example" in the complaint, while concededly not meant to be an exhaustive list, are all of a type. The examples are meant to illustrate how BuyerQuest breached the contract in a particular way; none of which involve breaching confidentiality. Nor was there any explicit reference to suspected but then-unproven types of breaches, the "for example" notwithstanding. Under Plaintiff's theory, as long as it adequately pled one type of breach and included "for example" it could then seek discovery on any breach. While a plaintiff need not plead every conceivable theory of breach, "for example" does not expand the scope without limit.

1 Ultimately, the order is not clearly contrary to law. For the reasons explained above, the
2 Magistrate Judge's order is entitled to deference, and the motion for relief from the order is
3 denied.

### B. Leave to Amend Complaint

Alternatively, Tradeshift moves for leave to amend its complaint. Tradeshift argues its amendment does not add any new claims, as described above, and that even if it is a new theory, leave should be granted. It argues it learned in April 2021 that BuyerQuest allegedly used its confidential information to copy its product. Tradeshift contends this represents a breach of Section 5 of the Tradeshift Partner Program Agreement. The operative language is "The parties agree, unless required by law, not to use or make each other's Confidential Information available to any third party for any purpose other than as necessary to perform under this Agreement." Yu Decl., Ex. 19, Dkt. No. 130-9.

First, BuyerQuest argues the motion for leave to amend is procedurally improper because Tradeshift has not sought to modify the scheduling order as required by Rule 16. This is incorrect. The scheduling order in this case only set a deadline to amend without leave of the court. Amendment with leave of court is always available subject to it being proper.[2]

#### i. Undue Delay and Bad Faith

BuyerQuest alleges Tradeshift delayed unduly, and did so in bad faith, because it had the documents alerting Tradeshift to the breach in July 2020, and the testimony alerting it to the significance of the documents in April 2021. This would be a delay of at least several months. Yet Tradeshift claims it did not realize this theory might be read as outside its complaint until the disputed discovery order in late May 2021, and it filed this motion about five weeks later. Still, some cases have found undue delay in a similar timeframe. *See, e.g.*, *Zeiger v. WellPet LLC*, No.

---

[2] BuyerQuest also argues it is procedurally improper because Tradeshift did not confer as required by Local Rule 16-2. Tradeshift admits it has not conferred, but notes BuyerQuest can simply "file a statement of non-opposition," which it has not done. This is irrelevant as Local Rule 16-2 applies to motions seeking relief from obligations imposed pursuant to FRCP 16 or 26 or the initial case scheduling order. Meeting and conferring is still best practice, but it is not preclusive of the motion.

3:17-CV-04056-WHO, 2020 WL 9160842, at *2 (N.D. Cal. Jan. 22, 2020) (finding undue delay when leave sought 7 weeks after learning of information, and amendment would require additional discovery and delay). Ultimately, this factor is basically a wash, perhaps slightly favoring BuyerQuest as Tradeshift arguably should have realized the documents' significance earlier or moved to amend even more quickly given the trial schedule at the time.

### ii. Futility

BuyerQuest insists any amendment would be futile, because the documents were not confidential and it did not disclose them to third parties. Instead, BuyerQuest says they were a joint product of Smucker, Tradeshift, and BuyerQuest, and BuyerQuest employees just circulated them internally. Tradeshift counters it authored the vast majority of the documents, and it is not claiming improper disclosure; it avers BuyerQuest misused the information.

Tradeshift is correct that the contract prohibits BuyerQuest misusing confidential information, even without disclosure to a third party. Thus, this claim is not futile. Again, the clause binds the parties "not to use or make each other's Confidential Information available to any third party for any purpose other than as necessary to perform under this agreement." This sentence prohibits two types of behavior. First, it forbids the parties from making confidential information available to third parties for improper purposes. Second, it prevents the parties from using confidential information for improper purposes. Linking "use" only to "third parties" would be nonsensical. The long clause in the middle about making information available to third parties is perhaps not the best drafting, but its meaning is clear. It would be grammatically incorrect to say the parties agree "not to use each other's confidential information to any third party." Instead, "use" relates only to some parts of the sentence, such as: "the parties agree not to use … each other's confidential information … for any purpose other than as necessary to perform under this agreement." The limitation of liability clause does not bar Tradeshift's breach of contract theory, and whether the degree of BuyerQuest's involvement rendered the document not confidential is a question best left for the jury; it does not render it futile.

### iii. Prejudice

Prejudice is the most important factor in considering leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). There must be substantial prejudice to overcome the presumption in favor of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Tradeshift argues amendment is not prejudicial because it does not cause a "radical shift" in the case. *Wroth v. City of Rohnert Park*, No. 17-CV-05339-JST, 2018 WL 6439120, at *3 (N.D. Cal. Dec. 7, 2018). Tradeshift notes BuyerQuest's own conduct is at issue so no new revelation is involved. In Tradeshift's view, no discovery is needed even if leave is granted.[3]

Tradeshift also argues BuyerQuest was on notice during discovery and so it has had ample opportunity to take this claim into account. *Ur-Rahman v. RadioShack Corp.*, No. C-07-04427 RMW, 2008 WL 2949273, at *2 (N.D. Cal. July 25, 2008) (the court "has no sympathy" for a prejudice argument where a party knows of the desire to add allegations prior to depositions). Specifically it argues BuyerQuest was able to take six of eight depositions of Tradeshift employees after Tradeshift announced its new theory.

BuyerQuest replies it would be prejudiced because it would require additional discovery and delay of trial. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000). As the trial date must now be continued for other reasons, such delay no longer presents a problem, as sufficient time will be available for any additional discovery that may be necessary. Accordingly, BuyerQuest will not face "substantial prejudice" from a complaint amendment. *Morongo Band of Mission Indians*, 893 F.2d at 1079.

### C. Leave to Amend Answer

BuyerQuest seeks to withdraw some affirmative defenses, amend some defenses to add factual allegations, and add defenses of Justification or Privilege, Limitation of Liability, and Set

---

[3] This is a somewhat odd contention given its motion seeking relief from the discovery order was to get more discovery. In explanation, Tradeshift says it only seeks leave to amend to ensure the claim may be litigated at trial.

off. Tradeshift opposes amendment, except for the withdrawals. Again, the relevant rule is Rule 15, not Rule 16. The factors for whether to grant leave to amend the answer are the same as those pertaining to complaint amendments. Tradeshift argues BuyerQuest's affirmative defenses should be dismissed because it did not attempt to add factual support until now, and it had these facts in its possession from the beginning. BuyerQuest responds the amendments it seeks merely add factual context, and the additional defenses harken to its original defenses.

The Ninth Circuit has held affirmative defenses need only be stated in general terms. *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015). It is unclear whether this was meant to be an implicit rejection of the *Twombly* and *Iqbal* plausibility standard requiring at least some factual support, and not merely legal conclusions. *See generally* Wright and Miller, Pleading Affirmative Defenses, 5 *Fed. Prac. & Proc. Civ.* § 1274 (3d ed.). Certainly, fair notice is required. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Most courts in this district have found fair notice requires the *Twombly* and *Iqbal* standard to apply to affirmative defenses. *Pertz v. Heartland Realty Invs., Inc.*, No. 19-CV-06330-CRB, 2020 WL 95636, at *1 (N.D. Cal. Jan. 8, 2020) (collecting cases). At the least, fair notice requires *some* pleading of facts. *Ctr. for Food Safety v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2019 WL 8356294, at *2 (N.D. Cal. Mar. 18, 2019). Leave to amend should be freely given so long as there is no prejudice to the moving party. *Wyshak*, 607 F.2d at 826.

BuyerQuest's original pleadings and its explanation for delay leave much to be desired. Further, BuyerQuest should have responded to Tradeshift's interrogatory in more detail. BuyerQuest's delay was undue. However, Tradeshift was on notice of the general nature of BuyerQuest's affirmative defenses from the outset, and the facts BuyerQuest uses to support them are not exactly surprising. In any case, BuyerQuest's pleadings are now sufficient to give Tradeshift fair notice and comply with *Twombly* and *Iqbal*. Lastly and most importantly, prejudice is the key factor, and any prejudice that would result is prevented by the delay and the additional discovery it allows. The conduct before seeking leave to amend is not such a flagrant example of

bad faith so as to justify denying such leave in the absence of prejudice. Accordingly, leave to amend the answer is granted.

### D. Summary Judgment

#### i. Breach of Contract

Both sides move for summary judgment; each claim will be addressed in turn. There is no basis to grant summary judgment on any claim. For breach of contract, some of BuyerQuest's arguments about the confidentiality clause are repetitive of its opposition to Tradeshift's motion for leave to amend. That discussion need not be repeated: any argument for summary judgment because BuyerQuest did not disclose anything to a third party fails for the same reasons discussed above.

BuyerQuest's main argument is Tradeshift's contract damages claims are barred by several limitation of liability clauses forbidding special damages. As a threshold matter, Tradeshift argues it also seeks disgorgement of damages from BuyerQuest's unjust enrichment. This is an equitable remedy, which would salvage Tradeshift's argument if lost profits were barred. BuyerQuest in turn responds that Tradeshift has actually only sought those damages for its tort claims. In any case, this need not be reached as lost profits are not barred, at least at this stage.

Tradeshift seeks lost profits for its contract claims. While lost profits more often are special damages, they can be general damages if they qualify under the standard test for general damages: they must "naturally and necessarily result" from the breach. *Lewis Jorge Constr. Mgmt. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 975 (Cal. 2004). As for the confidentiality breach theory, those claims are probably best classified as general damages. At the least they cannot be conclusively deemed special damages on summary judgment. Certainly not every confidentiality breach will result in general damages. It is easy to think of examples in this case in which BuyerQuest could breach confidentiality but not cause general damages, e.g. disclosing information which hurts Tradeshift in some roundabout way. It seems the confidentiality breach alleged here, though—misusing information to replace Tradeshift—naturally could lead to Tradeshift losing its profits from Smucker. Indeed, Tradeshift alleges that was the goal of the

breach. This is not to say BuyerQuest is barred from making the argument that these are forbidden special damages at trial. It is just more appropriately made to a factfinder.

There are two other limitation of liability clauses. One limits liability for damages arising from or incident to termination; Tradeshift argues this is inapplicable for two reasons. First, Tradeshift characterizes the claim for damages as arising from the breach, not any termination itself. Second, Tradeshift only terminated its contract with BuyerQuest to the extent of an effective termination by Smucker, and it says Smucker's termination was ineffective. Tradeshift's arguments are persuasive. BuyerQuest points to a final limitation clause providing a cap on damages; Tradeshift argues the cap includes amounts payable under the contract so it is really no limit at all. This need not be reached here as it would not block damages but only serve as a limiting defense.

BuyerQuest and Tradeshift each argue for summary judgment on other grounds, but they are inappropriate for resolution as there remain genuine disputes of material facts. In BuyerQuest's version of events, the only breaching party was Tradeshift, because Tradeshift's late payments mean Tradeshift did not perform. Whether the late payments were a material breach is a dispute of material fact. *See Brown v. Grimes*, 192 Cal. App. 4th 265, 277-278 (2011). BuyerQuest argues Smucker's deposition testimony establishes that it was Smucker's decision alone to terminate the contract. However, whether to credit the testimony of Smucker and how much weight to place on it in the context of the parties' relationships here are matters best left for the factfinder. BuyerQuest's argument that it only breached at most nonbinding obligations has been superseded by the amended confidentiality breach theory. Many of Tradeshift's claims for summary judgment, too, require factfinding beyond what the record can support, e.g. were the documents actually confidential?

### ii. Tortious Interference

Each side also seeks summary judgment on Tradeshift's tortious interference claim. BuyerQuest argues Tradeshift fraudulently induced the contract, so it was void from the beginning. In the alternative, it says Smucker independently decided to terminate the contract.

These claims involve numerous factual questions which discovery has not definitively settled. While Smucker certainly says it was going to terminate the contract in its deposition, Tradeshift convincingly points to conduct by BuyerQuest that is suspicious, and at least makes out a plausible case for interference, e.g. internal messages which seem to indicate a plan to replace Tradeshift. However, these internal communications themselves cannot constitute tortious interference. Determining BuyerQuest's intent depends in large part on witness credibility for which a factfinder is required. A neutral factfinder could find for either side. *Wilson*, 881 F.2d at 601. Both parties' motions for summary adjudication on this claim are therefore denied.

### iii. Covenant of Good Faith and Fair Dealing

Finally, BuyerQuest also moves for summary judgment on Tradeshift's claim of breach of the covenant of good faith and fair dealing. It argues this claim is duplicative of the breach claim, and that the contract expressly contemplated BuyerQuest contracting with Smucker. The covenant claim is not entirely duplicative, and there is at least a dispute of material fact whether the parties' intent was for the contract to authorize BuyerQuest to act as it did, so summary judgment is denied.

### E. Evidentiary Issues

On summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Evid. 56(c)(2). Both sides have filed lengthy motions to strike, evidentiary objections, and replies. These evidentiary motions are procedurally improper under Local Rules 7-3(a) and 7-3(c). (In pertinent part, "Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum," and "Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum.") The additional briefing violates the cumulative page limits for the underlying motions. These motions and replies will accordingly be disregarded.[4]

---

[4] Even if these evidentiary objections were considered, they would not change the outcome here.

In its motion, BuyerQuest raises a cursory objection that "none of the evidence submitted by Tradeshift in support of the Opposition has been properly authenticated," because the attached declaration by Jason Yu attached exhibits without citation to authenticating evidence. Dkt. No. 151. BuyerQuest is incorrect; Tradeshift's evidence is either sufficiently authenticated or would be self-authenticating. *See, e.g.*, *Uschold v. Carriage Servs., Inc.*, No. 17-CV-04424-JSW, 2020 WL 1466172, at *2 (N.D. Cal. Mar. 6, 2020), *appeal dismissed*, No. 20- 15523, 2020 WL 3470090 (9th Cir. Apr. 24, 2020) (finding deposition excerpts accompanied by reporters' certificates sufficiently authenticated at summary judgment). There is nothing in this brief objection to suggest that any of the evidence will not be able to be admitted at trial, although BuyerQuest is of course free to bring more detailed objections in a proper form at a later date.

In any case, extensive reference to the exhibits is not necessary to decide these motions for summary judgment. There are basic issues of material fact in each claim that do not require extensive examination of exhibits, e.g. was the contract fraudulently induced? Were the payments materially late? What was BuyerQuest's intention in creating Operation FyreFest?

**F. Sealing Motions**

The parties' efforts to seal many of the exhibits they rely on and large portions of their papers are denied. The vast majority of the portions sought to be sealed will not qualify for sealing, and it is an open question if any of the identified material qualifies as sealable. Neither party has overcome the strong presumption in favor of public access. Nor have they submitted adequately tailored redactions, with nearly all of the reasons given for sealing being boilerplate or, contrary to Local Rule 79-5(d)(1)(A), merely because one side designated it confidential. Such is not the "compelling reasons supported by specific factual findings" that the law requires. *Kamakana*, 447 F.3d at 1178. Generally, historical information about a business deal of this kind, even if embarrassing, is not sealable. The requests to seal are therefore denied without prejudice. The parties are directed to meet and confer and may submit a narrower proposal for sealing, e.g., any truly sensitive prospective proprietary materials, if appropriate.

## V. CONCLUSION

For the reasons set forth above, the motion for relief from the magistrate judge's order is denied. The motion for leave to amend the complaint is granted, as is the motion for leave to amend the answer. Both parties' summary judgment motions are denied. The parties' separate evidentiary objections are disregarded as procedurally improper; the properly raised evidentiary objections raised in the briefs are denied. Finally, the parties' administrative motions to seal are denied without prejudice.

**IT IS SO ORDERED**.

Dated: September 22, 2021

_____
RICHARD SEEBORG
Chief United States District Judge